

**Office of the Attorney General**
**Douglas B. Moylan**
Attorney General of Guam
**Civil Division**
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 • USA
(671) 475-3324 • (671) 472-2493 (Fax)
www.guamattorneygeneral.com • law@mail.justice.gov.gu

**Attorneys for the Government of Guam**

**FILED**
DISTRICT COURT OF GUAM
MAR - 5 2003
MARY L. M. MORAN
CLERK OF COURT

3

# UNITED STATES DISTRICT COURT
# DISTRICT OF GUAM

THE ATTORNEY GENERAL OF GUAM,          )                    Civil Case No. 03-00008
                                       )
                   Plaintiff,          )
                                       )
            vs.                        )
                                       )          **MOTION FOR PRELIMINARY**
WILLIAM R. THOMPSON, in his official   )                 **INJUNCTION**
capacity as Executive Manager of Guam  )
Airport Authority,                     )
                                       )
                   Defendant.          )
_____)

## TABLE OF CONTENTS.

TABLE OF CONTENTS…………………………………………………………..i

TABLE OF CASES………..……………………………………………..ii, iii

ARGUMENT…………………………………………………………………….1

STANDARD FOR PRELIMINARY INJUNCTION……………………………… 1

Page i
*Motion for Preliminary Injunction*
District Court of Guam Civil Case No. 03-0008

ORIGINAL

A.      High Probability of Success on Merits.........................................2

B.      Movant Suffering Immediate and Irreparable Harm.....................15

C.      Defendant Won't be Harmed if Injunction Granted......................16

D.      Granting a Preliminary Injunction Protects the Public's Interest......17

CONCLUSION.................................................................................20

# TABLE OF CASES

                                                                        **Pages**

## FEDERAL COURT CASES:

Carlson Companies, Inc. v. Sperry & Hutchinson Co., 374 F.Supp 1080
(D.Minn.1973)..................................................................................1

Gilder v. PGA Tour, Inc., 936 F.2d 417, 422 (9th Cir. 1991)...........................19

Johnson v. California State Board of Accountancy, 72 F.3d 1427, 1430
        (9th Cir. 1995)........................................................................19

Moorehead v. Farelly, 727 F.Supp. 193, 200-202 (1989)...............................16

Roberto v. Aguon, 519 F.2d 754 (9th Cir. 1975)........................................11

State of Florida ex rel. Shevin v. Exxon Corp., 526 F.2d 266, 271 (5th Cir. 1976)...12

State of Illinois v. Bristol-Myers Co., 470 F.2d 1276 (7th Cir. 1972)..................11

State of Michigan v. C.R. Equipment Sales, Inc., 898 F.Supp.509 (Mich.1995)......4

Sun Microsystems, Inc. v. Microsoft Corporation 188 F.3d 1115, 1118

(9th Cir. 1999)...............................................................................18

Thomas v. County of Los Angeles, 978 F.2d 504, 507,508 (9th Cir. 1992)..............2

Wade v. Mississippi Cooperative Extension Service, 392 F.Supp.229
    (N.D.Miss. 1975)...........................................................................8

Walczak v. EPL Prolong, Inc. ,198 F.3d 725, 731 (9th Cir. 1999).......................19

## STATE COURT APPELLATE CASES:

                                                                              Pages

American Legion Post No. 279 v. Barrett, 20 N.E.2d 45, 51 (Ill. 1939)...............12

Attorney General v. Trustees of Boston Elev. Ry., 319 Mass. 642, 652, 67
    N.E.2d 676 (1946)............................................................................3

Department of Mental Health v. Coty, 232 N.E.2d 686, 689 (Ill. 1967)................12

Environmental Protection Agency v. Pollution Control Board, 69 Ill.2d 394, 372 N.E.2d 50,14
Ill.Dec.245 (Ill.1977)...........................................................2,4,8

Fergus v. Russel, 270 Ill. 304, 377, 110 N.E. 120, 143, (1915)............................2

Gust K. Newberg, Inc. v. Illinois State Toll Highway Authority, 456 N.E.2d 50, 67
(Ill. 1983).................................................................................12

Hunt v. Chicago House and Dummy Ry. Co., 12 N.E. 176, 181 (Ill.1887).............11

In re Bankruptcy Appeal of Algheny, 252 B.R. 309, 327 (1999)..........................16

Jacobsen v. Parks & Recreation Commn. Of Boston, 345 Mass. 641, 644, 189
N.E.2d 199 (1963).......................................................,,,,,,......3

People ex rel. Castle v. Daniels, 132 N.E.2d 507, 509 (Ill. 1956)..........................12

People ex rel. Hartigan v. E. & E. Hauling, Inc. 607 N.E.2d 165, 170 (Ill. 1992).....12

Scott v. Briceland, 65 Ill.2d 485, 501, 359 N.E.2d 149, 157 (Ill. 1977).................4

Secretary of Administration and Finance v. Attorney General, 367 Mass.154, 163, 326 N.E.2d 334,339 (1975)................................................3

Stein v. Howlett, 52 Ill.2d 570,289 N.E.2d 209 (1972).......................................2

Ting v. AT & T, 2003 WL 29229....................................................................15

Weaver v. Blue Cross and Blue Shield of Alabama, 570 So.2d 675 (1990)............2

## TABLE OF STATUTES, RULES AND CONGRESSIONAL HISTORY

**FEDERAL STATUTES:**                                            Pages

Fed R Civil Procedure Rule 65 (a).................................................................1

48 U.S.C. § 1421g...............................................................................9

48 U.S.C. § 1421g(d)(1).................................................................2,3,4

48 U.S.C. § 1422................................................................................11

**Pages**

## GUAM STATUTES

5 G.C.A § 30101.................................................................................14

5 G.C.A. § 30103.........................................................................13, 14

5 G.C.A. § 30103..............................................................................4

5 G.C.A. § 30103.............................................................................13

5 G.C.A. § 30109.............................................................................14

5 G.C.A. § 30109.............................................................................14

12 G.C.A. § 1102............................................................................15

12 G.C.A § 1108.............................................................................15

## CONGRESSIONAL HISTORY:                                     Pages

H.R. Rep. 105-742...........................................................................3

# ARGUMENT.

Plaintiff, the Attorney General of Guam, hereby moves the Court for a preliminary injunction, under the authority of Fed R Civ P Rule 65(a), enjoining Defendant, and all those in active concert or participation with Defendant, from awarding any private legal services contracts under their current Request for Proposal other than for Defendant retaining counsel to represent him in this Action, until a final hearing and determination of the merits in the above entitled action. Further, that Plaintiff be permitted to represent the Guam International Airport Authority pending resolution of this matter.

Unless Defendant is restrained and enjoined by order of this Court, Plaintiff will suffer immediate and irreparable injury, loss and damage in that the Attorney General will *not* be able to exercise his lawful authority conferred upon this position by the U.S. Congress, to establish a unified legal policy for the Government of Guam, and to save money for the Government of Guam. This motion is made on the additional ground that Plaintiff has no adequate remedy at law.

# STANDARD FOR PRELIMINARY INJUNCTION.

Factors which the Court may consider in determining whether to grant a preliminary injunction include: (a) the probability that the party seeking the relief will succeed on the merits; (b) the immediate and irreparable harm to such party if injunctive relief is denied; (c) the possible harm to the opposing party *if* injunctive relief is granted; *and* (d) the public interest in granting a preliminary injunction. Carlson Companies, Inc. v. Sperry & Hutchinson Co., 374 F.Supp. 1080 (D. Minn. 1973). The Ninth Circuit requires a moving party establish two (2) factors: (1) movant will suffer immediate and irreparable harm *if* they do *not* obtain a preliminary injunction; *and* (2)

there is a likelihood movant will prevail on the merits. <u>Thomas v. County of Los Angeles</u>, 978 F.2d 504, 507, 508 (9th Cir. 1992).

## A. High Probability of Success on Merits.

Although equally strong with the other factors, Plaintiff maintains a strong likelihood of succeeding on the merits. The Attorney General of Guam is the Chief Legal Officer of the Government of Guam. 48 U.S.C. § 1421g(d)(1). The power and place of the Attorney General in government dates back to common law, England and the Colonial Period, probably being one of the oldest positions in our system of democratic government. *Committee on the Office of the Attorney General, the National Association of Attorneys General, Common Law Powers of State Attorneys General*, at 68 (1980). **Addendum 1-9.** <u>Cited by</u> <u>Weaver v. Blue Cross and Blue Shield of Alabama</u>, 570 So.2d 675 (1990).

The Attorney General is the chief legal officer of the State; that is, he or she is "the law officer of the people, as represented in the State government, and its only legal representative in the courts." <u>Fergus v. Russel</u>, 270 Ill. 304, 337, 110 N.E. 130, 143, (1915); <u>Stein v. Howlett</u>, 52 Ill.2d 570, 289 N.E.2d 409 (1972).

As the chief legal officer of the State, the Attorney General has the constitutional, or Organic Act, duty of acting as legal adviser to and legal representative of State agencies. <u>Environmental Protection Agency v. Pollution Control Board</u>, 69 Ill.2d 394, 372 N.E.2d 50, 14 Ill.Dec. 245 (Ill. 1977). The Attorney General has the prerogative of conducting legal affairs for the State. <u>Id</u>. In <u>Pollution Control Board</u> the Supreme Court of Illinois stated the reason for vesting sole legal representation of the State Government in the Attorney General was as follows,

> "There are, arguably, at least two reasons for this centralization. First, <u>private counsel for State agencies are expensive</u>. (In the instant case, the Board argues that the fees of its private counsel should come from the Attorney General's budget.) Second, <u>centralization is more efficient</u>. Whenever the merits of these arguments, it remains true that the duties of the Illinois Attorney General encompass advising and representing State agencies." (Emphasis added).

<u>Pollution Control Board</u>, 372 N.E.2d at 52.

To the contrary, a review of the Congressional history of the 1998 Congressional Amendment to our Organic Act, 48 U.S.C. § 1421g(d)(1), reveals that it was *not only* enacted to allow for an elected Attorney General, but was enacted primarily to remove the Attorney General from the sphere of influence of the Executive and Legislative Branches. The primary objective of the 1998 Congressional Amendment was to organically create the position so that it would be immune from interference from *both* the Executive and Legislative Branches. <u>Infra</u>.

The source of Congressional history on the 1998 Congressional Amendment is found in H.R.Rep. 105-742, dated September 24, 1998, where the Committee Report states:

> "Public concerns revolve around political interference with investigations, inefficiency of case work and dismissal of the Attorney General without cause. In response to the growing number of complaints, a survey was conducted to determine an acceptable resolution. It was clear that respondents (69%) favored an elected position."

In this case, Defendant seeks to prevent the Attorney General from participation in representation of his Agency's legal interests, which are the Public's interests, and which fall squarely within the Attorney General's common law and Organic Act duty to protect the Public's interest. <u>Secretary of Administration and Finance v. Attorney General</u>, 367 Mass. 154, 163, 326 N.E.2d 334, 339 (1975), <u>citing</u> <u>Attorney Gen. v. Trustees of Boston Elev. Ry.</u>, 319 Mass. 642, 652, 67 N.E.2d 676 (1946); <u>Jacobsen v. Parks & Recreation Commn. of Boston</u>, 345 Mass. 641, 644, 189 N.E.2d 199 (1963). Like most other jurisdictions, the Legislature of Guam

has recognized and protected the Attorney General's common law powers. 5 G.C.A. § 30103[1].

*However*, this recognition cannot take away power from the Organic Act power that the Attorney General is simply, and without reservation, the "Chief Legal Officer of the Government of Guam." 48 U.S.C. § 1421g(d)(1). In order to defeat a Constitutional power, another Constitutional power must diminish it, *not* a lower statutory enactment. Scott v. Briceland, 65 Ill.2d 485, 501, 359 N.E.2d 149, 157 (Ill. 1977). The Legislature may *not* deprive the Attorney General of his common-law powers under the Constitution (Organic Act). Environmental Protection Agency v. Pollution Control Board, 69 Ill.2d 394, 372 N.E.2d 50, 52, 14 Ill.Dec. 245, 247 (1977).

The Attorney General also is responsible for establishing a unified and consistent legal policy for the Attorney General's jurisdiction, and to permit a particular government official to determine his particular legal interests "*destroys any chance of uniformity and consistency.*" Id. Again, the Attorney General's duty is to protect the Public interest, essentially preventing legal fiefdoms or empires within the government. State of Michigan v. C.R. Equipment Sales, Inc., 898 F.Supp. 509 (Mich. 1995). Infra (Congressional history of Guam elected AG).

Clearly, H.R.Report 105-742 supports the conclusion that an elected position is one solution to the problem with potential political interference. On Guam, positions such as the Public Auditor and the Attorney General were created to ensure accountability directly to the People, *not* vis-à-vis another elected official. *However*, this was *not* the only reason for the 1998 Congressional Amendment. Then-Senator Elizabeth Barrett-Anderson's testimony in the very first Committee hearings on the 1998 Congressional Amendment reveal the concern that

---

[1] Adopted by the Legislature of Guam in Guam Public Law Number 13-117 in 1976, prior to the 1998 Congressional Amendment.

the Attorney General was a puppet of the executive. She testified that "*the people of Guam expect the Attorney General to protect their interest above all else. An appointed Attorney General, unfortunately, must respond to a great extent to the concerns of the Governor.*" 7/24/96 Cong. Testimony, 1996 WL 10830029.[2]  Over a year later, at the second round of Committee Hearings, then Senator and now Speaker Ben Pangelinan echoed this sentiment, "[I]t has become inherently clear that the appointed Attorney General is *not* capable of isolating himself or herself from political interference." 10/29/97 Cong. Testimony,1997 WL 16138742.  Therefore, it was *not* just how the Attorney General was selected that caused concern. It was the <u>*independence*</u> of the Office once selected that was the primary concern.

