MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
Attorneys at Law
Suite 807, GCIC Building
414 West Soledad Avenue
Hagåtña, Guam 96910
Telephone: (671) 472-2089/2090

Attorneys for Defendant William R. Thompson,
 in his official capacity as Executive Manager
 of the A.B. Won Pat Guam International Airport Authority

IN THE DISTRICT COURT OF GUAM
TERRITORY OF GUAM

| | |
|---|---|
| THE ATTORNEY GENERAL OF GUAM, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM R. THOMPSON, in his official capacity as Executive Manager of the Guam Airport Authority, <br><br> Defendant. | CIVIL ACTION FILE NO. 03-00008 <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF GIAA'S MOTION TO REDACT AND SEAL CONFIDENTIAL COMMUNICATIONS** |

**INTRODUCTION**

Pursuant to Local Rule 7.1(j), Defendant William R. Thompson, hereby moves this Court ex parte to seal all confidential communications between the Plaintiff Attorney General of Guam, Mr. Thompson, and the A.B. Won Pat Guam International Airport Authority, including the "Exhibit 1" that was filed before this Court as an attachment to the Plaintiff's Complaint on March 3, 2003. The Attorney General is represented by Joseph A.

1   **ORIGINAL**

Guthrie, an Assistant Attorney General of Guam. Mr. Thompson brings this motion ex parte because the documents sought to be sealed are of a highly sensitive nature and immediate action is necessary in order to avoid irreparable harm.

## FACTUAL BACKGROUND

Defendant William R. Thompson is the Executive Manager of the A.B. Won Pat Guam International Airport Authority (GIAA).[1] In support of the allegations made by the Attorney General of Guam against Mr. Thompson in this case, the Attorney General attached to his Complaint a letter addressed to him from Mr. Thompson that is dated February 13, 2003.[2] In turn, Mr. Thompson's letter attaches a memorandum to him dated February 5, 2003 from Mr. Frank Santos, a consultant to GIAA.[3]

In his letter, Mr. Thompson respectfully requests that the Attorney General provide legal representation to GIAA in two lawsuits that are currently pending against GIAA in the Superior Court of Guam.[4] The two Superior Court lawsuits against GIAA involve highly contested bid disputes between two different construction companies involving millions of dollars.[5] When Mr. Thompson sent his letter and Mr. Santos's memorandum to the

---

[1] Declaration of William R. Thompson at p. 1, ¶ 2 (D. Ct. Guam Mar. 10, 2003).

[2] Complaint for Temporary and Permanent Injunction and for Declaratory Relief, Civil Action No. 03-00008 (D. Ct. Guam Mar. 03, 2003) at p. 2, ¶¶ 8, 10; p. 3, ¶ 11; and "Exhibit 1"; Declaration of William R. Thompson at p. 2, ¶ 4 (D. Ct. Guam Mar. 10, 2003).

[3] Declaration of William R. Thompson at p. 2, ¶ 6 (D. Ct. Guam Mar. 10, 2003).

[4] Declaration of William R. Thompson at p. 2, ¶ 4 (D. Ct. Guam Mar. 10, 2003) (The first lawsuit is Black Construction Corp. v. The Government of Guam, et. al., Civil Case No. CV1075-02 (Super. Ct. Guam), and the second lawsuit is International Bridge Corp./Nippon Hodo Co., Ltd. v. Government of Guam, et. al., Civil Case No. CV1550-02 (Super. Ct. Guam)).

[5] Declaration of William R. Thompson at p. 2, ¶ 5 (D. Ct. Guam Mar. 10, 2003).

2

Attorney General, he did so with the good faith intention and belief that the documents would constitute a privileged attorney-client communication regarding matters that were the subject of litigation.[6]

The Attorney General's public filing in this lawsuit of Mr. Thompson's February 13 letter and of Mr. Santos's February 5 memorandum is extremely alarming because both documents contain confidential information regarding GIAA's legal strategy and inclination as to how the bid disputes should be resolved.[7]

Also alarming is the fact that at no time before the public filing and disclosure of Exhibit 1 did the Attorney General of Guam ever bother to seek Mr. Thompson or GIAA or Mr. Santos's consent to disclose the privileged attorney-client communications contained therein.[8] Moreover, neither Mr. Thompson nor GIAA, nor Mr. Santos has ever consented to the disclosure of the attorney-client communications contained in the letter of February 13 or the memorandum of February 5.[9] Additionally, neither GIAA nor Mr. Thompson nor Mr. Santos has ever waived the attorney-client privilege with regard to the letter of February 13 or the memorandum of February 5.[10]

//

//

---

[6] Declaration of William R. Thompson at p. 2, ¶ 7 (D. Ct. Guam Mar. 10, 2003).

[7] Declaration of William R. Thompson at p. 2, ¶ 6 (D. Ct. Guam Mar. 10, 2003).

[8] Declaration of William R. Thompson at pp. 2-3, ¶ 8 (D. Ct. Guam Mar. 10, 2003).

[9] Declaration of William R. Thompson at p. 3, ¶ 9 (D. Ct. Guam Mar. 10, 2003).

