MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
Attorneys at Law
Suite 807, GCIC Building
414 West Soledad Avenue
Hagåtña, Guam 96910
Telephone: (671) 472-2089/2090

Attorneys for Defendant William R. Thompson,
  in his official capacity as Executive Manager of the
  A.B. Won Pat Guam International Airport Authority

**FILED**
DISTRICT COURT OF GUAM

**MAR 1 7 2003**

MARY L. M. MORAN
CLERK OF COURT

IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | | |
|---|---|---|
| THE ATTORNEY GENERAL OF GUAM, | ) ) ) | CIVIL ACTION FILE NO. 03-00008 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| WILLIAM R. THOMPSON, in his official capacity as Executive Manager of the Guam Airport Authority, | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

---

**DEFENDANT'S OPPOSITION TO
PLAINTIFF'S "MOTION FOR
CLARIFICATION AND
RULE 60(b) MOTION FOR RELIEF
FROM ORDER"**

---

# ORIGINAL

# **TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.     DEFENDANT'S COUNSEL DID NOT MISREPRESENT
       ANY FACTS TO THIS COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       A.     The Mair Firm did Not Represent GIAA in the Bid
              Protests until March 14, 2003. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       B.     It is the Attorney General who is Misrepresenting the Facts. . . . . . . . . 8

              1.     The Attorney General Wrongfully Maintains that
                     the February 13, 2003 Letter did Not Seek Legal
                     Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

              2.     The Attorney General Knew the February 13, 2003
                     Letter was attached to the Complaint . . . . . . . . . . . . . . . . . . . 10

II.    THE ATTORNEY GENERAL IS FULLY SUBJECT TO
       THE RULES OF ETHICS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.   THE ATTORNEY-CLIENT PRIVILEGE FULLY APPLIES
       TO GUAM GOVERNMENT AGENCIES; AND IT IS NOT
       SUBJECT TO ANY CATEGORICAL WAIVER . . . . . . . . . . . . . . . . . . . . . 12

       A.     The Privilege Clearly Applies to Guam Government Agencies. . . . . . 12

       B.     There has been no Waiver of the Privilege. . . . . . . . . . . . . . . . . . . . . . 13

IV.    THE CONFIDENTIAL DOCUMENTS WERE CLEARLY
       TENDERED WITHIN THE SCOPE OF THE
       ATTORNEY-CLIENT PRIVILEGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

V.     THE CONFIDENTIAL DOCUMENTS WERE NOT
       "PUBLIC RECORDS" SUBJECT TO DISCLOSURE UNDER
       THE SUNSHINE LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

LEGAL DISCUSSION ................................................... 18

     VI.    IF THE ATTORNEY GENERAL REMAINS PUZZLED
           ABOUT HOW TO REDACT THE SUBJECT LETTER
           HE SHOULD EXAMINE DEFENDANT'S *EXHIBIT C* ............... 18

CONCLUSION ......................................................... 19

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

Chun v. Board of Trustees E.R.S. Hawaii,
  952 P.2d 1215 (Haw. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Gerheiser v. Stephens, 712 So.2d 1252 (Fla. App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 15

Parkinson v. Gogue, 1986 WL 69828
  (D. Guam App. Div., July 7, 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Taylor v. Sheldon, 173 N.E.2d 892 (Ohio 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Westinghouse Electric Corp. v. Kerr-McGee Corp.,
  580 F.2d 1311 (7th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16


**STATUTES**                                                                **PAGE(S)**

5 G.C.A. § 10108(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

6 G.C.A. § 3102(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

6 G.C.A. § 502(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

6 G.C.A. § 503(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 502 of the Evidence Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


**RULES**                                                                   **PAGE(S)**

Model Rule 1.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Rule 1, *Rules for the Discipline of Attorneys*
  promulgated by Supreme Court of Guam (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Local Rule 7.1(i), District Court of Guam . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**OTHERS**                                                          **PAGE(S)**

American Bar Association Standing Committee on Ethics and
  Professional Responsibility, Formal Opinion 90-358 (Sept. 13, 1990) . . . . . . . . . . . . . . . . . 15