*However*, the Legislature's proposed solution initially contained an unexpected twist: In response to the public controversy over the Attorney General, the Legislature first considered Bill No. 571. The net effect of this bill was to transfer the supervision and control over the Attorney General from the Executive Branch to the Legislative Branch. Compiler of Law Charles Troutman responded with a letter to Congressman Underwood, explaining that simply switching the possible influence over the office from the executive to the legislative hardly met the objective of making the Office independent: "[T]he position, if you mention it at all, must

---

[2]  This may account for the first change that took place in the so-called "Elected Attorney General" law. Earlier versions of Bill No. 2370 contained a vastly different provision, one that would equate the Attorney General with the Public Prosecutor or the Public Auditor. The original language, presented in a March 1998 Bill, provided, "the Government of Guam may establish by law an Office of the Attorney General of Guam within the executive branch of the Government of Guam." This provision was later jettisoned, leaving the sentence, "the Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam." Obviously, the notion to leave the creation of the Office up to the Legislature was rejected in favor of creating the Office right in the Organic Act. This was in response to testimony of the sort of Senator Barrett-Anderson's, that the Office needed to be responsive to the entire Island, *not* just to the Executive Branch.

be created by the Organic Act, not just permitted." Letter from Charles H. Troutman to Congressman Underwood of April 1, 1997. **Addendum 10-13.**

Congressman Underwood replied to Compiler Troutman's letter on July 10, 1997, when he sought further input from the Compiler. In the Letter from Congressman Underwood to Compiler Charles H. Troutman of July 10, 1997, the Congressman stated, "the language establishes the office of the Attorney General in the Organic Act," and goes on to request further comment from the Compiler. **Addendum 14-16.** Mr. Troutman answered shortly thereafter, on July 16, 1997, noting, "*if there is to be any substantive meaning to your amendment, the Attorney General needs to have some basic constitutional powers that are not subject to the Legislature's total will.*" **Addendum 17-18.** Thus, it is clear that the concern with the Attorney General's office was *not* solely from Executive Branch interference, but also from Legislative Branch interference. This is why the Organic Act was ultimately amended to actually create the position rather than allow the Legislature of Guam to create it. *See* Letter from Compiler Charles H. Troutman to Congressman Underwood of July 16, 1997, page 1. **Addendum 17.** Guam's Organic Act language creating the elected Attorney General originates from the Illinois Constitution, but unlike the Illinois Constitution afforded even greater independence, autonomy and authority to the elected Guam Attorney General by expressly choosing *not* to incorporate all the restrictive, qualifying language contained within the Illinois Constitution, or other State Constitutions for that matter. Infra.

This letter provides further evidence that both gentlemen were looking to the State of Illinois: "this language ... would keep a check on having many and diverse legal 'empires' within the government of Guam. This is the same idea as expressed in the 1970 Illinois Constitution." Finally, Compiler Troutman reiterates in another letter to Congressman

Underwood on September 2, 1997, that it was important that the Attorney General, "no matter how s/he is selected, has the 'constitutional' duty of being the chief legal officer for the Government of Guam." **Addendum 19-20.** The Legislature of Guam got involved again shortly thereafter, on October 10, 1997, when they adopted Guam Resolution Number 186, which called for Organic Act amendments creating the Office of the Attorney General, but in a vastly different format than ultimately passed by Congress. Guam Resolution Number 186 provided that the Office of the Attorney General would be organically created, but would be subject to the powers and duties as delineated by the Legislature.[3] At the October 1997 Congressional Committee hearing, then Senator Barrett-Anderson explained to the Committee that the 24th Guam Legislature felt "strongly" that Congress needed to enact an amendment that "*unequivocally establishes the attorney general as a co-equal executive branch position... similar to most state constitutions.*" She then added the prescient caution, "any amendment short of a mandate could trigger a challenge by an incumbent governor to determine the extent to which Congress intended the Governor's organic powers to be diminished by an elected attorney general." She thus argued against any discretionary language, and indeed, none was inserted. The removal of the restrictive language shows Congress' intent *not* to make the Attorney General subject to laws passed by our local Congress to the detriment of powers conferred by Congress.

Then Senator Barrett-Anderson's comments were strengthened by then Senator Pangelinan's testimony, which reminded the Committee that a Constitutional/Organic Act

---

[3] Guam Resolution Number 186 proposed the following language as expressing the duties of the office: "The Attorney General shall be the Chief Legal Officer of the Government of Guam, shall be vested with such common law powers and such additional powers as may be prescribed under the laws of Guam, not inconsistent with this chapter."

Attorney General would be "accountable solely to the public," and finally in a position to "isolate himself or herself from political interference." October 29, 1997 Cong. Testimony, 1997 WL16138742. **Addendum 21-24.** Senator Pangelinan added the following stirring comments, which underscores the significance of the amendment in Guam's political history:

> "It is fundamental to the underpinning of our democratic process of openness and fair play that the Attorney General not be used as a apparatus of the head of the executive branch, for the power of the law is too great and pervasive to be used as a political tool of a single person."

An elected Attorney General does *not* mean the absence of politics from the selection process, but rather that the politics and the selection process are directly controlled by the People via the ballot box. In this case, although Defendant had cited in his February 13, 2003 letter (Exhibit 1 of Complaint) to locally enacted legislation, existing *prior* to the Congressional creation of an elected Attorney General, such discretionary authority to autonomous agencies in retaining legal counsel must succumb to the clear Congressional mandate that the Attorney General be the Chief Legal Officer of the (entire) Government of Guam. To interpret otherwise not only runs afoul of the plain meaning of the Congressional language, but conflicts with the Congressional history of the elected Attorney General law. The Attorney General as the Chief Legal Officer of the Government of Guam is empowered to represent an autonomous agency, notwithstanding the objection of the autonomous agency. Environmental Protection Agency v. Pollution Control Board, 69 Ill.2d 394, 372 N.E.2d 50, 14 Ill.Dec. 245 (1977); Wade v. Mississippi Cooperative Extension Service, 392 F.Supp. 229 (N.D. Miss. 1975).

Across our Nation, forty-three (43) of the fifty (50) states have vested this power over the selection of the attorneys general with the voters. Those states and all of the territories

where internal self government is a recent phenomena have *not* relegated the power to determine the attorneys general to their electorates. Guam and its voters broke out of this pack on November 5, 2002, by electing Plaintiff as the Attorney General.

In addition, later legislative history shows that the main reason for the amendment was *not* for an elected attorney general, but to Organically create the position and allow the Legislature of Guam to decide whether it would be appointed or elected. The Floor Debate transcript of October 5, 1998 contains Congressman Underwood's comments to the Speaker: "[F]or this particular issue, the majority of respondents agreed that *the Guam Legislature should have the authority to decide* whether an elected Attorney General would better serve our island or remain with the status quo of an appointment by the Governor." 144 Cong.Rec. H9462-01 at H9464 (emphasis added). On that same day, Virgin Islands Delegate Christian-Green articulated to the Senate chamber that the Organic Act amendment would "establish an Office of the Attorney General," and further would allow such Attorney General to be elected. 144 Cong.Rec. H9462-01 at H9464. Finally, in transmitting the final legislation in H.R.Rep. 105-834 on December 29, 1998, House Resources Committee Chairman Don Young reported that the Committee authorized changes in the Federal law authorizing government structure, "by allowing the people of Guam to determine if the Attorney General should be elected."

The result was the new language of § 1421g, which provides that the Legislature of Guam "may" provide for an election of the Attorney General. The Organic Act does *not* require an elected Attorney General. The point was to bring the office outside the pleasure of any appointing authority so that the office could exercise independent judgment and provide legal uniformity to the entire Government of Guam. Because the position of Attorney General has now been created pursuant to the Organic Act, the Legislature of Guam cannot eliminate

nor diminish the powers of the Office conferred to it by Congress. Supra. *Prior* to the Organic Act amendment, the Legislature of Guam could have eliminated the Attorney General altogether[4], or modify its powers. Therefore, the Attorney General's position is endowed with a different character because it was Organically created, and thereby immune from local executive *or* legislative interference. Those characteristics are found in the model from which Guam drew its Organic Act Attorney General legislation: from the state of Illinois.

That Guam's Attorney General law was based on the Illinois Attorney General model is shown in the many letters from Compiler Troutman to Congressman Underwood, noted above.[5] It is also shown in the April 1, 2003, a letter from Acting Attorney General Charles Troutman, which Appellant respectfully requests this Court to take judicial notice. In his letter, Mr. Troutman testified that the Organic Act reference to the office of the public prosecutor confused the powers and duties of the Attorney General: "[T]he point is, we do not need two 'Attorney General' positions for Guam." Mr. Troutman further stated that regardless of whether the position is elected or appointed, the position needed to be independent, and the way to preserve the integrity of that Office was to make it an Organic (or constitutional) Office – created in the Organic Act so that it could *not* be taken away by the Legislature of Guam or otherwise, subject to any political whim. Mr. Troutman expressed no preference for an elected

---

[4] Section 1421g of the Organic Act, "Establishment and maintenance of public bodies and offices" also provides that "the Government of Guam may by law establish an Office of Public Prosecutor and an Office of Public Auditor." The reason these offices are different from the Attorney General is that the Organic Act does not *create* the positions of Public Auditor and Public Prosecutor. The Organic Act merely permits the local government to create the positions. If the Legislature decided not to create these positions (as it has in the case of the Public Prosecutor), then they could legally cease to exist. However, since the Organic Act creates the position of Attorney General, it cannot cease to exist at the insistence of the local governing bodies.

[5] Letter from Charles H. Troutman to Congressman Underwood of April 1, 1997. **Addendum 11.** In this letter is the first example of the intentional reference to the state of Illinois: "The Constitution of Illinois is an excellent example of a very good Attorney General..." *Id.*

Case 1:03-cv-00008   Document 3   Filed 03/05/2003   Page 15 of 67

or appointed Attorney General, "so long as the position is defined as 'constitutional' (in the Organic Act) and the overall duties and functions [are] provided in the Organic Act," whereafter he adds the critical statement, "much as is found in the Constitution of the State of Illinois."

A comparison of the 1998 Congressional Amendment language with the Illinois Constitution is instructive. Article 5, § 15 of the Illinois Constitution provides simply, "*[T]he Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law*." By this simple declaration, an office was created that cannot be eliminated by political fiat. The Guam Organic Act contains an almost identical declaration: "The Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam." *However*, unlike the Illinois Constitution and the chief executive's language in the Guam Organic Act, Guam's Attorney General language did *not* give the local legislature any authority to give or qualify powers to the Office. Compare 48 U.S.C. § 1422. The Office created by the 1998 Congressional Amendment to the Guam Organic Act is, therefore, substantially similar to that created by the Illinois Constitution. Illinois cases are persuasive on the issue of the nature of the Office, but *not* absolutely determinative given the divergence of any qualifying power language in Guam's Organic Act language. Roberto v. Aguon, 519 F.2d 754 (9th Cir. 1975).

As "chief legal officer" of a state, the Attorney General is endowed with common law powers, which extends the Attorney General's powers beyond those created by statutory law. *See* State of Illinois v. Bristol-Myers Co., 470 F.2d 1276 (7th Cir. 1972), citing Hunt v. Chicago House and Dummy Ry. Co., 12 N.E. 176, 181 (Ill. 1887), for the proposition that a language of grant is not restricted to statutory law. An attorney general's common law powers have been

delineated as "to institute, defend or intervene in any litigation or quasijudicial administrative proceeding which he determines in his sound official discretion involves a legal matter of compelling public interest." State of Florida ex rel. Shevin v. Exxon Corp., 526 F.2d 266, 271 (5th Cir. 1976). In this case, the Fifth Circuit traced the roots of the position of Attorney General, dramatically pronouncing that, "the office of attorney general is older than the United States and older than the State," and concluded that "transposition of the institution to this country, ... could only broaden this area of attorney general discretion."

Thus, in states where the Office of Attorney General is constitutionally created, such as Illinois, after which Guam has patterned its 1998 Congressional Amendment, *supra*, the Attorney General's powers are regarded as powers that could *not* be diminished by local legislation. American Legion Post No. 279 v. Barrett, 20 N.E.2d 45, 51 (Ill. 1939) ("the General Assembly may not take away from a constitutional officer the powers or duties given him by the constitution"); People ex rel. Castle v. Daniels, 132 N.E.2d 507, 509 (Ill. 1956) ("the Attorney General, whose office is created by the Illinois constitution, ... is the chief law officer of the State and has those powers which resided in the Attorney General at common law.... and neither the legislature nor the courts can deprive him of his constitutionally granted authority"); Department of Mental Health v. Coty, 232 N.E.2d 686, 689 (Ill. 1967) ("the common-law powers of the Attorney General were preserved to him by the constitution and while the General Assembly can impose additional power and duties upon him, it cannot strip him of his common-law powers"); Gust K. Newberg, Inc. v. Illinois State Toll Highway Auth., 456 N.E.2d 50, 67 (Ill. 1983) ("while the legislature may add to his powers, it cannot reduce the Attorney General's common law authority in directing the legal affairs of the state"); People ex rel. Hartigan v. E. & E. Hauling, Inc., 607 N.E.2d 165, 170 (Ill. 1992) ("although the

legislature may add to the Attorney General's common law powers, it may not detract from them").