[10] Declaration of William R. Thompson at p. 3, ¶ 10 (D. Ct. Guam Mar. 10, 2003).

3

## LEGAL DISCUSSION

### I.

### THE LETTER OF FEBRUARY 13, 2003, WITH THE ATTACHMENT, IS A PRIVILEGED COMMUNICATION

In federal law, the attorney-client privilege is protected and recognized as the "oldest of privileges for confidential communications."[11] At its core, the privilege prohibits the disclosure of confidential communications between an attorney and his client, unless the client waives the privilege. It is well settled that the attorney-client privilege applies to *any* communication between a client and counsel which is intended to be kept confidential and which is made for the purpose of obtaining or providing legal advice.[12] Moreover, the Ninth Circuit has held that pending litigation is not necessary to invoke the extension of the attorney-client privilege because "the privilege . . . is irrespective of litigation begun or contemplated."[13] Rather, the privilege applies whenever the communication is made in order to facilitate the rendition of legal services to the client.[14]

In this case, it cannot seriously be disputed that the letter and memorandum at issue herein invokes the attorney-client privilege. The reason Mr. Thompson sent the letter and the memorandum to the Attorney General in the first place was for the purpose of

---

[11] U.S. v. Zolin, 491 U.S. 554; 109 S.Ct. 2619, 2625; 105 L.Ed2d 469 (1989); 28 U.S.C. Appx. Rule 501.

[12] U.S. v. Construction Prods. Research, Inc., 73 F.3d 464, 472 (2d Cir. 1996).

[13] Continental Oil Co. v. U.S., 330 F.2d 347, 350 (9th Cir. 1964); *citing* WIGNORE ON EVIDENCE § 2294.

[14] 3 WEINSTEIN'S FEDERAL EVIDENCE §§ 503.13[2] (Joseph M. McLaughlin ed., 2d ed. 1997).

4

obtaining the Attorney General's legal advice and representation on behalf of GIAA in two Superior Court lawsuits.[15]

Moreover, the matters discussed within the memorandum deal not merely with pending litigation, but with *actual ongoing litigation*, including a specific strategy for resolving the two lawsuits. As the client, this information and the privilege encompassing it belonged to GIAA, and not to the Attorney General.[16] Therefore, before the Attorney General could legally and ethically reveal GIAA's confidences, he was required to first get either GIAA's consent or waiver to the disclosure. It is undisputed that at no time was a consent or a waiver ever sought, much less obtained.[17]

Needless to say, Mr. Thompson and GIAA would never have revealed any information to the Attorney General if they had had even the slightest inkling that he would be so quick to disregard the trust they placed in him or that he would coolly turn on his own clients by revealing their secrets in this most public of forums. Because neither Mr. Thompson nor GIAA ever consented to or waived the disclosure of Mr. Thompson's February 13 letter or of Mr. Santos's February 5 memorandum, the attorney-client privilege was preserved and the Attorney General was not authorized to make such disclosures.

---

[15] Declaration of William R. Thompson at p. 2, ¶ 4 (D. Ct. Guam Mar. 10, 2003).

[16] United States v. Partin, 601 F.2d 1000, 1009 (9th Cir. 1979) (attorney-client privilege belongs to the client); In re Subpoenas Duces Tecum, 978 F.2d 1159, 1162 (9th Cir. 1992).

[17] Declaration of William R. Thompson at pp. 2-3 ¶ 8 (D. Ct. Guam Mar. 10, 2003).

5

## II.

## THE ATTORNEY GENERAL WAS NOT AUTHORIZED TO REVEAL THE LETTER OF FEBRUARY 13, 2003, WITH THE ATTACHMENT

The attorney-client privilege discussed above is a rule of evidence that applies in judicial proceedings. Complimenting the privilege is the rule of confidentiality as expressed in Rule 1.6 of the Guam Rules of Professional Responsibility. The rule is a mandate of professional ethics that applies even beyond the courtroom doors and imposes a "sacred trust on the attorney not to disclose the client's confidential communication"[18] by revealing information relating to the representation of a client:

> **Rule 1.6. Confidentiality of Information.** (a) A lawyer *shall not reveal information relating to representation of a client unless the client consents after consultation*, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).
>
> (b) A lawyer may, but is not obligated to, reveal such information to the extent the lawyer reasonably believes necessary
>
>     (1) to prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm; or
>
>     (2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond.[19]

---

[18] A. v. B, 726 A.2d 924, 926 (Sup. Ct. NJ 1999).

[19] MODEL R. PROF. RESPONSIBILITY 1.6 (emphasis added).

6

Rule 1.6 codifies a lawyer's obligation to keep the confidences of his client. The rule provides that a lawyer must keep confidential any information relating to the representation of a client unless the client first consents after consultation. Section 1.6(b) lists the limited scenarios in which a lawyer *may* choose to breach client confidences, e.g. to prevent the commission of a crime or to establish a claim or defense in a controversy between the lawyer and the client.