*McCormick on Evidence* (2d Ed. 1972), § 88 at p. 179 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*R. Wise, Legal Ethics* (1970) 284 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## INTRODUCTION

Ignoring the Local Rules of this Court concerning motions for reconsideration,[1] the Attorney General has filed a curious motion and memorandum of law entitled, "Plaintiff's Motion for Clarification & Rule 60(b) Motion for Relief from Order." This motion appears to be an attempt by the Attorney General to extricate himself from a tangled web of his own making. Unfortunately, for the Attorney General, however, the more he spins and toils to remove himself from the web, the more entangled in it he becomes.

What the Attorney General is asking for is not "clarification" but obfuscation. In fact, he is not seeking merely relief from the effect of an order; he is seeking the Court's blessing to violate, with impunity, the settled ethical rules of lawyer practice. Indeed, he is seeking this Court's judicial blessing for the untenable notion that he is somehow above the rules of ethics, at least when it suits him. This Court is respectfully urged to decline the Attorney General's invitation to tamper with the Court's March 11, 2003 Order.

## FACTUAL BACKGROUND

In a letter dated January 28, 2003, the law firm of Mair, Mair, Spade & Thompson (the "Mair firm") notified the Attorney General of Guam ("Attorney General") that the Mair firm was General Legal Counsel to the Guam International Airport Authority ("GIAA").[2] In this same

---

[1] The Attorney General conveniently overlooks the Local Rules of this Court, which contain an express provision governing motions for reconsideration. Of course, Local Rule 7.1(i) authorizes motions for reconsideration on very limited grounds only, none of which is implicated by the instant motion.

[2] Declaration of David A. Mair ("Mair Declaration") (March 17, 2003), Exhibit A.

1

letter, the Mair firm asked the Attorney General to agree for the Mair firm to represent GIAA in two ongoing bid disputes:

> This letter is to respectfully request that we be appointed as Special Assistant Attorney General[3] to represent GIAA in this action.

The Attorney General did not respond and agree to allow the Mair firm to represent GIAA in the two bid disputes. The Attorney General also did not appoint any members of the Mair firm as Special Assistant Attorneys General for the purpose of those cases.[4] Instead, in a letter dated January 28, 2003, the Attorney General notified GIAA that it could not retain legal counsel without the permission of the Attorney General and that GIAA was forbidden even from communicating with private counsel:

> This Office is informed that there may be efforts to retain private counsel by certain government departments and agencies. *However*, **the undersigned has** *not* **reviewed nor approved the involvement of any private attorneys to represent your Office,** which is an instrumentality of the government of Guam, nor approved the expenditure of government funds to be used towards this end, which is required by the Guam Procurement Law.
>
> According to the Guam Procurement Law, 5 G.C.A. § 5121(b), in addition to the Organic Act of Guam and the Guam Rules of Professional Conduct for Lawyers (7 G.C.A. Appendix F), *supra*, the undersigned's approval is required *prior* to any private attorney being retained to represent the government of Guam. A

---

[3] Although the Mair firm requested Special Assistant Attorney General status, such status is actually unnecessary, as 5 G.C.A. § 30109 empowers autonomous agencies to employ counsel without the Attorney General's supervision. (*See* Compiler's comment to § 30109.)

[4] Mair Declaration at ¶ 4.

2

copy of the relevant portion of the Guam Procurement Law is attached hereto. Moreover, **the government of Guam is the undersigned's client** and **private counsels cannot communicate with the government of Guam without this Office's approval** once this issue has been raised.[5]

On February 13, 2003, GIAA sent a letter to the Attorney General.[6] The letter explained that the law firm of Brooks Lynch & Tydingco had been terminated as counsel in the bid dispute cases, and that GIAA was seeking the "assistance" of the Attorney General's Office in handling those cases until other private counsel could be retained:

> GIAA is in the process of issuing a Request of Proposal so that it can retain private counsel for GIAA. In the meantime, it is very important that GIAA promptly resolve the civil actions referred to above. These civil actions involve the construction of a parallel taxiway at the airport. All of these projects are being financed with federal grants the existence of which is being jeopardized by the inability to complete construction of the parallel taxiway. For these reasons, **GIAA respectfully requests the assistance of your office in the two civil actions until such time as GIAA can complete the procurement process and retain private counsel.**[7]

Additionally, in the February 13, 2003 letter, GIAA was also requesting the assistance of the Attorney General's Office in an effort to award the bid pursuant to Title 5 Guam

---

[5] Mair Declaration, Exhibit B (emphasis added).