The jurisprudence of constitutional attorneys general is consistent with this principle. In addition to Guam, four (4) other states have Attorneys General who are the "chief legal officer" of the state: Florida, California, Illinois and Montana[6]. (Other states create the position of Attorney General in their constitutions, but do *not* imbue him with the position of chief legal officer.) That Guam opted for the common law concept of an Attorney General is also apparent in the testimony of then Senator Barrett-Anderson on July 24, 1996, when she testified, "it is a concept that is steep in legal history evolving from English Rule where the Attorney General was appointed by the King, to the Jacksonian era which established the rule of direct election of state officials." July 24, 1996 Cong. Testimony, 1996 WL 1080029. It was no accident that Guam looked to the broadest example of a state attorney general when it chose to create the Constitutional office – in furtherance of its quest for self-governance, Guam chose a model for the Attorney General office that would stand for all the People, all the government, *rather* than an Attorney General model which responded only to the Executive Branch. As a result, the Attorney General's powers as set forth in 5 G.C.A. §§ 30103[7] and

---

[6] Unlike Guam, these States' local, enabling legislations permit their legislatures to affect their Attorney General's powers.

[7] **Section 30103.    Common Law Powers of Attorney General.**    The Attorney General shall have, in addition to the powers expressly conferred upon him by this Chapter, those common law powers which include, but are not limited to, the right to bring suit to challenge laws which he believes to be unconstitutional and to bring action on behalf of the Territory representing the citizens as a whole for redress of grievances which the citizens individually cannot achieve, unless expressly limited by any law of Guam to the contrary.

The Attorney General may permit attorneys admitted to private practice in Guam or licensed collection agents to collect accounts or other obligations owing to the government of Guam, or to any agency or instrumentality thereof, if such procedure would be in the interest of the Government and expedite the collection of said account or obligation. Any agency or instrumentality not operating under yearly appropriations from the Legislature may retain counsel of its choice for the collection of obligations in the same manner as it may be permitted to retain counsel in other matters as permitted by its enabling legislation. Guam Memorial Hospital may

30109,[8] are *not* exclusive, and were passed *before* the 1998 Congressional mandate making the Attorney General an Organic Act Office with Organic Act powers.

This is because although the common law powers of the Attorney General include those set forth in § 30103, they were never limited to those powers because § 30103 provided that the Attorney General's powers were *not* limited to those enumerated in the statute. The Attorney General's common law powers are *not* limited to those described in § 30301. The 1998 Congressional Amendment adds only the assurance that the Legislature of Guam cannot eliminate or restrict the Attorney General's common law powers, including those set forth in § 30109.

The Supremacy Clause and Federal preemption precludes local legislation from interfering with the duties, powers and obligations placed upon the elected Attorney General. Contrary to other jurisdictions that passed their enabling legislation for their Attorney General

---

permit the Attorney General or attorneys admitted to private practice in Guam and agents or licensed collection agents to collect accounts or other obligations owing to Guam Memorial Hospital.
[8]**Section 30109. Duties.** The Attorney General is the public prosecutor and, by himself, a deputy or assistant, shall:
    (a) Conduct on behalf of the Government of Guam the prosecution of all offenses against the laws of Guam which are prosecuted in any of the courts of Guam, the District Court of Guam, and any appeals therefrom.
    (b) Draw all informations, conduct grand jury proceedings, prosecute all recognizances forfeited in the courts and all actions for the recovery of debts, fines, penalties and forfeitures accruing to the government of Guam, except as otherwise provided in this Act;
    (c) Conduct on behalf of the government of Guam all civil actions in which the government is an interested party; provided that those branches, departments or agencies which are authorized to employ their own legal counsel may use them instead of the Attorney General.
    (d) Deliver receipts of money or property received by him in his official capacity and file duplicates thereof with the Director of Administration;
    (e) As soon as practical after the receipt of any money in his official capacity, turn the money over to the Director of Revenue and Taxation, and on the first Monday of each month file with the Director of Administration, an account, verified by his oath, of all monies received by him in his official capacity for the government of Guam during the preceding month;
    (f) Be diligent in protecting the rights and properties of the government of Guam;
    (g) Institute by any appropriate action proceedings on behalf of himself or any other public officer (not an employee) to have determined by the courts the validity of any law, rule or regulation of the government of Guam; and
    (h) Perform such other duties as are required by law or assigned to him by the Governor.

via Constitution, Guam's elected Attorney General enabling legislation is a Federal enactment contained in our Organic Act, a Federal law. When Congress passes a legislation, a local law cannot detract or conflict with said Federal law. Ting v. AT&T, 2003 WL 29229, Paragraph 7;

Moreover, the Legislature of Guam's statutory enactments were made *before* the 1998 Congressional Amendment, with Chapter 30 of Title 5 of the Guam Code Annotated being passed in Public Law Number 13-117 in 1976. Noteworthy is that 12 G.C.A. § 1108, providing the Guam International Airport Authority ("GIAA") with authority to retain private counsel, was passed in 1975, prior to the 1998 Congressional Amendment, whilst the Legislature of Guam maintained jurisdiction to create and amend the Attorney General's powers and duties.

## B. Movant Suffering Immediate and Irreparable Harm.

The Attorney General will incur immediate and irreparable harm if he is not permitted to duly represent the Airport Authority. This prong relates to the fourth prong in that as a representative of the Public's interests, the Attorney General and the public will be immediately and irreparably harmed if he is *not* permitted to represent the Airport Authority, which is an agency of the Government of Guam. 12 G.C.A. § 1102.

The Attorney General's term is for only four (4) years. **Exhibit A.** He is on a fixed salary and receives no pecuniary gain from representing the Airport Authority. Defendant would not be harmed by having the Attorney General represent his agency, and those private law firms (real parties in interest) which would be benefited have pecuniary interests to protect, neither being Congressionally mandated to protect the Public's interest, unlike the Attorney

General. 48 U.S.C. § 1421g(d)(1). The irreparable harm is therefore unquantifiable and concerns the proper functioning of the Government of Guam. For every day that the Airport Authority, which provides services to the People and an asset of the People, does not have the benefit of the Attorney General's representation, the Attorney General, Airport Authority (Government of Guam) and the People are irreparably damaged. The duly empowered official, that being the Attorney General, is being restrained by Defendant from executing his power and authority granted by Congress to perform his duty on behalf of the People. Irreparable injury can occur when an official is prevented from doing his duty under the law. In re Bankruptcy Appeal of Alegheny, 252 B.R. 309, 327 (1999); Moorehead v. Farelly, 727 F.Supp. 193, 200-202 (1989).

## C. Defendant Won't be Harmed if Injunction Granted.

Defendant will *not* be harmed if injunctive relief is granted. Defendant seeks to retain private legal counsel at a considerable cost to the Government of Guam. **Exhibit A.** The Attorney General can provide legal services at a substantially lower cost to the Airport Authority. By saving most of the money they would have paid over to private legal counsel, and possibly funding an Assistant Attorney General at a fraction of the costs, Defendant will receive legal services and the Government of Guam will save money, protect the public interests and establish a unified legal direction, which are all consistent with the duties and benefits of an Attorney General.

The Attorney General also seeks the Court's permission to represent the Airport's legal interests in the interim on matters unrelated to this case whilst this action is ongoing against Defendant. Providing interim legal services pending final resolution of this lawsuit will preclude any harm which Defendant might assert. Further, Defendant is a government official

who is being sued to comply with the law, and that official is *not* the Government of Guam agency, which has *not* been sued. The Attorney General concedes that Defendant would be entitled to his personal counsel for representation in the above action; *however*, the unrelated, legal services needs of the Airport Authority require the immediate attention of the Attorney General. In permitting the Attorney General to represent the Government of Guam Agency, the Court would be furthering the unified legal policy direction for the Government of Guam, as well as saving it substantial amounts of money.

## D. Granting a Preliminary Injunction Protects the Public's Interest.

Granting a preliminary injunction in this matter clearly protects the Public's Interest. The public's interest may be characterized in different ways. The Public has an interest in receiving legal representation, both in litigation and non-litigation, for its Government agencies. The Public has an interest in saving its taxpayer dollars by paying a fixed salaried attorney(ies) employed by the Government, as opposed to paying for arguably unnecessary and less cost effective private counsels. The Office of the Attorney General has a long history of litigation and non-litigation experience. The Public has an interest in establishing a unified legal policy for the Government of Guam, which different private counsels for different agencies, or even a different private counsel at the Airport Authority, cannot provide.

Both the Attorney General and private counsel are capable of providing legal services to the Government of Guam. *However*, that is the only similarity which the two (2) legal entities have in common to benefit the Public, both being equally capable. In all other respects the Public receives a greater benefit from the Attorney General providing legal representation. It is common knowledge that the Government of Guam is currently suffering severe financial

problems, with line agency personnel now being shifted over to the autonomous agencies to avoid government-wide layoffs. Reduced working hours and other drastic cost savings measures were adopted by the Legislature of Guam recently in its budget law, which said legislation failed to balance the budget, leaving a staggering multimillion dollar deficit. The greater public interest is in ensuring that taxpayer money is *not* squandered or wasted by needless costs and expenses, which hourly legal fees entail. A fixed, salaried Attorney General, or assistant, undoubtedly serves the Public interest over any other privately retained counsel or law firm. Granting the preliminary injunction pending trial will also ensure that ongoing cases are addressed by the Attorney General, as opposed to costly private counsels. The Defendant's interest in hiring private counsel are unrelated to the Public's interest in seeing that the Attorney General represents the Government, *even* pending the resolution of this case. There are other *unrelated* lawsuits and legal matters that require attention pending the resolution of this matter, and will cost the Government of Guam large sums of money if the parties wait till after this matter is resolved.

Granting the preliminary injunction ensures a unified legal policy for the Government of Guam. Secretary of Administration and Finance v. Attorney General, 367 Mass. 154, 163, 326 N.E.2d 334, 339 (1975). It is uncertain how long this litigation could entail, while if an injunction is *not* granted the Airport Authority may proceed to execute private counsel agreements just for itself. This will thwart the unified approach for a singular legal policy for the Government of Guam.

The standard for a preliminary injunction balances the plaintiff's likelihood of success against the relative hardship of the parties. Sun Microsystems, Inc. v. Microsoft Corporation, 188 F.3d 1115, 1118 (9th Cir. 1999). The Ninth Circuit Court of Appeals has stated that a

preliminary injunction must show either: "(1) a likelihood of success on the merits and the possibility of irreparable harm, or (2) that serious questions going to the merits were raised and the balance of the hardships tips sharply in its favor." Walczak v. EPL Prolong, Inc., 198 F.3d 725, 731 (9th Cir. 1999). These alternatives represent extremes of a single continuum, rather than two (2) separate tests. Id. In this case there are considerable evidence that Congress intended the Attorney General to represent all parts of the "Government of Guam," including the Airport Authority, having not qualified which parts of the Government of Guam the Attorney General would be the Chief Legal Officer over. Along with the probability of success, if he is not permitted to represent this part of the Government, the Attorney General, along with the general Public, will be unquantifiably and irreparably injured, by not being permitted to do his job. Likewise, indubitably "serious questions" going to the merits have been raised and the balance of the hardships tips in favor of the Attorney General and the Public's interests, as opposed to weighing against Defendant and any private counsels who would benefit from a lucrative government contract.

If plaintiff shows that the balance of the hardships tips sharply in his favor, plaintiff is *not* required to promise a certainty of success, nor even present a probability of success. Gilder v. PGA Tour, Inc., 936 F.2d 417, 422 (9th Cir. 1991). Plaintiff need only show that there is a fair chance of success on the merits. Johnson v. California State Board of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995). Again, there is strong Congressional history, case authority and factual basis supporting the Attorney General succeeding on the merits and satisfying all four (4) prongs of the traditionally accepted balancing test for a preliminary injunction.

# CONCLUSION.

For the above reasons the Attorney General of Guam respectfully requests that the Court issue a preliminary injunction pending trial as follows:

      1.    enjoining the award of any legal services agreements by the Guam International Airport Authority for legal services, other than a legal services agreement to represent Defendant in this civil action; *and*

      2.    the Attorney General of Guam is hereby authorized to represent the Guam International Airport Authority in all legal matters unrelated to this Action.

Unless the Court otherwise orders, the undersigned counsel does not request oral argument.

Respectfully submitted this 5th day of March, 2003.

**OFFICE OF THE ATTORNEY GENERAL**
DOUGLAS B. MOYLAN, **Attorney General of Guam**

J. Basil O'Mallan, III
Assistant Attorney General, Civil Division

## ADDENDUM

## INDEX

1. State Attorneys General - Powers and Responsibilities
   Chapter 29 - Open Meetings and Public Records ............................ 1-9

2. Letter from Compilers of Laws Division to Hon. Robert Underwood, MC.
   dated April 1, 1997 ................................................... 10-13

3. Letter from Hon. Robert Underwood, MC to Compilers of Laws
   dated July 10, 1997 (with attachment) ................................. 14-16

4. Letter from Compilers of Laws Division to Hon. Robert A. Underwood, MC.
   dated July 16, 1997 .................................................. 17-18

5. Letter from Compilers of Laws Division to Hon. Robert A. Underwood, MC.
   dated September 2, 1997 .............................................. 19-20

6. Testimony of Charles H. Troutman, Acting Attorney General
   dated October 29, 1997 .............................................. 21-24

# 29

# Open Meetings and Public Records Laws

Legislative policy across the country favors open government. Legislatures have implemented this policy in open meetings laws and public records disclosure laws. As the states' chief law officers, Attorneys General interpret, apply, and often enforce these important laws.

Open meetings laws require public bodies to take final actions and conduct deliberations in sessions open to public attendance. These laws generally prohibit private official meetings of governmental boards, commissions, and councils to ensure that the public is aware of not only those decisions and deliberations but also the information on which those actions are based. Public records disclosure laws or Freedom of Information Acts foster the same policy. They grant members of the public the right to inspect almost all government records that relate to the conduct of the public's business. Government secrecy is the exception, not the rule, throughout the United States.