The Attorney General will no doubt argue that it was necessary to reveal the letter of February 13, 2003, in order "to establish a claim" that GIAA intended to hire independent counsel. This argument suffers from several flaws. First, it was unnecessary for the Attorney General to reveal the letter of February 13, because GIAA published a Request for Proposals (RFP) in the Pacific Daily News unequivocally evidencing its intent to retain independent counsel. In fact, the Attorney General attached the RFP to his Complaint as Exhibit 2.[20]

Second, even assuming it was necessary to refer to the portions of the letter of February 13, 2003, in order to prove that GIAA intended to retain independent counsel, the Attorney General could have redacted the portions of the letter containing confidential litigation strategy.

Finally, it is undisputed that GIAA intends to exercise its statutory right to retain independent counsel, and, rather than revealing confidential communications, the Attorney General could have merely asked his client, GIAA, whether it was willing to stipulate

---

[20] Complaint for Temporary and Permanent Injunction and for Declaratory Relief, Civil Action No. 03-00008 (D. Ct. Guam Mar. 03, 2003) at p. 3, ¶ 14; and "Exhibit 2."

7

to this uncontested fact. However, the simple fact of the matter is that the Attorney General revealed confidential communications relating to litigation strategy when it was completely unnecessary to do so in order to pursue a claim against his client.

In addition to Rule 1.6, the mandate of client confidentiality also finds expression in Model Rule 1.8(b), which prohibits the use of information relating to the representation to the disadvantage of a current client:

**Rule 1.8. Conflict of Interest: Prohibited Transactions.**

\*\*\*\*\*

>   (b) A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation, except as permitted or required by Rule 1.6 or Rule 3.3.[21]

It is for rather obvious reasons that the Rules of Professional Responsibility require an attorney to preserve the confidences of a client. As stated by one court, "Clients must feel free to share confidences with their lawyers. This will not occur if we permit lawyers to be today's confidants and tomorrow's adversaries."[22] Indeed, if the Attorney General of Guam were a United States Attorney, his actions would not only have constituted a crime, but also he would be required to resign his office.[23]

In a 1995 case involving a similar situation, the Attorney General of the State of West Virginia was publically reprimanded for violating Rule 1.6(a) of the Rules of Professional Conduct when he voluntarily disclosed confidential information relating to his

---

[21] MODEL R. PROF. RESPONSIBILITY 1.8(B).

[22] Clinard v. Blackwood, 48 S.W.3d 177 (Tenn. 2001).

[23] 18 U.S.C. § 1905 (disclosure of confidential information by officer or employee of the United States in any manner is punishable by fine or imprisonment of not more than one year, or both, and *shall* be removed from office or employment.).

8

representation of a client to a third party. Specifically, in Lawyer Disciplinary Board v. McGraw, 461 S.W.2d 850 (W Va. 1995), the State Attorney General represented the West Virginia Division of Environmental Protection (DEP). After a meeting with the Director of DEP where litigation strategy in an ongoing lawsuit was discussed, the Attorney General telephoned a third party and informed her of the Director's decision to take certain action in the lawsuit.[24] Upon learning of the betrayal, the Director filed an ethical complaint against the Attorney General.[25] After a hearing, the Disciplinary Board found that the Attorney General's disclosure of his client's strategy interests was a flagrant violation of Rule 1.6(a) which mandates client confidentiality.[26] For his violations, the Attorney General was publically reprimanded and ordered to pay costs.[27]

In Thompson's case, the letter of February 13, 2003, concerned ongoing litigation to which GIAA was a party and the documents themselves contained specific information regarding GIAA's strategy for resolving the disputes. Moreover, neither Mr. Thompson nor GIAA consented to the disclosure, and none of the exceptions to Rule 1.6 existed to permit a disclosure without prior consent. For these clear reasons, the letter of February 13, 2003, with the attachment, is a privileged communication, which the Attorney General was not authorized to disclose.

---

[24] McGraw, 461 S.W.2d at 854, 858.

[25] McGraw, 461 S.W.2d at 856.

[26] McGraw, 461 S.W.2d at 858.

[27] McGraw, 461 S.W.2d at 864; and see also In re. Gemmer, 566 N.E.2d 528 (Ind. 1991) (3-year suspension for disclosing secrets and other ethical violations); In re. Rader, 359 N.W.2d 156 (Wis. 1984) (90-day suspension); In re. Nelson, 327 N.W.2d 576 (Minn. 1982) (reprimand and suspension from practice of law, with right to reapply for readmission after 6-month period); Bar Association of Greater Cleveland v. Watkins, 427 N.E.2d 516 (Ohio 1981) (indefinite suspension).

## CONCLUSION

Accordingly, for all the foregoing reasons, Mr. Thompson respectfully requests that the Court immediately order: (a) that Exhibit 1 of the Attorney General's Complaint be SEALED; and (b) that a new exhibit redacting any and all confidential and privileged communication between GIAA and the Attorney General be substituted in its place.

Respectfully submitted this 10th day of March, 2003.

**MAIR, MAIR, SPADE & THOMPSON**
A Professional Corporation
Attorneys for Defendant

By: _____
**DAVID A. MAIR**

P03205.dam