[6] A redacted version of the subject February 13, 2003 letter is being submitted as "Exhibit C" to the Mair Declaration. The version of the letter submitted has been redacted by the Mair firm to obliterate confidential references pertaining to the subject bid disputes and litigation strategy. The letter's attachment has also been omitted.

[7] Mair Declaration, Exhibit C; and *see* Note 5, *supra*, regarding redactions.

3

Code Annotated Section 5425(g)(i). This request for assistance was *in addition to* the request that the Attorney General's Office represent GIAA "until such time as GIAA can complete the procurement process and retain private counsel."

On March 3, 2003, the Attorney General filed suit against GIAA in District Court. Attached to the Complaint was GIAA's letter to the Attorney General dated February 13, 2003. On March 13, 2002, the Attorney General filed a Declaration in support of the instant "Motion for Clarification" wherein he maintains that he was unaware that any such letter was attached to the Complaint:

> As the plaintiff to this Action, I did *not* review the March 5, 2003 complaint that was signed and filed by Deputy Guthrie on March 5, 2003, although he previously informed me of the substance of the legal action, which lawsuit was initiated at my request in order to clarify what powers were bestowed upon my office by the U.S. Congress.[8]

This statement, however, conflicts with what the Attorney General had stated a mere eight days earlier, in another Declaration, wherein he specifically acknowledged his awareness that GIAA's February 13, 2003 letter was attached to the Complaint as an exhibit:

> On or about February 13, 2003 I received a letter from Defendant notifying me that Defendant intended to retain private counsel to represent GIAA. **(Exhibit 1 of Complaint)**.[9]

---

[8] Declaration of Attorney General of Guam (March 13, 2003) ¶ 12, at 3.

[9] Declaration of Attorney General of Guam, (March 5, 2003) ¶ 5, at 2, attached to the Mair Declaration, Exhibit E (emphasis added).

4

On March 5, 2003, the Attorney General filed a motion for preliminary injunction. In this motion, the Attorney General argued that he was "authorized to represent the Guam International Airport Authority in all legal matters unrelated to this action."[10]

On March 10, 2003, the Mair firm notified the Attorney General that it was inappropriate for the Attorney General's Office to represent GIAA in unrelated matters, while at the same time seeking an injunction against the interest of GIAA in the District Court.[11]

On March 12, 2003, representatives from the Attorney General's Office and the Mair firm spoke on the phone, and this conversation was documented in a letter from the Mair firm to the Attorney General's Office on that date.[12] This letter confirms that the Mair firm was not representing GIAA in the bid protest cases as of March 12, 2003:

> As discussed in my letter of March 10, 2003, GIAA maintains that it is **UNETHICAL** for the Attorney General's Office to take positions adverse to GIAA in litigation, and, at the same time, represent GIAA in unrelated matters. **It is undisputed that GIAA is in desperate need of counsel in various matters, including certain bid protests that are currently pending in the Superior Court of Guam.** A hearing is scheduled in a bid dispute case for March 14, 2003. An opposition brief is due in that case on March 17, 2003.[13]

---

[10] Attorney General of Guam's Motion for Preliminary Injunction (March 5, 2003) at 20.

[11] Mair Declaration, Exhibit E.

[12] Mair Declaration, Exhibit F.

[13] Mair Declaration, Exhibit F (emphasis added).

5

On March 13, 2003, the Attorney General's Office agreed **for the first time** that GIAA could retain the Mair firm in matters unrelated to the disputes between the Attorney General and GIAA that are pending in both the Superior Court of Guam and the U.S. District Court.[14] The Mair firm did not enter an appearance on behalf of GIAA in the bid protest cases until March 14, 2003.