Open meetings and records disclosure laws provide discrete exceptions for situations in which the public interest in open government may be outweighed by public interest favoring confidentiality in governmental operations. Every day, and at all levels of government within a state, questions arise as to whether an open government law excepts a particular type of closed or executive session or exempts a particular type of public record from the general rule that the public shall have access to the business of government. In these situations, state laws often give the Attorney General the responsibility to resolve the issue. Laws in many states also confer on the Attorney General the power to direct a public body to comply with the Attorney General's interpretation of an open meetings or records disclosure law.

This chapter describes the advisory function of Attorneys Gen-

eral with respect to open meetings and public records disclosure laws, enforcement functions, and the issues that confront Attorneys General and their staffs in this area. It also includes a table describing the role of Attorneys General regarding open meetings.

## Legal Authority

### Advisory Function

All Attorneys General are mandated by law to advise public bodies on the requirements of open meetings and public records disclosure laws. Some Attorneys General are authorized to give such advice to all levels of government. Others, such as the Oregon Attorney General, may give legal advice on public records and open meetings only to state officials. This restriction does not prohibit an Attorney General from giving local officials and local government attorneys information on the requirements of the law.[1]

Many Attorneys General inform the public of their interpretation of public records and meetings laws by publishing manuals and newsletters on these topics. For example, the Attorneys General of California, Florida, Nevada, and Oregon periodically publish manuals outlining and annotating the state's public records and open meetings laws for use by Assistant Attorneys General, state and local officials, representatives of the media, interested members of the public, and courts. Open government issues often are the subject of published opinions of an Attorney General.

Most requests for advice about public records and open meetings focus on the exceptions to the general rules favoring public access. Public records disclosure laws typically exempt from mandatory disclosure private personal information, records compiled for litigation, certain criminal investigatory materials, student records, and trade secret information, but this listing is by no means complete. Similarly, open meetings laws may authorize collegial governing bodies to hold executive sessions closed to the general public for the limited purpose of deliberating on matters such as personnel actions, labor negotiations, sales or acquisitions of public property, attorney-client communications regarding litigation, and records exempt from disclosure under a companion public records law.

In determining whether a particular situation qualifies for an exception from an open meetings or records disclosure law, Attorneys General are guided by the legislative policy favoring public accessibility and court decisions that more often than not have construed

---

[1] See Table 9 which describes the role of Attorneys General with respect to statutes on open meetings and public records.

**Table 9—Open Meetings and Public Records Statutes and the Roles of the Attorney General**

| Jurisdiction | Statutes | Roles |
|---|---|---|
| **Alabama** | | |
| Open Meetings | Ala. Code §13A-14-2 | A,B |
| Public Records | Ala. Code §§36-12-2; 36-12-40, 41, 42; 41-13-1 *et seq.* | B |
| **Alaska** | | |
| Open Meetings | Alaska Stat. §§44.62.310, .312 | B,D |
| Public Records | Alaska Stat. §§09.25.110, .120 | B,D |
| **Arizona** | | |
| Open Meetings | Ariz. Rev. Stat. §38-431 *et seq.* | A,B,D |
| Public Records | Ariz. Rev. Stat. §39-121 *et seq.* | B,D |
| **Arkansas** | | |
| Open Meetings | Ark. Stat. Ann. §12-2801 *et seq.* | B,D |
| Public Records | Ark. Stat. Ann. §12-2801 *et seq.* | B,C,D |
| **California** | | |
| Open Meetings | Cal. Gov't Code §§11120-11131; 54950-54961 | B,C,D |
| Public Records | Cal. Gov't Code §§6250-6267; Cal. Civil Code §1798 *et seq.* | B,C,D |
| **Colorado** | | |
| Open Meetings | Col. Rev. Stat. §§24-6-401, 402 | B,D |
| Public Records | Col. Rev. Stat. §24-72 | B,D |
| **Connecticut** | | |
| Open Meetings | Conn. Gen. Stat. §1-21 | B,D |
| Public Records | Conn. Gen. Stat. §1-19 | B,D |
| **Delaware** | | |
| Open Meetings | Del. Code Ann. tit. 29, ch. 100 | A,B,C,D |
| Public Records | Del. Code Ann. tit. 29, ch. 100 | B,C,D |
| **District of Columbia** | | |
| Open Meetings | D.C. Code §1-1511 | B,D |
| Public Records | D.C. Code §1-1521 *et seq.* | B,D |
| **Florida** | | |
| Open Meetings | Fla. Stat. Ann. §286-011 | A,B |
| Public Records | Fla. Stat. Ann. ch. 119 | A,B |
| **Georgia** | | |
| Open Meetings | Ga. Code Ann. §50-14-1 *et seq.* | A,B,D |
| Public Records | Ga. Code Ann. §50-18-70 *et seq.* | A,B,D |
| **Guam** | | |
| Open Meetings | Guam Code §3225 *et seq.* | B,D |
| Public Records | Guam Code §6750 *et seq.* | B,D |
| **Hawaii** | | |
| Open Meetings | Haw. Rev. Stat. ch. 92, pt. I | A,B,D |
| Public Records | Haw. Rev. Stat. ch. 92, pt. V | B,D |
| **Idaho** | | |
| Open Meetings | Idaho Code §§67-2340–2347 | B,D |
| Public Records | Idaho Code §§9-301–9-335, 59-1009–1001 | B,D |

**Table 9—Open Meetings and Public Records Statutes and the Roles of the Attorney General—*Continued***

| Jurisdiction | Statutes | Roles |
|---|---|---|
| **Illinois** | | |
|   Open Meetings | Ill. Rev. Stat. ch. 102, 41 *et seq.* | A,B,C,D |
|   Public Records | Ill. Rev. Stat. ch. 116, 201 *et seq.* | B,C,D |
| **Indiana** | | |
|   Open Meetings | Ind. Ann. Stat. §§5-14-1.5-3; 4-22-2-16 | B,C,D |
|   Public Records | Ind. Ann. Stat. §5-14-3-1 *et seq.* | B,C,D |
| **Iowa** | | |
|   Open Meetings | Iowa Code ch. 21 | A,B,D |
|   Public Records | Iowa Code ch. 22 | A,B,C |
| **Kansas** | | |
|   Open Meetings | Kan. Stat. Ann. §75-4317 *et seq.* | A,B,C |
|   Public Records | Kan. Stat. Ann. §45-215 *et seq.* | B,C |
| **Kentucky** | | |
|   Open Meetings | Ky. Rev. Stat. §§61.805-850 | B,C,D |
|   Public Records | Ky. Rev. Stat. §§61.870-884 | B,C,D |
| **Louisiana** | | |
|   Open Meetings | La. Rev. Stat. Ann. §§42:1-12 | A,B |
|   Public Records | La. Rev. Stat. Ann. §§44:1-44 | B |
| **Maine** | | |
|   Open Meetings | Me. Rev. Stat. Ann. tit. 1, §401 *et seq.* | B,D |
|   Public Records | Me. Rev. Stat. Ann. tit. 1, §408 | |
| **Maryland** | | |
|   Open Meetings | Md. State Gov't Code Ann. §10-501 *et seq.* | B,D |
|   Public Records | Md. State Gov't Code Ann. §10-611 *et seq.* | B,D |
| **Massachusetts** | | |
|   Open Meetings | Mass. Gen. Laws Ann. ch. 39, §§23A-23C, ch. 34, §9F-G; ch. 30A, §§11A-B | A,B,D |
|   Public Records | Mass. Gen. Laws Ann. ch. 66, §10; ch. 4, §7 | A,B,D |
| **Michigan** | | |
|   Open Meetings | Mich. Comp. Laws Ann. §15.261 *et seq.* | A,B,D |
|   Public Records | Mich. Comp. Laws Ann. §15.231 *et seq.* | B,D |
| **Minnesota** | | |
|   Open Meetings | Minn. Stat. §471.705 | B,D |
|   Public Records | Minn. Stat. ch. 13 | B,D |
| **Mississippi** | | |
|   Open Meetings | Miss. Code Ann. §§25-41-1–15 | A,B,C,D |
|   Public Records | Miss. Code Ann. §§25-61-1–17 | A,B,C,D |

**Table 9—Open Meetings and Public Records Statutes and the
Roles of the Attorney General—*Continued***

| Jurisdiction | Statutes | Roles |
|---|---|---|
| Missouri | | |
|   Open Meetings | Mo. Rev. Stat. §610.010 *et seq.* | A,B,C,D |
|   Public Records | Mo. Rev. Stat. §109.200 *et seq.* | A,B,C,D |
| Montana | | |
|   Open Meetings | Mont. Code Ann. tit. 2, ch. 3 | A,B,D |
|   Public Records | Mont. Const. art. II, §§8-9 | B,D |
| Nebraska | | |
|   Open Meetings | Neb. Rev. Stat. §84-1401 *et seq.* | A,B,D |
|   Public Records | Neb. Rev. Stat. §84-712 *et seq.* | A,B,C,D |
| Nevada | | |
|   Open Meetings | Nev. Rev. Stat. ch. 241 | A,B,C,D |
|   Public Records | Nev. Rev. Stat. §239.010 | B,D |
| New Hampshire | | |
|   Open Meetings | N.H. Rev. Stat. Ann. §91-A | B,C,D |
|   Public Records | N.H. Rev. Stat. Ann. §91-A | B,C,D |
| New Jersey | | |
|   Open Meetings | N.J. Stat. Ann. §10:4-6 *et seq.* | B,C,D |
|   Public Records | N.J. Stat. Ann. §47:1A-1 *et seq.* | B,C,D |
| New Mexico | | |
|   Open Meetings | N.M. Stat. Ann. §§10-15-1–4 | A,B,D |
|   Public Records | N.M. Stat. Ann. §§14-2-1–3 | B,D |
| New York | | |
|   Open Meetings | N.Y. Pub. Off. Law art. 7, §§100-111 | B,D |
|   Public Records | N.Y. Pub. Off. Law art. 6, §§850-898 | B,D |
| North Carolina | | |
|   Open Meetings | N.C. Gen. Stat. §143-318.9 *et seq.* | B,D |
|   Public Records | N.C. Gen. Stat. §132-1 *et seq.* | B,D |
| North Dakota | | |
|   Open Meetings | N.D. Cent. Code §§44-04-19 | B |
|   Public Records | N.D. Cent. Code §44-04-18 | B |
| Ohio | | |
|   Open Meetings | Ohio Rev. Code Ann. §121.22 | A,B,D |
|   Public Records | Ohio Rev. Code Ann. §149.42 | B,D |
| Oklahoma | | |
|   Open Meetings | Okla. Stat. tit. 250.5, §301 *et seq.* | B,D |
|   Public Records | Okla. Stat. tit. 510.5, §24.1 *et seq.* | |
| Oregon | | |
|   Open Meetings | Or. Rev. Stat. §192.610 *et seq.* | B,D |
|   Public Records | Or. Rev. Stat. §192.410 *et seq.* | A,B,D |

**Table 9—Open Meetings and Public Records Statutes and the Roles of the Attorney General—*Continued***

| Jurisdiction | Statutes | Roles |
|---|---|---|
| Pennsylvania | | |
| Open Meetings | 65 Pa. Stat. Ann. §271 *et seq.* | B,D |
| Public Records | 65 Pa. Stat. Ann. §66.1 *et seq.* | B,D |
| Puerto Rico | | |
| Open Meetings | No statute | |
| Public Records | No statutes (scattered dispositions and case law) | B,D |
| Rhode Island | | |
| Open Meetings | R.I. Gen. Laws §42-46-10 | |
| Public Records | R.I. Gen. Laws §38-2-1-12 | |
| South Carolina | | |
| Open Meetings | S.C. Code Ann. §30-4-60 | B |
| Public Records | S.C. Code Ann. §30-4-30 | B |
| South Dakota | | |
| Open Meetings | S.D. Codified Laws Ann. §1-25-1-4 | A,B,C,D |
| Public Records | S.D. Codified Laws Ann. §1-27-1-3 | A,B,C,D |
| Tennessee | | |
| Open meetings | Tenn. Code Ann. §§8-44-101–201 | B |
| Public Records | Tenn. Code Ann. §§10-7-101–509 | B |
| Texas | | |
| Open Meetings* | Tex. Rev. Civ. Stat. §6252-17 | B,D |
| Public Records** | Tex. Rev. Civ. Stat. §6252-17a | A,B,D |
| Utah | | |
| Open Meetings | Utah Code Ann. §52-4-8 *et seq.* | A,B,C |
| Public Records | Utah Code Ann. §§63-2-66, 78-26-2, 78-26-3 | B,C,D |
| Vermont | | |
| Open Meetings | Vt. Stat. Ann. tit. 3, §311 | B,D |
| Public Records | Vt. Stat. Ann. tit. 3, §315 | B,D |
| Virginia | | |
| Open Meetings | Va. Code Ann. §§2.1-343–346.1 | B,D |
| Public Records | Va. Code Ann. §2.1-342 | B,D |
| Virgin Islands | | |
| Open Meetings | V.I. Code Ann. tit. 1, §§251-256 | B,D |
| Public Records | V.I. Code Ann. tit. 3, §§881-884 | B,D |
| Washington | | |
| Open Meetings | Wash. Rev. Code §42.30 | B,C,D |
| Public Records | Wash. Rev. Code §42.17.250 *et seq.* | B,C,D |
| West Virginia | | |
| Open Meetings | W.Va. Code §6-9A *et seq.* | B,D |
| Public Records | W. Va. Code §29B-1-0 *et seq.* seq. | |

Table 9—Open Meetings and Public Records Statutes and the Roles of the Attorney General—*Continued*

| Jurisdiction | Statutes | Roles |
|---|---|---|
| Wisconsin | | |
| Open Meetings | Wis. Stat. §§19.81-19.98 | A,B,C,D |
| Public Records | Wis. Stat. subch. II, ch. 19 | A,B,C,D |
| Wyoming | | |
| Open Meetings | Wyo. Stat. §§16-4-101–407 | B,D |
| Public Records | Wyo. Stat. §§16-4-201–205 | B,D |

Legend—
A = Sues on behalf of the public to enforce requirements.
B = Advises state officials and agencies on interpreting public records and open meetings requirements.
C = Issues attorney general opinions to the public on application of these laws.
D = Defends state officials and agencies against litigation brought by the public to enforce open meetings and public records laws.
*Open meetings opinions issued only to authorized requesters under the Government Code.
**Open records issued to custodians of records under Open Records Act.

the exception quite narrowly. In fact, the judicial trend favors public accessibility to the meetings and records of governmental bodies.