## LEGAL DISCUSSION

### I.

### DEFENDANT'S COUNSEL DID NOT MISREPRESENT ANY FACTS TO THIS COURT

In his moving papers, the Attorney General boldly proclaims that "Defendant's counsel misrepresented a material fact to the Court."[15] These are indeed bold words; and one would expect the Attorney General to back up such words with a clear recitation on point. Unfortunately, the Attorney General fails to deliver one.

The Attorney General appears to argue that the Mair firm has misrepresented the facts by failing to advise the Court that the Mair firm represented GIAA in the bid dispute cases as of January 29, 2003, and, for this reason, the letter from GIAA to the Attorney General on

---

[14]  Mair Declaration, Exhibit G.

[15]  Plaintiff's Motion for Clarification & Rule 60(b) Motion for Relief from Order (March 13, 2003) at 3.

6

February 13, 2003, was not an attorney-client communication.[16] As shall be further evidenced, it is the Attorney General, not the Mair firm, who has misrepresented the facts to the Court.

A.    **The Mair Firm did Not Represent GIAA in the Bid Protests until March 14, 2003.**

As is plainly evidenced in the Factual Background discussed above, the Mair firm asked, in a letter dated January 28, 2003, that it "be appointed as Special Assistant Attorney General to represent GIAA" in the bid protest cases. The Attorney General did not agree to do so. To the contrary, in a letter dated January 28, 2003, the Attorney General notified GIAA that he "has *not* reviewed nor approved the involvement of any private attorneys to represent your Office," and that private attorney could not even communicate with GIAA "without this Office's approval once this issue has been raised."[17]

On February 13, 2003, GIAA sent a letter to the Attorney General seeking the "assistance" of the Attorney General's Office until other private counsel could be retained. On March 5, 2003, **the Attorney General maintained that he was "authorized to represent the**

_____

[16] The Attorney General's "misrepresentation" allegation also appears to hinge on the legal conclusion that Defendant's counsel either "waived" or himself "violated" the attorney-client privilege. To the extent that the Attorney General is maintaining that disagreeing with opposing counsel's legal contentions concerning the nature and scope of the attorney-client privilege is tantamount to making a "misrepresentation" concerning a "material fact," he is sadly mistaken. Leaving aside for the moment that the Attorney General's contentions are completely unsupported by the factual record, they clearly involve "legal conclusions" concerning *application* of the attorney-client privilege to the facts.    It is settled law that legal conclusions are not representations of fact. *See*, Poyner v. Lear, Siegler, Inc., 542 F.2d 955 (6th Cir. 1976) ("facts" are things that occur or exist; legal matters involve interpretations or *consequences* to be given to facts). Legal conclusions are not "facts," material or otherwise. Accordingly, Defendant's counsel could not possibly have misrepresented any "material fact" on that ground.

[17] Mair Declaration, Exhibit B (emphasis added).

7

**Guam International Airport Authority in all legal matters unrelated to this action.**"[18] On March 10, 2003, the Mair firm advised the Attorney General that it was inappropriate for him to do so.[19] On March 12, 2003, the Mair firm asked the Attorney General to agree that independent counsel be permitted to represent GIAA in unrelated matters such as the bid protest cases: "It is undisputed that GIAA is in desperate need of counsel in various matters, including certain bid protests that are currently pending in the Superior Court of Guam."[20]

On March 13, 2003, the Attorney General's Office finally agreed that GIAA could retain the Mair firm in cases such as the bid protests. The Mair firm then entered an appearance in the bid protest cases on March 14, 2003. The Mair firm did not and could not represent GIAA regarding the bid protest cases until a full month after the subject February 13, 2003 letter was written.

**B.      It is the Attorney General who is Misrepresenting the Facts.**

While we are on the subject of "misrepresentation," the Defendant would like to call the Court's attention to certain statements made in the Attorney General's moving papers for this motion.