## Enforcement Function

Enforcement of the policy of open government is often the business of the Attorney General. In many states, the Attorney General may enforce compliance of all governmental bodies with the state's public records law. In some states such as Oregon, the Attorney General supervises the public records law compliance of state agencies, but not local governmental bodies. In other states, the Attorney General has no enforcement authority under the public records disclosure law, and citizens denied inspection of public records must resort to a civil suit to enforce the law. At least 14 states provide for penalties in the event of a willful violation. In addition to possible fines, a criminal conviction is punishable by up to 30 days imprisonment in Arizona; one to six months in Louisiana; up to six months in New Mexico; up to three months in Nebraska; and up to two years in North Carolina.

Similarly, the respective enforcement responsibilities of Attorneys General under state open meetings laws vary widely. In Oregon, the Attorney General has no open meetings enforcement responsibility to match his public records authority. In Nevada, the Attorney General prosecutes open meetings violations by state and local officials but has no parallel authority regarding the state public records law. In most states, aggrieved citizens must enforce an open meetings law through private civil suits. Several states, including Illinois, provide for criminal prosecution for open meetings violations with

punishment by fines as high as $500 and by 30 days imprisonment. In Iowa and Minnesota, sanctions include forfeiture of office for the third open meetings violation by the same individual serving on the same board.

## Key Issues

While most Attorneys General provide general advice to state agencies on the requirements of government-in-the sunshine laws, an Attorney General's role in open government may be much more active. If a state agency refuses to abide by an Attorney General's interpretation of the open meetings law or the public records disclosure law, the Attorney General may choose to vindicate in a court of law the public interest in open government.

For example, under the Oregon Public Records Law,[2] a person denied access to records of a state agency by a nonelected state official may petition the Attorney General to order public disclosure of the records. When the Attorney General notifies the agency of the filing of the petition, the agency is required to transmit to the Attorney General the records and a statement of its reasons for refusing to allow inspection of the records. The Attorney General has seven days to review the records to determine whether the agency's withholding of disclosure is lawful. If the Attorney General decides that the Oregon Public Records Law requires public disclosure of the records, the Attorney General is directed by statute to order the agency to permit inspection and copying of the records. State agencies in Oregon must comply with an Attorney General's order to disclose public records, unless the agency promptly notifies the Attorney General of its intention to seek a judicial declaration that the records are exempt from disclosure and promptly files suit for declaratory judgment. In such an exceptional circumstance, the Oregon Attorney General does not represent the agency, but may appear in the declaratory judgment proceedings to argue in favor of public disclosure of the records. If an agency simply ignores an Oregon Attorney General's disclosure order without instigating declaratory judgment proceedings, the Attorney General will not represent the agency in an action for disclosure brought by a member of the public.

The Attorney General's most important contribution to open government is the establishment of policies and procedures to be applied by staff attorneys when agencies seek legal advice on the requirements of public records and open meetings laws. The ultimate sanction of refusing legal representation to a recalcitrant state agency may never have to be threatened if state officials and employees are on notice that the Attorney General actively will enforce the require-

---

[2] Or. Rev. Stat §192.410-192.505.

ments of open meetings and public records acts to the extent authorized by law.

## Additional Resources

*Attorney General's Public Records and Meetings Manual*, published by the Oregon Attorney General.

*Government in the Sunshine*, published by the Florida Attorney General.

NAAG, *Open Meetings: Exceptions to State Laws* (March 1979).

*Open Meetings Law Manual*, published by the Nevada Attorney General.

CARL T. C. GUTIERREZ
GOVERNOR OF GUAM

MADELEINE Z. BORDALLO
LIEUTENANT GOVERNOR OF GUAM



CHARLES H. TROUTMAN
COMPILER OF LAWS

OFFICE OF THE ATTORNEY GENERAL
TERRITORY OF GUAM

Compiler of Laws Division
238 F.C. Flores Street, Suite 701
Agaña, Guam 96910-5185

PHONE: +671 475 3309
FAX: +671 472 6992
E-MAIL: troutman@ns.gu

April 1, 1997

Honorable Robert Underwood, MC.
House of Representatives

FAX: Guam 477-2587
       Washington, DC 202-226-0314

Dear Congressman Underwood,

Here are my comments on your proposed amendments to the Organic Act:

1.     Unfortunately your proposal with respect to education will not solve the present
       lawsuit. The issue being litigated now is that other provisions of the Organic Act
       establish three branches of government, the general (not specific) supervision of the
       Governor over the Executive Branch and the power of the Legislature to appropriate
       funds. DOE is arguing that the existing language overrides these basic structures f
       government, enabling a fourth branch, totally separate and apart from the executive, to
       exist and to be funded without any input from the Executive. Some recent proposals,
       one of which was declared unconstitutional at the trial level, would have automatic
       appropriations if the Legislature did not object within 45 days. Unless the education
       sections are specific, I see no end to suits and disputes.

       Therefore, I suggest that your amendment specify whatever structure you wish to
       propose, en elected board; an state-level board under the Governor with elected
       district boards (like in the US) to be created by the Legislature; or whatever. You need
       to be specific if you are to avoid more litigation. Indeed, your proposal would seem to
       indicate that public education could be created totally separate and apart fro the
       government. Is that your intent?

2. Your amendment regarding the Attorney General is very welcome. However, it goes only one-third of the way. Section 1421g(c) (Organic Act) provides for a Public Prosecutor:

(c) Office of Public Prosecutor; Office of Public Auditor. The Government of Guam may by law establish an Office of Public Prosecutor and an Office of Public Auditor. The Public Prosecutor and Public Auditor may be removed as provided by the laws of Guam.

One reason why the law was never implemented was that it would, *de facto* require a split of the Attorney General's Office. Our experience under the 16th Legislature (before it was declared inorganic) was not all good. Political was not removed from the office and never will be. Another reason for ignoring this law is that it does not provide any specific powers, nor means for appointment, and hence no local consensus.

I have always been of the opinion that the means of appointment is far less important than the tenure of office. We do not elect federal judges, but their independence is assured through other mechanisms. Yet an elected Attorney General would not necessarily be bad, though by no means would anything get solved by such a change. Now that person would have a personal agenda to pursue, as well as that of the general government. I saw this shift when I was representing both the appointed and. later, the first elected Board of Education. Also, the position, if you mention it at all, must be created by the Organic Act, not just permitted. Permission would permit the creation of another office with lesser powers to get around the fact that the Attorney General is the legal officer for the Government of Guam — and there are many who would do just that! The Organic Act should stop games playing as much as possible, not increase it.

The Constitution of Illinois is an excellent example of a very good Attorney General. Modifying the concepts found there for Guam (unicameral legislature, etc.), I suggest the following changes to your proposed bill:

> "(d)(1) There shall be with the Executive Branch of the Government of Guam an Attorney General, who shall be [elected by the voters of Guam] [appointed by the Governor with the advice and consent of the Legislature]. The Attorney General shall server for a term [{if elected} commencing at the same time as the term of the Governor of Guam and ending at the same time] [{if appointed] ending at the same time as the term of office of the appointing Governor, but the Attorney General and until a successor is appointed and qualified.] [{If elected} The Attorney General may be removed from office in the same manner as may be the Governor of Guam.] [{If appointed} The Governor may remove the Attorney General, but only for cause provided in law, or if he be convicted of a felony or a misdemeanor involving moral turpitude. However, the Attorney General may appeal such removal to the Supreme Court of Guam.]

(2) The Attorney General shall be the legal officer of Guam, and
shall be the Public Prosecutor of Guam, and shall have the duties
and powers that may be prescribed by law."

The material in brackets [...] are alternatives depending upon the choice as to method of appointment. I am concerned about your draft because, in leaving it solely up to the Legislature, you are not creating a strong office, but rather a weak one having no improvements over the present situation. You should also repeal the current section permitting a Public Prosecutor and regulating that officer's removal.

3.   With modern communications, it is high time that we do not require an acting Governor whenever the Governor leaves island.

4.   Supreme Court. This is an excellent proposal, and will solve many problems. However, I do have some suggestions. I do not think § (a)(3) will work. While it may good to provide for some inherent powers, I think you have done it as much as can be done by providing that the Supreme Court is the highest court of Guam. Each state has its own history and doctrine as to what are its inherent powers. It really is not possible to apply the doctrine of 50 states to one jurisdiction. There are too many contradictions. There are too many different state constitutional provisions on the subject.

In the same way as my suggestions in for the other amendments, I suggest that you provide for the appointment and removal of the judges and justices. In the past, there have been amendments to such provisions to ensure that certain individuals are made judges, even where they were not qualified under the prior law. {Some have turned out to be good judges, but that does not mean we should pass laws for particular persons.)

Again, the Illinois Constitution can be instructive, but here the complex structure of the State judiciary makes copying not practical. However, as a replacement for item (3), I suggest the following:
> General administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules. The Supreme Court shall appoint an administrative director and staff to assist the Chief Justice in his duties. The administrative director shall serve at the pleasure of the Court. Subject to the overall direction of the Supreme Court, the Legislature may provide for the staff structure and employment in the lower court(s) of Guam.

Assuming that you do not want to change the appointment and tenure of the justices and judges, I suggest the following changes to subsection (c):
> (c) The qualification and duties of the justices and judges of the local courts of Guam, and the practice and procedure of these courts, shall be governed by the laws of Guam.

I have trouble in finding the reference to your amendment to 22C relative to appeals. Are the citations correct (or my sources incorrect)?

Thank you for the opportunity to express my observations on this proposal.

Sincerely yours,

*Charles W. Troutman*

CHARLES H. TROUTMAN



**ROBERT A. UNDERWOOD**
Guam

**NATIONAL SECURITY COMMITTEE**
SUBCOMMITTEES
Military Readiness
Military Personnel
Military Installations and Facilities

**RESOURCES COMMITTEE**
SUBCOMMITTEE:
National Parks and Public Lands

**WASHINGTON OFFICE.**
424 Cannon House Office Building
Washington, DC 20515-5301
Ph: (202) 225-1188
Fax: (202) 226-0341
e mail: guamiodc@hr.house.gc

**GUAM OFFICE:**
Suite 107
120 Father Duenas Avenue
Agana, GU 96910
Ph: (671) 477-4272/73/74
Fax: (671) 477-2587

# Congress of the United States

## House of Representatives

### Washington, DC 20515-5301

July 10, 1997

Mr. Charles H. Troutman
Guam Compiler of Laws
Office of the Attorney General
238 Archbishop F.C. Flores Street, Ste. 701
Agana, Guam 96910-5185

Dear Attorney Troutman:

Thank you for your continued input on my proposals to amend the Organic Act of Guam. I recently sponsored a questionnaire designed to obtain the input of Guam's people on three proposed amendments. These are (a) an amendment that would confirm the Supreme Court's authority over the judicial branch of our government; (b) an amendment that would provide for an elected Attorney General; and (c) an amendment concerning the powers of the Governor and Lt. Governor when they are off-island and on official business. The results were encouraging and I am prepared to advance the amendments concerning the Supreme Court and the Attorney General.

In your correspondence of April 1, you recommended that the office of Attorney General be provided for by the Organic Act of Guam regardless of whether it is an elected or appointed position. The Twenty-third Guam Legislature passed a unanimous resolution last session, in favor of an elected Attorney General. Nearly 70% of the respondents to my questionnaire were in favor of an elected Attorney General. Some 53% of those who favored an elected Attorney General preferred to give the Guam Legislature the authority to create such an office.

I have attached draft language that would enable the legislature to provide for an elected Attorney General. The language establishes the office of Attorney General in the Organic Act and specifically provides the means for appointment and removal. Should the legislature choose to exercise this authority, are there any provisions you wish to see included in this legislation?

Please review the draft language and provide me with your input as soon as possible. Once again, thank you for your assistance.

Sincerely,

**ROBERT A. UNDERWOOD**
Member of Congress

10  SEC. 3. ESTABLISHMENT OF OFFICE OF ATTORNEY GEN-

11  ← ERAL.

12      Section 29 of the Organic Act of Guam (48 U.S.C.

13  1421) is amended by adding at the end the following new

14  subsection:

15      "(d) The Government of Guam may establish by law

16  an Office of the Attorney General of Guam within the ex-

17  ecutive branch of the Government of Guam. Such law

18  shall—

19          "(1) provide for the Attorney General of Guam

20      to be—

21              "(A) appointed by the Governor, with the

22          advice and consent of the legislature, for a term

23          ending when a successor is appointed and quali-

24          fied; or

· F:\M5\UNDERW\UNDERW.010                                                H.L.C.

3

1          "(B) elected by the people of Guam at the

2          same time, for the same term, and subject to

3          removal in the same manner as provided for the

4          Office of Governor of Guam; and

5          "(2) set forth the duties and compensation of

6          the Attorney General of Guam.".