**1.      The Attorney General Wrongfully Maintains that the February 13, 2003 Letter did Not Seek Legal Representation.**

On page 5 of his papers, the Attorney General contends that when one "**carefully**" examines the February 13, 2003 letter it *really* only amounts to a request for the Attorney

---

[18]  Attorney General of Guam's Motion for Preliminary Injunction (March 5, 2003) at 20.

[19]  Mair Declaration, Exhibit E.

[20]  Mair Declaration, Exhibit F.

8

General's discretionary approval required pursuant to the Guam Procurement law.[21] If there were

any doubt about what the Attorney General was trying to say, such doubts are clarified on page

8 of the memorandum, were he states, "the documents attached to Defendant's February 13, 2003

letter were proffered to convince the Attorney General to approve the award, not for his legal

advice."[22]

The Attorney General has gone a bridge too far. The problem is, the February 13,

2003 letter was not conveyed *solely* for the purpose of obtaining the Attorney General's approval

of the award; it was plainly *also* being presented for the purpose of seeking the Attorney General's

immediate advice and guidance concerning the bid dispute matter. This is made clear by quoting

the text of the letter itself.

The Attorney General argues that the February 13, 2003 letter "was neither

seeking legal services nor seeking legal assistance in some legal proceeding."[23] This is patently

false. In the February 13, 2003 letter, GIAA informed the Attorney General that GIAA's counsel

had been terminated and plainly stated:

> GIAA is in the process of issuing a Request of Proposal so that it
> can retain private counsel for GIAA. In the meantime, it is very
> important that GIAA promptly resolve the civil actions referred
> to above. These civil actions involve the construction of a
> parallel taxiway at the airport. All of these projects are being
> financed with federal grants the existence of which is being
> jeopardized by the inability to complete construction of the

---

[21] *Id.* at 5-6 (emphasis in the original).

[22] *Id.* at 8.

[23] Motion for Clarification (March 13, 2003) at 5.

9

parallel taxiway. For these reasons, **GIAA respectfully requests the assistance of your office in the two civil actions until such time as GIAA can complete the procurement process and retain private counsel**.[24]

It is absurd and disingenuous for the Attorney General to argue that this letter was not a request for his office to provide legal representation.

### 2. The Attorney General Knew the February 13, 2003 Letter was attached to the Complaint.

The Attorney General has filed a Declaration in support of his Motion for Clarification wherein he maintains that he was unaware that the February 13, 2003 letter was attached to the Complaint:

> As the plaintiff to this Action, I did *not* review the March 5, 2003 complaint that was signed and filed by Deputy Guthrie on March 5, 2003, although he previously informed me of the substance of the legal action, which lawsuit was initiated at my request in order to clarify what powers were bestowed upon my office by the U.S. Congress.[25]

However, the Attorney General filed another Declaration in support of his Motion for a Preliminary Injunction wherein he specifically acknowledged his awareness that GIAA's letter of February 13, 2003, was attached to the Complaint as an exhibit:

---

[24] Mair Declaration, Exhibit C.

[25] Declaration of Attorney General of Guam (March 13, 2003) ¶ 12, at 3.

10

On or about February 13, 2003 I received a letter from Defendant notifying me that Defendant intended to retain private counsel to represent GIAA. **(Exhibit 1 of Complaint)**.[26]

What was that about "misrepresentation"?

## II.

## THE ATTORNEY GENERAL IS FULLY SUBJECT TO THE RULES OF ETHICS

The Attorney General's position hinges on the untenable proposition that he is somehow immune from the dreary formalities of the rules of professional ethics. Apparently, the Attorney General, and he alone, decides *when* the ethical rules apply to him and when they do not. Unfortunately for the Attorney General, the law does not support any such absurd "elastic" notion of professional ethics.

In fact, the courts have concluded that *all* of the professional rules of ethics apply to attorneys general. In <u>Chun v. Board of Trustees E.R.S. Hawaii</u>, 952 P.2d 1215 (Haw. 1998), the Hawaii Supreme Court phrased the matter this way:

> It is well settled that in the control of litigation, the Attorney General has the duty to conform her conduct to that prescribed by the Rules of Professional Ethics. As a lawyer and an officer of the courts of this state, the Attorney General is subject to the rules of this court [the Hawaii Supreme Court] governing the practice of law in the conduct of lawyers, which have the force and effect of law.