**DEPARTMENT OF LAW**

CARL T.C. GUTIERREZ
Maga'låhi
Governor

MADELEINE Z. BORDALLO
Tinñente Gubetnadora
Lieutenant Governor

Ufisinan Hinirāt Abugao
Tiritorian Guåhan

**OFFICE OF THE ATTORNEY GENERAL**
Territory of Guam

CALVIN E. HOLLOWAY, SR.
Hinirāt Abugao
Attorney General

CHARLES H. TROUTMAN
Rikobidot i Lai Guåhan Siha
Compiler of Laws

July 16, 1997

Hon. Robert A. Underwood, M.C.
170 Father Duenas Avenue, Suite 107
Agana, GU 96910

Dear Congressman Underwood,

Thank you for sending me the draft amendment to the Organic Act on the Attorney General. I do have a few comments.

First, if the position is to be appointed, I believe that the Organic Act should make it a true "constitutional position" by providing not only a method of removal (other than at the will of the Governor) but also provide for the basic functions of the position, as I mentioned in my earlier letter. The first, regarding removal, is required to overcome the judicial decisions that invalidated the former Public Prosecutor — that the Organic Act as written did not permit the Legislature to protect the office from removal for any reason if the Governor so desired. The Organic Act has been amended with respect to the "public prosecutor" to permit the Legislature to regulate the manner of removal of the officer. To make a meaningful amendment, such must be added here, or we will revert to pre-1984 law.

Second, if there is any substantive meaning to your amendment, the Attorney General needs to have some basic constitutional powers that are not subject to the Legislature's total will. Once before, the Legislature removed from the Attorney General the power to challenge unconstitutional laws because it did not like one challenge he brought. That limitation was removed when the Public Prosecutor law was invalidated. I don not want to see that kind of skirmishing reinvented.

Therefore, I suggest the following changes to your proposal:

Compiler of Laws Division (Dibision Fanrikohiyan i Lai Guåhan Siha)
238 Archbishop Flores Street, Suite 701 •Agaña, Guam 96910-5185 USA
Phone: (671)-475-3252 • Fax: (671-472-6992 • E-mail: troutman@ns.gu

beginning on line 22, page 2:

> "(A) appointed by the Governor, with the advice and consent of the legislature, for a term ending when a successor is appointed and qualified, **and subject to removal only for causes stated in law; or"**

change item (d)(1)(A)(2) to (d)(1)(A)(3) on line 5 of page 3.

> "(2) set forth the duties and compensation of the Attorney General, who, in addition, shall be the chief legal officer of the Government of Guam having cognizance over all legal matters in which the government is in anywise interested."

The broad language comes from the existing law on the jurisdiction of the Attorney General, but haw been modified with reference to other agencies. I do not see this language as eliminating the use of outside counsel for various agencies, but would keep a check on having many and diverse legal "empires" within the government of Guam. This is the same idea as expressed in the 1970 Illinois Constitution.

Thank you for your consideration.

Sincerely yours,

*Charles H. Troutman*

CHARLES H. TROUTMAN
Compiler of Laws

## DEPARTMENT OF LAW



**CARL T.C. GUTIERREZ**
Maga'låhi
Governor

**MADELEINE Z. BORDALLO**
Tiñiente Gubetnadora
Lieutenant Governor

Ufisinan Hiniråt Abugao
Tiritorian Guåhan

### OFFICE OF THE ATTORNEY GENERAL
Territory of Guam

**CHARLES H. TROUTMAN**
Hiniråt Abugao
Attorney General (Acting)

**CHARLES H. TROUTMAN**
Rikohidot i Lai Guåhan Siha
Compiler of Laws

September 2, 1997

Dear Congressman Underwood,

I am sorry for the delay, but I have been somewhat busier this month. I think Bill 354 by Senator Barrett-Anderson has several defects. First, it is inorganic for two reasons. I do not believe that the present Organic Act permits election even for a Public Prosecutor. The amendment permitted the establishment of the office of Public Prosecutor, and permitted the laws of Guam to regulate his/her removal. No mention is made of appointment. Therefore, I conclude that appointment of this Executive Branch officer still remains with the Governor as provided elsewhere in the Organic Act. Second, I believe it is inorganic to expand the idea of a Public Prosecutor to mean the entire legal representation of the Government of Guam. The legislative history will show that the Organic Act was amended in answer to the rejection of the Territorial Prosecutor by the courts. The US Supreme Court has never allowed such expansive readings of the Organic Act. See *People v. Olsen.*

For this reason, the Bill is premature. It is especially so when one considers the fact that the 9th Circuit refused to give retroactive effect to the School Board amendments found in the same Omnibus Bill as are these amendments.

The Bill is incomplete. It should address the reorganization of the Attorney General and the various problems now besetting the Office if the means of selection is to be changed this drastically. There a number of local problems, rightfully the subject of local legislation, that need addressing. Such include the relationship between the Attorney General and counsel assigned or and/or hired by individual agencies, their funding, etc.

Compiler of Laws Division (Dibision Fanrikohiyan i Lai Guåhan Siha)
238 Archbishop Flores Street, Suite 701 •Agaña, Guam 96910-5185 USA
Phone: (671)-475-3252 • Fax: (671-472-6992 • E-mail: troutman@ns.gov.gu

I don't particularly care if the Prosecution Division is separated from the Attorney General, but only if there is enough control remaining in the Attorney General so that he/she still retains general supervision over the legal affairs of the Government of Guam. Most, if not all, state attorneys general retain the power to file appeals ro decline them, and to take over prosecutions in cases of conflict of interest or other good reasons. I believe the general attitude to divorce all the legal activities from "the Governor" is just plain bad policy.

Concerning your Bill, I would hope that you can amend it to provide that the Attorney General, no matter how he/she is selected, has the "constitutional" duty of being the chief legal officer for the Government of Guam and has some form of "constitutional" tenure of office. If elected, removal probably would be in lake manner to that of the Governor. If appointed, removal could be only for stated causes.

Thank you for your consideration.


Sincerely yours,


CHARLES H. TROUTMAN
Compiler of Laws

# Committee on Resources

## Witness Testimony

**Attorney General Charles Troutman**
Statement - Guam Commonwealth Act
October 29, 1997

Dear Mr. Chairman,

Thank you for holding hearings on H.R. 2370, "A Bill to amend the Organic Act of Guam for the purpose of clarifying the local judicial structure and the Office of the Attorney General." A Bill such as this is sorely needed on Guam and will finally create a genuine three-branch form of government for Guam. I would appreciate it if you would enter this testimony into the record of the Hearing.

TESTIMONY OF

CHARLES H. TROUTMAN

ACTING ATTORNEY GENERAL OF GUAM

IN FAVOR OF H.R. 2370

Mr. Chairman and members of the Committee on Resources,

Perhaps it may seem strange to be testifying on an amendment to the Organic Act at the same hearing as we are testifying for a Bill which would completely replace that Act. I believe that Congress should pass both Bills, but with changes. To be realistic, a Guam constitution is several years in the future. The federal law authorizing a Guam Constitutional convention now has a sufficient number of problems so that trying to use it to create a constitution is not a practical possibility. In the past, Congress has amended the Organic Act to supposedly permit the people of Guam to do one thing or another, but, since 1984, the effects have been definitely mixed. The amendment regarding the educational system has caused lawsuits and is still the subject of much confusion simply because it is so vague and unclear, especially when dealing with such an important subject. Likewise, and contrary to the provisions of most state constitutions, reference to creating a "public prosecutor" continues to cause severe doubts as to whether that position can be elected, or must be appointed, and what can be the true scope of that office. The amendment permitting the creation of the Supreme Court has been partially successful, in that we have a Supreme Court of Guam now, and it has issued its first decisions -- very good ones, by the way.

But still Guam does not have a true government consisting of three branches of local government. The very existence of **all** of our local courts are subject to the will of the Legislature. Indeed, one person in 1977, now nominated to be a part-time Justice of the Supreme Court, advocated the abolition of the entire local court system, relying instead on a federal District Court of Guam having multiple judges. Fundamentally, the structure of the courts has not changed since 1977. They are still not a separate, fundamental branch of the government. Further, the District Court of Guam remains, even in HR 2370, the court of general jurisdiction for Guam, whatever that now means -- -- just one more ambiguity that we do not need.

A similar problem exists with respect to the Attorney General. Most of the states have created the Attorney

Case 1:03-cv-00008    Document 3    Filed 03/05/2003    Page 47 of 67

**21**

General as a constitutional officer. We now feel that the people of Guam should have that opportunity as well. The Attorney General is patterned after that of the United States Attorney General, appointed by the Governor with the consent of the Legislature. The term of office is indefinite, at the will of the Governor.

Because Guam needs the stability of a firm three-branch system of government, I believe these issues should be addressed forthrightly now. The Congress should not, as it did in the past amendments, make them vague in the extreme, with the explanation that the Congress did not wish to dictate how the people of Guam are to conduct its government. As long as we have an Organic Act, Congress does dictate, and the people require a better system as soon as possible.

I first testified on the need for a "constitutional" judiciary back in late 1976 when the late Delegate from Guam, Antonio Won Pat, had introduced a bill creating and establishing a Supreme Court for Guam. That Bill died in committee largely because the U.S. Supreme Court was considering the ability of Guam to create its own Supreme Court under the Organic Act as it then existed. Further hearings were held on Guam by the Pacific Territories Committee of the Administrative Office of the U.S. Courts. Those hearings resulted, in 1984, in the current Organic Act provisions permitting the Legislature to create an "appellate court" locally. That court was created and began operations in the middle of 1996. It has issued about a dozen decisions since then.

Since the Guam Supreme Court's creation, there has been skirmishing between it and the superior Court of Guam, and the Legislature, over whether the Supreme Court will really be the highest court of the Territory. For so long, the local courts consisted only of the Superior Court of Guam that giving up power is a very hard thing to do. Further the past history of the Superior Court and the Legislature will show that there is a need to make "constitutional" such things as the powers of the courts, their respective jurisdictions and, perhaps, terms of office.

I do have some concerns with Bill HR 2370. First, Section 2 appears ambiguous. What is intended by making the District Court of Guam, now a federal court with no local appellate functions, part of a "unified judicial system" of Guam? Does this imply some form of review by the District Court over the court system of Guam? Does this section imply that the District Court judge has some form of management power over the Guam courts?. I sincerely hope not. Congress already has imposed a fifteen-year period of review of the Supreme Court's decisions by the Ninth Circuit (by certiorari), though no such review has yet been sought by any party.. Rather, I believe that the District Court should be made more like an Article III court rather than part of the Guam judiciary system. Just what does this section mean?

Actually, I would like to see the United States constitutional standard for federal judges applied to the District Court of Guam. If this method of appointment is so important to the American system, why are the U.S. citizens of Guam not entitled to a similar federal judiciary rather than one which is appointed and reappointed every 10 years?

There seems to be one missing piece to this Bill -- no mention of a term or qualifications for the Supreme Court or Superior Court justices and judges. This is one area where the Legislature has, in the past, acted to insure the appointment of judges it desired. On one occasion, a law was passed extending the terms of all the judges so that one judge would not have to go through re-appointment by the then-Governor -- thus insuring his continuation in office. On a more recent occasion, the Legislature lowered the age and practice qualifications for the Superior Court so that a younger attorney could be appointed to a vacancy in the Superior Court. It is here that I believe more protection is needed rather than in some of the details contained in the present Bill.

Nevertheless, I support the provisions of this Bill concerning the Guam courts. I would urge your

Case 1:03-cv-00008    Document 3    Filed 03/05/2003    Page 48 of 67

consideration of those items I have mentioned and make the necessary changes to this measure.

Concerning Section 3 of HR 2370 -- affecting the position of Attorney General, I support Congressional action on this subject, but the present proposal is seriously deficient. I served as Attorney General from 1975 through 1977, and for extended periods as Acting Attorney General in 1987 and again presently. I have worked in the Attorney General's Office of Guam since 1970 with about two years out in private practice. There have been great changes in the Office during the past 27 years, but one thing remains the same -- the Attorney General is appointed, as is the United States Attorney General, to serve at the pleasure of the chief executive. This has hindered the development of the Office, but in general not because of improper interference by the Governor, any Governor, but because the Office has been unable to develop a vision of its own. I have been told by some state Attorneys General that they could not serve under such conditions.

In addition, the present Organic Act provides only that a "public prosecutor" may be created by the Legislature and that the Legislature may by law regulate that officer's "removal". There is no mention of how that officer is to e appointed. This has caused considerable confusion and controversy as the Legislature has tried to create an elected position, which I do not believe is presently permitted. Likewise, the Legislature has tried, but not yet passed, a bill which would make the Attorney General, now having both criminal and civil responsibility, the "Public Prosecutor", and then be an elected official.

Right now, I express no preference for an appointed or elected Attorney General, **so long as the position is defined as "constitutional" (in the Organic Act) and the overall duties and functions provided in the Organic Act,** much as is found in the Constitution of the State of Illinois. Thus, I believe that three amendments are required to Section 3 of this Bill in order to make a serious difference in the Attorney General's functions:

First, repeal the reference in the Organic Act to the "public prosecutor". This office has never been created and the ambiguities in the present law will only be compounded if it is permitted to stand alongside the amendments proposed here. If it is desirable to keep a reference to a "public prosecutor" in the Organic Act, then it should be mentioned in Section 3 of this Bill, but only in such a way so as not to subordinate the Attorney General in that position's overall duties as Chief legal officer of Guam. The Public Prosecutor could contain similar provisions as are given to the Attorney General, permitting the Legislature to create and appointed or elective office. The point is, we do not need two "Attorney General" positions for Guam.