---

[26] Declaration of Attorney General, (March 5, 2003) ¶ 5, at 2, attached to Mair Declaration, Exhibit E.

11

Moreover, one need not even look as far even as Hawaii to see that one undertaking to act as counsel for a Guam government agency must follow basic ethical rules. This very notion is firmly embedded in the statutory law of Guam as follows:

> Any attorney regularly admitted to practice law in this territory, any attorney admitted to practice by a court of this territory or any individual admitted to practice as counsel for government agencies, or otherwise; is subject to the disciplinary jurisdiction of the Supreme Court and the Ethics Committee as established pursuant to this court's adoption, in April, 1996, of the existing Ethics Committee Rules as reflected in appendix G to Title 7 of the Guam Code Annotated as expressly contained in the Rules below.

Rule 1, *Rules for the Discipline of Attorneys* promulgated by Supreme Court of Guam (1998).

## III.

### THE ATTORNEY-CLIENT PRIVILEGE FULLY APPLIES TO GUAM GOVERNMENT AGENCIES; AND IT IS NOT SUBJECT TO ANY CATEGORICAL WAIVER

A.     The Privilege Clearly Applies to Guam Government Agencies.

The applicability and importance of the attorney-client privilege to Guam's government agencies has been expressly embraced by the Appellate Division of this Court. In Parkinson v. Gogue, 1986 WL 69828 (D. Guam App. Div., July 7, 1986), the Appellate Division faced a scenario in which the Guam Economic Development Authority ("GEDA") appealed the decision of the trial court granting a permanent injunction on the ground that closed-door executive sessions of the GEDA Board violated Guam's Open Government Law. The Appellate Division reversed the trial court, basing its decision squarely on the applicability of the attorney-

12

client privilege to government agencies. The penultimate paragraph of the Appellate Division's decision in <u>Parkinson</u> is instructive to the instant controversy:

> This privilege is essential to the efficient operation of the government. To allow the government's adversary access to attorney-client communications and consultations while protecting those of the adversary would place the government agencies at a significant disadvantage in the decision-making process. There is no evidence that this is what the Legislature intended. Rather, the express recognition of the availability of the privilege to government agencies demonstrates the opposite.

<u>Parkinson v. Gogue</u>, *supra* at **2. Yet despite the fact that the attorney-client privilege has been firmly held to apply with equal force to government agencies, the Attorney General somehow feels that the privilege does not apply to him. Not surprisingly, the Attorney General has found no legal support for this absurd proposition.

**B. There has been no Waiver of the Privilege.**

Of course, the matter of privilege is a question of state and territorial substantive law. The Legislature has seen fit to set forth particular privileges as part of the Guam Evidence Code. *See* 6 G.C.A. § 503(c), and Compiler's "comment"; as well as 6 G.C.A. § 3102(2). Section 502 of the Evidence Code plainly provides that "a disclosure in confidence of the communication that is protected by a privilege . . . when such disclosure is reasonably necessary for the accomplishment of the purpose for which the lawyer . . . was consulted, is not a waiver of the privilege." 6 G.C.A. § 502(d). Further, a communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client. *See*, Lawyer-Client Privilege (Supreme Court Standard

13

503). Under no principled reading of these standards can it be said that GIAA waived the attorney-client privilege with respect to the confidential communication at issue, either generally or specifically.

It was the Attorney General who created the situation in which GIAA found itself in desperate need of legal services. Having unjustifiably denied GIAA's right to retain counsel of its choice, the Attorney General effectively forced GIAA to confide in the Attorney General in order to obtain immediate legal representation over the bid protest cases. It is simply absurd for the Attorney General to now turn around and attempt to blame GIAA and its counsel for this *faux pas*. The more that Attorney General attempts to rationalize and justify his curious course of conduct the more apparent it becomes that his position is untenable.