Second, On page 6, lines 24-25, the duties of the Attorney General should be changed by deleting item (d)(2) and adding the following below subsection (d) so that it is of equal standing and not subordinate to subsection (d):

"The Attorney General shall be the chief legal officer of the territory of Guam and shall have such other duties and such compensation as the Legislature may provide by law."

Third, a provision needs to be made to insure the viability of the office by providing some stability of the term. This is actually far more important than the method by which the Attorney General is to be selected. Therefore, I strongly urge another amendment, probably just following my second suggestion, which would read:

"Whether the Attorney General be appointed, as provided in subsection (d)(1)(A), or elected, as provided in subjection (d)(1)(B), the term and method of removal of the Attorney General shall be the same as is provided for an elected Attorney General."

These last amendments would provide what is really needed by the Attorney General -- a basic statement of duties and a term that was not at the pleasure of any official. Of course, the Legislature could provide for vacancies as it does now. I believe that my amendments will do more for the Office than will a mere providing for Legislative choice of appointment or election. I recognize that the people of Guam seem not to be decided upon the method of choosing the Attorney General. This does not matter that much. What does matter, is that the Attorney General have the independence once he or she is in office, to accomplish the duties of the Office and to develop that office to the degree it deserves.

While Section 3 clears up one glaring ambiguity in the present Organic Act, it does little to address the real, substantive problems of the Attorney General. I urge this Committee to amend Section 3 of H.R. 2370 to address the concerns I have with regard to the Office of Attorney General on Guam.

Thank you for your kind attention.

CHARLES H. TROUTMAN

Attorney General of Guam (Acting)

###



**Office of the Attorney General**
**Douglas B. Moylan**
Attorney General of Guam
**Civil Division**
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 • USA
(671) 475-3324 • (671) 472-2493 (Fax)
www.guamattorneygeneral.com • law@mail.justice.gov.gu

**Attorneys for the Government of Guam**

# UNITED STATES DISTRICT COURT
# DISTRICT OF GUAM

| | |
|---|---|
| THE ATTORNEY GENERAL OF GUAM, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>WILLIAM R. THOMPSON, in his official )<br>capacity as Executive Manager of Guam )<br>Airport Authority, )<br>)<br>Defendant. )<br>──────────────────────────────) | Civil Case No. 03-00008<br><br><br><br>**DECLARATION** |

I, **DOUGLAS B. MOYLAN**, declare:

1.    I am plaintiff in the above entitled action, and I make this declaration in support of my Motion for Preliminary Injunction filed pursuant to Fed R Civ P Rule 65(a).

2.    I have personal knowledge of the facts stated herein and, if called as a witness, I could testify competently thereto.

3.    On November 5, 2002 I was elected as Guam's first elected Attorney General.



4.     On January 6, 2003 I was inaugurated as Guam's first elected Attorney General. My term as the Attorney General of Guam is for four (4) years.

5.     On January 28, 2003 I transmitted a letter to Defendant herein proposing that the Office of the Attorney General provide legal services to the Guam International Airport Authority ("GIAA"). Said letter is attached and incorporated herein as **Exhibit 1**.

6.     On or about February 13, 2003 I received a letter from Defendant notifying me that Defendant intended to retain private counsel to represent GIAA (Exhibit 1 of Complaint).

7.     On or about February 18, 2003 Defendant caused to be advertised notice in the Pacific Daily News newspaper of GIAA's intention to retain private legal counsel (Exhibit 2 of Complaint).

8.     The newspaper solicitation seeks that private legal counsel proposals be received by February 24, 2003.

9.     On March 4, 2003, the undersigned's Office received the attached contract for legal services by the Guam International Airport Authority seeking the undersigned's signature. Said contract is attached and incorporated herein as **Exhibit 2**.

I declare, under penalty of perjury, this 5th day of March, 2003 that the foregoing is true and correct to the best of my knowledge.

_____
**DOUGLAS B. MOYLAN**





# Office of the Attorney General
### Douglas B. Moylan
Attorney General of Guam
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 • USA
(671) 475-3324 • (671) 472-2493 (fax)
law@mail.justice.gov.gu

January 28, 2003

**VIA FACSIMILE**
**671-642-4484**

**Mr. William R. Thompson**
Executive Manager
Guam International Airport Authority
P.O. Box 8770
Tamuning, Guam 96931

### SUBJECT:   LEGAL REPRESENTATION OF GOVERNMENT OF GUAM

Dear Mr. Thompson:

Congratulations on your recent selection. I anticipate that you are already being faced with legal issues requiring the assistance of this Office.

As the "Chief Legal Officer of the Government of Guam" under the Organic of Guam (48 U.S.C. § 1421g(d)(1)), the undersigned is in the process of preparing memorandums of understanding for yours, and others, review which will provide your Office with our legal services. In addition to exercising the undersigned's right and obligation to the government of Guam to provide it legal services, we anticipate that our joint efforts will save the government millions of dollars compared to prior Administrations.

This Office is informed that there may be efforts to retain private counsel by certain government departments and agencies. *However*, the undersigned has *not* reviewed nor approved the involvement of any private attorneys to represent your Office, which is an instrumentality of the government of Guam, nor approved the expenditure of government funds to be used towards this end, which is required by the Guam Procurement Law.

# EXHIBIT 1

According to the Guam Procurement Law, 5 G.C.A. § 5121(b), in addition to the Organic Act of Guam and the Guam Rules of Professional Conduct for Lawyers (7 G.C.A. Appendix F), *supra*, the undersigned's approval is required *prior* to any private attorney being retained to represent the government of Guam. A copy of the relevant portion of the Guam Procurement Law is attached hereto. Moreover, the government of Guam is the undersigned's client and private counsels cannot communicate with the government of Guam without this Office's approval once this issue has been raised.

We are presently evaluating the extent that our Office will provide legal services to the various government of Guam instrumentalities, including your own. We are also ascertaining the involvement of the government of Guam in local and Federal lawsuits.

Since we wish to work cooperatively with your Office, the undersigned requests that you please call me (476-0296) to properly execute a memorandum of understanding to begin our relationship. Otherwise, you may have your staff speak directly with Deputy Attorney General Joseph Guthrie at 475-3324 to work out the particulars.

*Thank you* for your attention to these matters.

Sincerely,

**Douglas B. Moylan**

cc:     Felix P. Camacho, *Maga'lahen Guåhan*
Attachments (1)

1671 5 G.C.A. § 5121

## GUAM CODE ANNOTATED
### TITLE 5. GOVERNMENT OPERATIONS
### CHAPTER 5. GUAM PROCUREMENT LAW
### ARTICLE 2. PROCUREMENT ORGANIZATION
### PART C. ORGANIZATION OF PUBLIC PROCUREMENT.

*Current through P.L. 26-72 (2001)*

## 5121. Authority to Contract for Certain Services and Approval of Contracts.

(a) General Authority. For the purpose of procuring the services of accountants, physicians, lawyers, dentists and other rofessionals, any governmental body of this Territory may act as a purchasing agency and contract on its own behalf for such ervices, subject to this Chapter and regulations promulgated by the Policy Office, but this Subsection shall not authorize the ocuring of such services where any given governmental body is otherwise prohibited from procuring such services.

(b) Approval of Contracts for Legal Services. No contract for the services of legal counsel in the Executive Branch shall be xecuted without the approval of the Attorney General. Nothing in this Section or Chapter shall preclude the Attorney General or his esignee from participating in negotiations for any contract upon the request of the government officer or agency primarily esponsible for such negotiations.

(c) Approval of Contracts Generally. The Chief Procurement Officer, or his designee, or a procurement officer of an agency uthorized to procure the services or supplies in question, as stated in the Rules promulgated by the Policy Office, shall execute all ontracts for the government of Guam. The Chief Procurement Officer may approve standard form contracts or purchase orders and nce such approval of the standard form is given, contracts or purchase orders made on such form may be executed without the irther approval of the Chief Procurement Officer unless he has reserved such power of approval pursuant to the applicable rules romulgated by the Policy Office.

(d) Approval of Contracts by Department of Revenue and Taxation. Notwithstanding any other provision of law, the Directo: f the Department of Revenue and Taxation or his designee shall have exclusive authority to approve and execute all contracts for th rocurement of supplies, license plates, safety decals, tax forms, tax booklets, and printing services for the department.

*OURCE: GC § 6954.7. MPC § 2-302 modified. GC § 6107. Subsection (d) added by P.L. 18-15:X:43.*

<General Materials (GM) - References, Annotations, or Tables>

### *1672 NOTES, REFERENCES, AND ANNOTATIONS

COMMENT: Subsection (a) recognizes that the procurement of the services of professionals usually requires extended analysis by the ocuring department, and procurement is needed for the specific purposes of the department. However, the final clause is added by the Committee on General overnmental Operations to make sure that this Subsection does not authorize the use of, for instance, legal services, where other law. i.e., that pertaining to th ttorney General, does not authorize an entity to use its own legal counsel.

Subsection (b) recognizes the general primacy of the Attorney General over all legal matters of the Government of Guam. Other laws provid

Copyright (c) West Group 2002 No claim to original U.S. Govt. works

# PROFESSIONAL SERVICES AGREEMENT

This AGREEMENT is made between the law office of **MAIR, MAIR, SPADE & THOMPSON, A Professional Corporation ("Attorney")**, whose address is 414 West Soledad Avenue, Suite 807, GCIC Building, Hagåtña, Guam 96910 and the **A. B. WON PAT GUAM INTERNATIONAL AIRPORT AUTHORITY (the "Authority" or "GIAA")**, whose mailing address is P.O. Box 8770, Tamuning, Guam 96931.

## RECITALS

WHEREAS, GIAA is empowered under Public Law 13-57 to carry on the business of operating and maintaining the A. B. Won Pat Guam International Airport and its adjoining facilities, enter into contracts, retain the professional services of qualified individuals or firms, and various other activities;

WHEREAS, GIAA has the authority pursuant to Title 12 Guam Code Annotated Section 1108 to appoint an attorney who shall serve at the pleasure of the Board, and whose compensation shall be fixed by the Board. The attorney by statute is permitted to advise the Board and the Executive Director on all legal matters to which GIAA is a party or in which GIAA is legally interested. In addition, the attorney by statute is permitted to represent GIAA in litigation;

WHEREAS, GIAA has the authority pursuant to Title 12 Guam Code Annotated Section 1105(k) to "employ agents and retain or contract for the services of qualified consultants, specialists or experts, as individuals or as organizations, to advise and assist the Authority and its employees, all of which may be accomplished without regard to the portion of the Personnel Laws relative to compensation";

WHEREAS, GIAA has the authority pursuant to Title 4 Guam Code Annotated Section 2103.16 to "hire under independent contract persons who do not wish to be full-time employees . . . and who agree that they shall not receive any of the benefits given full-time non-contractual employees of the Government of Guam";

WHEREAS, GIAA intends to engage the professional services of Attorney to provide legal services to GIAA;

WHEREAS, the Governor of Guam has appointed William R. Thompson as the Executive Manager of GIAA;

WHEREAS, the Executive Manager of GIAA has authority to "select and appoint the employees of the Authority" pursuant to Title 12 Guam Code Annotated Section 1107(5);



**EXHIBIT 2**

WHEREAS, Attorney has submitted a statement of qualifications and an interest in providing such services;

WHEREAS, GIAA pursuant to Title 5 Guam Code Annotated Section 5216 issued a Request for Proposals giving adequate notice of the need for such services and Attorney was determined in writing by the head of the purchasing agency or a designee of such officer to be best qualified based on the evaluation factors set forth in the Request for Proposals, and fair and reasonable fees were agreed to between the parties; and

WHEREAS, GIAA and Attorney in consideration of the premises and the mutual covenants hereinafter set forth, agree as follows:

## AGREEMENT

NOW, THEREFORE, for and in consideration of the covenants and agreements herein set forth, and for other good and valuable considerations, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. **Scope of Services.** Attorney agrees in the capacity as counsel to GIAA to fully and competently perform the following scope of services:

   a) Act as counsel to the GIAA Board of Directors and Management;

   b) Prepare opinions, resolutions, and reports at the request of the Board or Executive Manager, as its designee(s);

   c) Undertake such legal research as shall be requested by GIAA or its designee(s);

   d) Advise GIAA from time to time as to needed revisions of the laws of Guam and of the Rules and Regulations pertaining to GIAA;

   e) Advise GIAA or its designee(s) of all legal matters to which GIAA is a party or in which GIAA is legally interested;

   f) Represent GIAA in connection with legal matters before the Legislature, Boards, and other agencies of Guam or of the United States;

g) Represent GIAA in litigation concerning the affairs of GIAA;

h) Review and/or prepare contracts, leases, bid invitations, and other documents as may be requested form time to time by the GIAA or its designee(s);

i) Provide legal assistance and advice during any negotiations with GIAA's tenants, concessionaires, and contractors; and

j) Perform special services as requested by GIAA.

Attorney agrees that in no instance shall it represent the interest of any person, natural or legal, against GIAA in any court action. In the event of a conflict of interest in representing GIAA in any legal matter, Attorney with the Board's consent and knowledge shall arrange for an appropriate alternate (legal representative).

**2. Personnel.** Attorney David A. Mair, shall be the primary legal representative of the Law Office of Mair, Mair, Spade & Thompson but any and all members of the Law Office of Mair, Mair, Spade & Thompson shall assist in discharging the duties of Attorney.

**3. Contract Term.** Subject to paragraph 16, the term of this Contract shall commence upon the execution hereof and continue for one (1) year with three options to extend for a period of one year, not to exceed a total contract period of four years with GIAA approval. Any reference to year in this agreement shall mean a twelve month period. This agreement may be terminated by either party upon 30 days written notice.