## IV.

### THE CONFIDENTIAL DOCUMENTS WERE CLEARLY TENDERED WITHIN THE SCOPE OF THE ATTORNEY-CLIENT PRIVILEGE

The second section of the Attorney General's memorandum leads with the heading "No Attorney-Client Relationship Existed."[27] Defendant's response to this is two-fold: First, the Attorney General is wrong; an attorney-client relationship did exist. Second, no such relationship is *necessary* in order for an attorney to run afoul of the attorney-client communication privilege.

Unfortunately for the Attorney General, the factual underpinnings which support his view that no attorney-client relationship existed are simply untrue. It is beyond dispute that the Attorney General expressly stated in his March 5, 2003 letter that only he was authorized to

---

[27] *Id.* at 4.

14

represent GIAA concerning the bid dispute cases. The Attorney General asserts that "based upon Exhibit A [Mr. Mair's January 28, 2003 letter to the Attorney General] it is clear that Defendant was neither seeking services nor seeking assistance in some legal proceeding. He already had private retained counsel."[28] Perhaps the Attorney General is confused. It is hard to imagine how the Mair firm's January 28, 2003 letter to the Attorney General has any effect on GIAA General Manager William Thompson's state of mind when he sent his letter, together with the confidential attachment, to the Attorney General on February 13, 2003.

It is settled that information imparted to a lawyer by a prospective client is protected under Model Rule 1.6, even if the lawyer does not undertake representation or perform legal work for the prospective client. *See* American Bar Association Standing Committee on Ethics and Professional Responsibility, Formal Opinion 90-358 (Sept. 13, 1990). Judicial decisions are in accord. *See* Gerheiser v. Stephens, 712 So.2d 1252, 1254 (Fla. App. 1998) (fact that its lawyer was not retained by client is immaterial; it is enough if client consults attorney with a view to employing attorney professionally); Westinghouse Electric Corp. v. Kerr-McGee Corp., 580 F.2d 1311, 1319 (7th Cir. 1978) (communications in the course of preliminary discussions with lawyer privileged even though employment is not accepted); Taylor v. Sheldon, 173 N.E.2d 892, 895 (Ohio 1961).

No reasoned reading of the February 13, 2003 letter could lead to any other conclusion than that Mr. Thompson was, among other things, seeking legal advice and guidance from the Attorney General. The letter explained that the law firm of Brooks Lynch & Tydingco

---

[28] *Id.* at 5.

15

had been terminated as counsel in the bid dispute cases, and that GIAA was seeking "assistance" of the Attorney General's Office until other private counsel could be retained. The relevant portion of the letter is recited in the Statement of Facts herein. The critical sentence at issue reads, **"[f]or these reasons, GIAA respectfully requests the assistance of your office in the two civil actions until such time as GIAA can complete the procurement process and retain private counsel."**[29] There simply can be no doubt that Mr. Thompson gave this confidential information to the Attorney General in an effort to seek legal "assistance," albeit perhaps *temporary* assistance, concerning the bid dispute cases.

It is Mr. Thompson's point of view, not the Attorney General's, which governs the matter. The professional relationship for purposes of the attorney-client communication privilege "hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." Westinghouse, *supra*, 580 F.2d at 1319; *citing McCormick on Evidence* (2d Ed. 1972), § 88 at p. 179; *R. Wise, Legal Ethics* (1970) 284.

Mr. Thompson's February 13, 2003 letter speaks for itself. The letter is sufficient on its face to support the conclusion that Mr. Thompson thought he was seeking legal assistance. However, if there were any doubt about the matter, it is resolved by Mr. Thompson's own declaration concerning his state of mind. In his March 10, 2003 Declaration on file with this Court, Mr. Thompson said, under penalty of perjury, "In this [February 13, 2003] letter, **I requested that the Attorney General provide legal representation to GIAA** in two lawsuits

---

[29] February 13, 2003 letter from Mr. Thompson to the Attorney General, Exhibit B to Attorney General's Motion as well as Declaration of David A. Mair (March 17, 2003).