**4. Compensation.**

a) GIAA shall compensate Attorney according to its hourly rate schedule, attached hereto as Exhibit "A" for actual time devoted to performing the above-enumerated services.

b) Attorney shall invoice GIAA for payments on a monthly basis and shall be required to provide a record of hours worked and the description of work.

c) GIAA's obligation for payment of attorneys' fees and costs shall be subject to the availability of funds for such payment.

     d)     Attorney's monthly billings shall not exceed the sum of $50,000.00 per month without prior approval or subsequent ratification by the Procurement Officer of GIAA.

     e)     GIAA will closely monitor the performance of work by the Attorney and GIAA has determined that it would not be practical to use any other type of contract to obtain the needed services.

     f)     Attorney agrees that he shall not receive any of the benefits given full-time non-contractual employees of the Government of Guam.

**5. Expenses.** GIAA shall reimburse Attorney for the following expenses if incurred on behalf of GIAA:

     a)     Travel, food, lodging, and other related traveling expenses, provided the prior approval of GIAA is obtained for such travel and provided further that reimbursement for such travel expenses shall be pursuant to GIAA's policy and rates for per diem compensation;

     b)     The costs and fees of legal experts, consultants, specialists, investigators and co-counsel retained by Attorney with the prior approval of GIAA, which costs and fees may at GIAA's election be paid directly to such experts, consultants, specialists, and co-counsel, or to Attorney as reimbursement;

     c)     Process servers' fees, court reporters' fees, long distance telephone calls, messenger and delivery fees, postage, photocopying, parking, and other similar items customarily paid for by clients.

     d)     Any other expenses provided that the prior approval of GIAA has been obtained; and

     e)     Any other expenses that although the prior approval of GIAA was not obtained, the GIAA determines to have been beneficial and justified.

Attorney shall provide vouchers and receipts, together with a brief explanation of such expenses that it has incurred for the benefit of GIAA.

**6. Compliance with Laws and Regulations.** In performing the work provided for herein, Attorney agrees to fully comply with any and all applicable laws, rules, and regulations adopted or promulgated by any governmental agency or regulatory body, both territorial and federal. Attorney assumes fully responsibility for the payment of all contributions, payroll taxes, or assessments, territorial or federal, and further agrees to meet all requirements that may be specified under regulations of administrative officials or bodies charged with enforcement of any territory or federal laws on this subject.

**7. Access to Records.** Attorney shall maintain all books, documents, papers, accounting records, and other evidence concerning the expenses and costs incurred by Attorney's performance and shall make such material available to GIAA or its designee(s) for inspection and copying upon request during the term of this Agreement.

**8. Final Payment and Release of Claims.** Final payment shall be made upon satisfactory delivery and acceptance of all services as herein specified and performed under this agreement. Prior to final payment, as a condition precedent thereto, Attorney shall execute and deliver to GIAA a release, in a form approved by GIAA, of claims against GIAA arising under by virtue of this agreement.

**9. Independent Agent**. For the purpose of the Government Claims Act, Public Law 17-29, the Attorney, shall not be considered an agent of the Department of Law of the Territory of Guam with respect to any acts performed by it in connection with the discharge of the duties of this contract. There shall be no employee benefits provided under this contract, such as health or life insurance, retirement benefits, vacation leave or sick leave, and there shall be no withholding of taxes by GIAA. Attorney contracts herein with GIAA as an independent contractor, and is nether an employee nor an agent of GIAA for the purpose of performing the services hereunder. GIAA therefore assumes no responsibility of liability for the acts of Attorney which are performed in its independent and professional capacity.

**10. Scope of Agreement**. This Agreement supersedes any and all other agreements, either oral or in writing, between the parties hereto with respect to the retainment of Attorney by GIAA and contains all of the covenants and agreements between the parties with respect to such retainment in any manner whatsoever. Each party to this agreement acknowledges that no representation, inducements, promises or agreements, orally or otherwise, have been made by any party, or anyone acting on behalf of any party, which are not embodied herein, and that no other agreement, statement, or promise not contained in this Agreement shall be valid or binding. Any modification of this Agreement will be effective only if it is in writing signed by the party to be charged. For the purpose of this paragraph and of the entire Agreement, the signature of the Governor is the only signature that will bind GIAA.

**11. Responsibility of Attorney**.

Attorney shall be responsible for the professional and technical accuracy of all work and materials furnished under this contract. Attorney shall, without additional cost to GIAA, correct or revise all errors or deficiencies in his/her work.

GIAA's review, approval, acceptance of, and payment of fees for services required under this contract, shall not be construed to operate as a waiver of any rights under this contract or of any cause of action arising out of Attorney's failure to GIAA for all costs of any kind which may be incurred by GIAA as a result of Attorney's negligent performance of any of the services performed under this contract.

**12. Assignment of Agreement**. Attorney may not assign this agreement, or any sum becoming due under the provisions of this Agreement without the prior written consent of GIAA.

**13. General Compliance With Laws**. Attorney shall be required to comply with all Federal and Territorial laws and ordinances applicable to this work. Attorney shall attach a copy of the appropriate business license or a statement of exemption pursuant to Section 16024 of the Government Code.

**14. Access to Records and Other Review**. Attorney, including his subcontractors, if any, shall maintain all books, documents, papers, accounting records and other evidence operating to costs incurred and to make such materials available at their respective offices at all reasonable times during the contract period and for three (3) years from the date of the final payment under the contract, for inspection by GIAA. Each subcontract by Attorney pursuant to this Agreement shall include a provision containing the conditions of this Section.

**15. Ownership of Documents**. All briefs, memoranda and other incidental work of Attorney or materials furnished hereunder shall be and remain the property of GIAA including all publication rights and copyright interests, and may be used by GIAA without any additional costs to GIAA.

**16. Indemnity**. The Attorney agrees to save and hold harmless GIAA, its officers, agents, representatives, successors and assigns and other governmental agencies from and all suits or actions of every nature and kind, which may be brought from or on account of any injury, death, or damage arising or growing out of the acts or omissions of the Attorney, its officers, agents, servants or employees under this Agreement.

17. **Changes**. GIAA may at any time, by written order make any changes in the services to be performed hereunder. If such changes cause an increase or decrease in the costs of doing the work under this Agreement, or in the time required for this performance, an equitable adjustment shall be made and the Agreement shall be modified in writing accordingly.

18. **Termination**. Either of the parties hereto may, by written notice to the other, terminate this Agreement in whole or in part upon thirty (30) days written notice either for convenience or default. Upon such termination, all briefs, reports, summaries, completed work and work in progress, and such other information and materials as may have been accumulated by the Attorney in performing this Agreement shall, in the manner to the extent determined by GIAA, become the property of and be delivered to GIAA. If the contract is terminated by the Attorney or by GIAA for cause, prior to its completion, Attorney shall reimburse GIAA for any travel costs associated with this contract and GIAA may retain as set-off for such expenses any funds owed to Attorney in GIAA's possession.

19. **Serverable Provisions**. If any provision of this Agreement shall be deemed by a court of competent jurisdiction to be invalid, then such provision shall be deemed stricken from the agreement and the agreement shall be enforced according to its valid and subsisting terms and provisions.

20. **Governing Law**. The validity of the Agreement and any of its terms and provisions as well as the rights and duties of the parties to this Agreement, shall be governed by the laws of Guam.

21. **GIAA Not Liable**. GIAA assumes no liability for any accident or injury that may occur to Attorney, his or her agents, dependents, or personal property while en route to or from this territory or during travel mandated by the terms of this Agreement.

22. **Approvals**. Any approvals required herein by GIAA shall mean approval by the GIAA Board is required unless another person is designed by the GIAA Board of Directors to issue particular or limited approvals on certain matters.

23. **Conflicts**. Attorney agrees to disclose to GIAA any possible conflict of interest that may arise in representing GIAA's interest, and obtain a written waiver from GIAA regarding its conflict. Should any possible conflict of interest arise, Attorney agrees not to disclose or otherwise use any matters learned from GIAA to the disadvantage of GIAA.

### 24. Notices.

Notices to either party will be sent to:

A. B. WON PAT GUAM INTERNATIONAL AIRPORT AUTHORITY
P.O. Box 8770
Tamuning, Guam 96931

MAIR, MAIR, SPADE & THOMPSON
Suite 807, GCIC Building
414 West Soledad Avenue
Hagåtña, Guam 96910

/ / /

/ / /

**Professional Services Agreement**
**Page 9**

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

**MAIR, MAIR, SPADE & THOMPSON**

By:_____
    **DAVID A. MAIR**

Date:_2/28/03_____

**APPROVED BY:**

By:_____
    **DOUGLAS B. MOYLAN,**
    **Attorney General of Guam**

Date:_____

**APPROVED BY:**

By:_____
    **FELIX P. CAMACHO,**
    **Governor of Guam**

Date:_____

**A. B. WON PAT GUAM INTERNATIONAL AIRPORT AUTHORITY**

Certified Funds Available:

_____
    **WILLIAM R. THOMPSON,**
    **Executive Manager and**
    **Contracting Officer**

Date:_02/28/03_____

**A. B. WON PAT GUAM INTERNATIONAL AIRPORT AUTHORITY**

By:_____
    **FRANK F. BLAS,**
    **Chairman, Board of Directors**

Date:_03/03/03_____

**RECEIVED**

MAR 0 4 2003
3:42 pc
ATTORNEY GENERAL'S OFFICE

# EXHIBIT "A"

## HOURLY RATE SCHEDULE*

A.  **For Legal Personnel**

|     |          |          |
| --- | -------- | -------- |
| 1.  | Partners | $150.00 |
| 2.  | Associates | $125.00 |
| 3.  | Law Clerks | $100.00 |

A03233(b).dam

According to the Guam Procurement Law, 5 G.C.A. § 5121(b), in addition to the Organic Act of Guam and the Guam Rules of Professional Conduct for Lawyers (7 G.C.A. Appendix F), *supra*, the undersigned's approval is required *prior* to any private attorney being retained to represent the government of Guam. A copy of the relevant portion of the Guam Procurement Law is attached hereto. Moreover, the government of Guam is the undersigned's client and private counsels cannot communicate with the government of Guam without this Office's approval once this issue has been raised.

We are presently evaluating the extent that our Office will provide legal services to the various government of Guam instrumentalities, including your own. We are also ascertaining the involvement of the government of Guam in local and Federal lawsuits.

Since we wish to work cooperatively with your Office, the undersigned requests that you please call me (476-0296) to properly execute a memorandum of understanding to begin our relationship. Otherwise, you may have your staff speak directly with Deputy Attorney General Joseph Guthrie at 475-3324 to work out the particulars.

*Thank you* for your attention to these matters.

Sincerely,

**Douglas B. Moylan**

cc:     Felix P. Camacho, *Maga'lahen Guåhan*
Attachments (1)

itation/Title
U ST T. 5, Sec. 5121, Authority to Contract for Certain Services and Approval of
ontracts.

**1671 5 G.C.A. § 5121**

# GUAM CODE ANNOTATED
## TITLE 5. GOVERNMENT OPERATIONS
## CHAPTER 5. GUAM PROCUREMENT LAW
## ARTICLE 2. PROCUREMENT ORGANIZATION
## PART C. ORGANIZATION OF PUBLIC PROCUREMENT.

*Current through P.L. 26-72 (2001)*

## 5121. Authority to Contract for Certain Services and Approval of Contracts.

(a) General Authority. For the purpose of procuring the services of accountants, physicians, lawyers, dentists and other rofessionals, any governmental body of this Territory may act as a purchasing agency and contract on its own behalf for such ervices, subject to this Chapter and regulations promulgated by the Policy Office, but this Subsection shall not authorize the ocuring of such services where any given governmental body is otherwise prohibited from procuring such services.

(b) Approval of Contracts for Legal Services. No contract for the services of legal counsel in the Executive Branch shall be xecuted without the approval of the Attorney General. Nothing in this Section or Chapter shall preclude the Attorney General or his esignee from participating in negotiations for any contract upon the request of the government officer or agency primarily esponsible for such negotiations.

(c) Approval of Contracts Generally. The Chief Procurement Officer, or his designee, or a procurement officer of an agency uthorized to procure the services or supplies in question, as stated in the Rules promulgated by the Policy Office, shall execute all ontracts for the government of Guam. The Chief Procurement Officer may approve standard form contracts or purchase orders and nce such approval of the standard form is given, contracts or purchase orders made on such form may be executed without the irther approval of the Chief Procurement Officer unless he has reserved such power of approval pursuant to the applicable rules romulgated by the Policy Office.

(d) Approval of Contracts by Department of Revenue and Taxation. Notwithstanding any other provision of law, the Director f the Department of Revenue and Taxation or his designee shall have exclusive authority to approve and execute all contracts for th rocurement of supplies, license plates, safety decals, tax forms, tax booklets, and printing services for the department.

OURCE: GC § 6954.7. MPC § 2-302 modified. GC § 6107. Subsection (d) added by P.L. 18-15:X:43.

<General Materials (GM) - References, Annotations, or Tables>

### *1672 NOTES, REFERENCES, AND ANNOTATIONS

COMMENT: Subsection (a) recognizes that the procurement of the services of professionals usually requires extended analysis by the ocuring department, and procurement is needed for the specific purposes of the department. However, the final clause is added by the Committee on General overnmental Operations to make sure that this Subsection does not authorize the use of, for instance, legal services, where other law, i.e., that pertaining to th ttorney General, does not authorize an entity to use its own legal counsel.

Subsection (b) recognizes the general primacy of the Attorney General over all legal matters of the Government of Guam. Other laws provid

Copyright (c) West Group 2002 No claim to original U.S. Govt. works