that are currently pending against GIAA in the Superior Court of Guam . . . ".[30] Mr. Thompson also stated in the same declaration that, "When I sent my letter of February 13, 2003 and Mr. Santos' memorandum of February 5, 2003, to the Attorney General, I did so with the good faith intention and belief that such documents would constitute a privilege attorney-client communication regarding matters that were the subject of litigation."[31]

## V.

## THE CONFIDENTIAL DOCUMENTS WERE NOT "PUBLIC RECORDS" SUBJECT TO DISCLOSURE UNDER THE SUNSHINE LAW

In a last desperate attempt to unravel himself from his own twisted web of contradictions, the Attorney General attempts to justify his imprudent and unprofessional disclosure of confidential materials by claiming that they are *really* public records pursuant to the Sunshine Law.[32] This bizarre notion is hinged on the contention that the confidential documents were handed over *solely* for the purpose of obtaining the Attorney General's "independent discretionary authority" as an officer under the Guam procurement law. As has been demonstrated at length herein, that was only *one* of the purposes for the February 13, 2003 letter. The other purpose was to seek immediate "assistance" of the Attorney General in the event that he would deny GIAA the right to engage counsel of its choice.

---

[30] Declaration of William R. Thompson in support of *Ex Parte* Motion to Seal and Redact Confidential Communications (March 10, 2003) at ¶ 4 (emphasis added).

[31] *Id.* at ¶ 7 (emphasis added).

[32] *Plaintiff's Motion for Clarification & Rule 60(b) Motion for Relief from Order* (March 13, 2003) at 8, 11.

17

The Attorney General conveniently loses sight of the fact that not *all* records are "public records," and subject to disclosure, simply because they wind up in the possession of a government office. The Sunshine Law contains an express exclusion applicable to pending litigation. The exclusion at issue reads as follows:

### § 10108. Limitation on Right of Inspection.

Except as provided in § 10109 of this chapter, nothing in this chapter shall be construed to require disclosure of records that are in any of the following:

(a) ***Records pertaining to pending litigation*** to which the agency is a party, until the pending litigation has been finally adjudicated or otherwise settled.

5 G.C.A. § 10108(a) (emphasis added).

Plainly, records pertaining to "pending litigation" are exempt from disclosure under the Sunshine Law. The Attorney General's disingenuous attempt to justify his improper disclosure of the subject documents on the basis of the Sunshine Law in nearly as reckless as his disclosure of the documents in the first place.

## VI.

## IF THE ATTORNEY GENERAL REMAINS PUZZLED ABOUT HOW TO REDACT THE SUBJECT LETTER HE SHOULD EXAMINE DEFENDANT'S *EXHIBIT C*

As something of an afterthought, in the "Conclusion" of his March 13 memorandum in support of this motion, the Attorney General discusses what is perhaps his only legitimate point. He seeks "clarification from the Court as to what should be redacted from the

18

exhibits filed with the Complaint."[33] This would seem to be a fairly simple task. References to the facts and merits of the bid dispute should be redacted; and the attachment should be redacted in its entirety. However, to the extent that any further guidance is needed, Defendant hereby proffers, as Exhibit C in support of this memorandum, what he believes to be a properly-redacted version of the subject letter.

## CONCLUSION

The Attorney General's motion for "Clarification" is, in fact, an exercise in *obfuscation*. This Court fully grasped the nature and importance of Defendant's motion to seal. Neither the Attorney General's unfounded allegations of "misrepresentation," nor his revisionist account of the facts of this case, lend any support to his flailing efforts to have this Court reconsider this settled matter. The Attorney General's motion should be denied.

Respectfully submitted this ___17th___ day of March, 2003.

MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
Attorneys for Defendant William R. Thompson, in his
   official capacity as Executive Manager of the
   A.B. Won Pat Guam International Airport Authority

By_____
**DAVID A. MAIR**

P03733.RTT

---

[33] *Plaintiff's Motion for Clarification & Rule 60(b) Motion for Relief from Order* (March 13, 2003) at 12.

19