**Office of the Attorney General**
**Douglas B. Moylan**
Attorney General of Guam
**Civil Division**
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 ● USA
(671) 475-3324 ● (671) 472-2493 (Fax)
www.guamattorneygeneral.com ● law@mail.justice.gov.gu

**Attorneys for the Government of Guam**

F I L E D
DISTRICT COURT OF GUAM

MAR 1 7 2003

MARY L. M. MORAN
CLERK OF COURT

30

# IN THE DISTRICT COURT OF GUAM
# HAGÅTÑA, GUAM

| | | |
|---|---|---|
| THE ATTORNEY GENERAL OF GUAM, | ) | CIVIL ACTION NO. 03-00008 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| WILLIAM R. THOMPSON, in his official | ) | **OPPOSITION TO MOTION TO DISMISS** |
| capacity as Executive Manager of the Guam | ) | **FOR FAILURE TO NAME THE PROPER** |
| Airport Authority, | ) | **DEFENDANT AND JOIN ANY** |
| | ) | **INDISPENSABLE PARTY** |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

The defendant claims that the Executive Manager of the Airport Authority does not have statutory authority to contract with an attorney and for that reason the case should be dismissed because 1) the Executive Manager is not empowered by statute to be sued in the Airports stead i.e. the Executive Manager not a "suable entity" 2) the Executive Manager lacks a connection with the process by which the Airport attorney is hired, and 3) the plaintiffs failed to name anyone responsible for the hiring of the attorney.

Page 1
*Opposition to Motion to Dismiss for Failure to Name the Proper*
 *Defendant and Join any Indispensable Party*
Superior Court of Guam
Civil Action No. 03-00008

Case 1:03-cv-00008     Document 35     Filed 03/17/2003     Page 1 of 49

1    On the contrary, by statute the Executive Manager is responsible for contracting with the

2    Airport's attorney.

3        12 GCA §1107 (b) sets forth the powers of the Executive Manager.

4        Paragraph 5 of that subsection provides

5            The powers of the Executive Manager include:

6            …
             (5) To devote his entire time to the business of the Authority, <u>to select</u> and
7            <u>appoint</u> the employees of the Authority, <u>except as otherwise provided in</u>
             <u>this Chapter</u>, and to plan, organize, coordinate and control the services of
8            such employees in the exercise of the powers of the Authority under the
             general direction of the Board.
9

10       For reasons that will appear, the Airports attorney is an employee, and thus his selection, up

11   to the execution of a contract for his services, is the responsibility of the Airport Manager pursuant

12   to this section. 12 GCA §1108 (a), relied upon by the defendant, states only that "[t]he Board may

13   <u>appoint</u> …an attorney." The provision 12 GCA §1107 stating that the Executive Manager is " to

14   <u>select</u> <u>and</u> <u>appoint</u> the employees of the Authority, <u>except</u> <u>as</u> <u>otherwise</u> <u>provided</u> in this Chapter "

15   allows for the Board's appointment of the Airport attorney, but reserves the selection of the Airport

16   attorney to the Executive Manager.

17       Contrary to the reference of the defendant to the Airport appointing "independent legal

18   counsel" and entering into a "legal services contract" with an attorney, the Airport Board of

19   Directors (hereinafter Board) has no authority to enter into a "legal services contract" with an

20   "independent contractor." Instead the attorney appointed by the Board is an employee.   12 G.C.A.

21   §1108, principally relied upon by the defendants, provides in relevant part:

22
             The Board may also appoint a treasurer, a comptroller and an attorney, <u>all</u>
23
             <u>of whom shall serve at the pleasure of the Board.</u>
24

25   Page 2
     *Opposition to Motion to Dismiss for Failure to Name the Proper*
     *  Defendant and Join any Indispensable Party*
     Superior Court of Guam
     Civil Action No. 03-00008

However, 4 GCA §4102 provides as follows:

> Classified and Unclassified Services All offices and employment in the Government of Guam, except for employment as academic personnel of the Guam Community College (GCC) and the University of Guam (UOG), as the term academic personnel is defined in enabling laws of GCC and UOG, shall be divided into classified and unclassified services as follows:
>
> (a)     The unclassified service shall include the positions of :
>
> …
>
> (10) all offices and employment made, by law, to be at the pleasure of any board, commission or office

Hence, inasmuch as 12 GCA §1108 provides that the Attorney appointed by the Board "shall serve at the pleasure of the Board," the attorney appointed by the Board of the Airport is in the unclassified service.[1]

The laws governing the Government of Guam's contractual relations with persons providing personal services to the Government contemplate two different kinds of contractual relations, and are found in two different titles of the Guam Code.

The first, the personnel laws, are found in Title 4 of the Guam Code, and govern those contractual relations wherein there is an employer-employee relationship between the Government and the person providing personal services.

The second, the procurement laws, are found in Title 5 of the Guam Code, and govern those contractual relations in which the person providing personal services to the Government of Guam is an independent contractor

---

[1] The provision for the compensation being fixed by the Board in this section was amended by the subsequently enacted government pay scale for attorney in 4 GCA §6208

Page 3
*Opposition to Motion to Dismiss for Failure to Name the Proper*
  *Defendant and Join any Indispensable Party*
Superior Court of Guam
Civil Action No. 03-00008

Case 1:03-cv-00008     Document 35     Filed 03/17/2003     Page 3 of 49

1    12 GCA §1108, by providing for appointment of an attorney in the unclassified service,

2    provided for the appointment of an employee, not an independent contractor.   What is authorized

3    is a "contract of employment" in the unclassified service, not a contract for legal services covered

4    by the Procurement Laws (see GCA 5121).

5    That the unclassified service includes only persons providing personal and services as

6    employees, does not include independent contractors, is indicated by the statutes.   4 GCA

7    §2103.5 makes a distinction between contracts for personal services, covered by the procurement

8    laws, and employment in the unclassified services, as follows:

### §2103.15. Duration of Unclassified Appointments and Contracts.
All contracts for personal services for the government of Guam  and all
employment within the unclassified service of the government of Guam,
including Autonomous and semi-autonomous agencies, where no specific
term of appointment or employment is specified in law as to that
particular and specific position, shall be at the pleasure of the appointing
authority. No employment agreement, however described, shall provide
for any other term, nor shall such agreement prohibit the appointing
authority from exercising its discretion in terminating said employment
agreement. Any terms in conflict with this section in any employment
agreement executed after the effective date of this Section shall be null
and void from the beginning

Likewise 4 GCA §2103.16 draws a distinction between a "contract of employment between

the government of Guam and any employee or officer in the unclassified service," on the one

hand, and "contracts not involving an employment relationship with the government of Guam,"

on the other. The statute provides that the requirement that contracts for employment be

"specifically permitted by law" or be "for a physician or dentist" does not apply to "independent

services" by retired employees or "independent contracts" by persons who do not wish to be full

time employees.

Page 4
*Opposition to Motion to Dismiss for Failure to Name the Proper*
  *Defendant and Join any Indispensable Party*
Superior Court of Guam
Civil Action No. 03-00008

1    4 GCA §2103.16 reads

2           **§2103.16 Employment and employment contracts; when
      forbidden.** No <u>contract of employment</u> shall be entered into between the
3     government of Guam and any <u>employee</u> or <u>officer</u> in the <u>unclassified
      service</u> within the government of Guam unless such employment contract
4     is specifically permitted by law or is for a physician or dentist. Such
      employment shall be effected through the standard form of personnel
5     action. This Section shall not affect the ability of the government of
      Guam to contract for temporary services or for specific <u>contracts not
6     involving an employment relationship with the government of Guam</u>, but
      shall apply to a contract which is essentially a contract for full-time
7     personal service; **provided**, however, that the executive branch and the
      autonomous agencies and instrumentalities of the government of Guam
8     may contract for the <u>independent services</u> of any retired employee of the
      government of Guam, who shall receive thereunder the standard
9     government of Guam retirement benefits given non-contract employees;
      and **provided**, further, that, in addition, the executive branch and the
10    autonomous agencies and instrumentalities of the government of Guam
      may also hire under <u>independent contracts</u> persons who do not wish to be
11    full-time employees (2080 hours per year) and who agree that they shall
      not receive any of the benefits given full-time non-contractual employees
12    of the government of Guam. (emphasis added)
13

14    Further evidence of the intent that the unclassified service not include independent

15    contractors is supplied by 4 GCA §2107, which re-iterates the foregoing:

16           **§2107. Employment Contract – When Forbidden.** No <u>contract
      of employment</u> shall be entered into between any employee, <u>in the
17    unclassified service</u> within the government of Guam unless such
      employment contract is specifically permitted by law. Such employment
18    shall be effected through the standard form of personnel action. This
      Section shall not affect the ability of the Government to contract for
19    temporary services or for specific <u>contracts not involving an employment
20    relationship with the Government.</u> (emphasis supplied)

21    Inasmuch as 4 GCA §1108 provides for appointment of an attorney in the unclassified

22    service, and the statute make it clear that only contracts of employment, and not independent

23    contracts, personal services contracts or contracts for legal services are included within the ambit

24    of the unclassified service, the Executive Manager had the authority to select the Airports

25
Page 5
*Opposition to Motion to Dismiss for Failure to Name the Proper*
 *Defendant and Join any Indispensable Party*
Superior Court of Guam
Civil Action No. 03-00008

Case 1:03-cv-00008    Document 35    Filed 03/17/2003    Page 5 of 49

attorney, if not appoint the attorney. Appointment of the attorney was reserved to the Board by 12 GCA §1108.

Although the term "appoint" is not defined, it would seem to refer to that part of the hiring process of an unclassified employee when a standard form of personnel action (see 4 GCA §2103.16 is obtained from the Department of Administration. It is preceded by the selection process, which terminates with the execution of a contract of employment by the director of the agency .

However, if the Court finds that the Board is the proper party defendant in this action. Rule 19 of the Federal Rules of Civil Procedure recognizes that dismissal is the last remedy when a proper party has not been joined. Rule 19(b) provides that one of the factors to consider when faced with dismissal for non-joinder is "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." Obviously, dismissal is a dramatic last resort, and obviously not warranted for in this situation "when compulsory joinder presents a close question, the court should err on the side of continuing the litigation." *Confederated Tribes of Chehalis Indians v. Lujan,* 928 F.2d 1496, 1506 (9th Cir. 1991)

At the time that the lawsuit was filed, the Request for Proposals ("RFP") was issued by Defendant Thompson. The RFP was not issued by the Board. If the court finds that the Board is the proper party defendant in this action,[2] the Attorney General will be bringing the appropriate motions to add them as party defendants.

---

[2] "The Board of GIAA is clearly the proper party defendant." Memorandum of Points and Authorities in Support of Motion to Dismiss for Failure to Name the Proper Defendant and Join and Indispensible Party, p.2.

Page 6
*Opposition to Motion to Dismiss for Failure to Name the Proper
 Defendant and Join any Indispensible Party*
Superior Court of Guam
Civil Action No. 03-00008

1    As for the mistakes by the Attorney General is unrelated cases as noted in the Declaration

2    of David Mair of March 10, 2003, paragraphs 3-4, this is irrelevant and argumentative and beneath

3    the Court's consideration, as is the material contained in footnote 16.

4        As to Defendant's argument that all "government agencies which would be affected by a

5    judgment as requested by the Attorney General" are indispensable, simply no argument has been

6    made to substantiate this statement.   Surely others will be affected – lawsuits usually have

7    implications far beyond the parties before the Court.  But no law has been presented compel the

8    Court to dismiss a case simply because every party who may ultimately be affected it is not today

9    before the Court.

10       Hence, the executive manager did have statutory authority to contract with an attorney and

11   this motion is ill founded.

12       Dated this 17th day of March, 2003.

13

14                                        DOUGLAS B. MOYLAN
                                          Attorney General
15

16

17                                  By: _Joseph A. Guthrie_

18                                        JOSEPH A. GUTHRIE
                                          Deputy Attorney General
19                                        Civil Division

20   A:\03cv00008.opp\ba

21

22

23

24

25   Page 7
     _Opposition to Motion to Dismiss for Failure to Name the Proper_
     _Defendant and Join any Indispensable Party_
     Superior Court of Guam
     Civil Action No. 03-00008

Office of the Attorney General
**Douglas B. Moylan**
Attorney General of Guam
**Civil Division**
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 ● USA
(671) 475-3324 ● (671) 472-2493 (Fax)
www.guamattorneygeneral.com ● law@mail.justice.gov.gu

**Attorneys for the Government of Guam**

FILED
DISTRICT COURT OF GUAM

MAR 17 2003

MARY L. M. MORAN
CLERK OF COURT

# UNITED STATES DISTRICT COURT
# DISTRICT OF GUAM

| | | |
|---|---|---|
| ATTORNEY GENERAL OF GUAM, | ) | Civil Case No. CV03-00008 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **PLAINTIFF'S OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTION TO** |
| WILLIAM R. THOMPSON, in his official | ) | **DISMISS FOR LACK OF SUBJECT** |
| capacity as Executive Manager of the Guam | ) | **MATTER JURISDICTION AND** |
| Airport Authority, | ) | **DEFENDANT'S MOTION TO** |
| | ) | **DISMISS BASED ON** |
| Defendant. | ) | **UNSUITABILITY OF** |
| | ) | **DECLARATORY RELIEF.** |

As a preliminary matter, Plaintiff notes that he has no objection to the proposition that this Court must address the jurisdictional issues before reaching the merits of the action.

## I. OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION.

Relying primarily on the case of <u>Republican Party of Guam v. Gutierrez</u>, 277 F.3d

Page 1
*Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and*
*Defendant's Motion to Dismiss Based on Unsuitability of Declaratory Relief.*
District Court Civil Action Case No. CV03-0008

ORIGINAL

Case 1:03-cv-00008    Document 35    Filed 03/17/2003    Page 8 of 49

1 | 1086 (9th Cir. 2002), Defendant Thompson argues that there is no federal subject matter
2 | jurisdiction. This argument is without merit because the case now before the Court does not
3 | resemble the Republican Party case in the least. The federal jurisdiction in this case is sound.

4 | In the Republican Party case, the Plaintiff sought to enforce a local statute — Plaintiff
5 | sought to force a public official to appoint election commission members. In defense of this
6 | prayer, the defendant in that case raised an Organic Act issue. The district court assumed
7 | jurisdiction on the basis that an Organic Act issue is a federal question, and reached the merits
8 | of the case. The Ninth Circuit reversed on the basis that raising an Organic Act *defense*
9 | cannot confer federal jurisdiction. In fact, this is a principle of federal practice with deep
10 | roots: federal question jurisdiction is determined solely from the face of plaintiff's complaint.
11 | Rath Packing Co. v. Becker, 530 F.2d 1295 (9th Cir. 1976). If the federal question jurisdiction
12 | is raised only in the defense, then there is no federal subject matter jurisdiction.

13 | The Office of the Attorney General agrees that federal question jurisdiction cannot be
14 | predicated merely on the existence of a controversy between branches under the Organic Act.
15 | That is not the issue before the Court, however; it is not, as suggested by Defendant, an "intra-
16 | governmental Organic Act power struggle between different branches of the Government."[1]
17 | This is a lawsuit seeking to enjoin an action by a government official on the basis that the
18 | action does not comply with federal law. The Organic Act dictates that the Attorney General
19 | of Guam is the "chief legal officer" of the territory and as such must approve all legal matters
20 | of the government. In defense, the public official has raised a local law as a defense, stating
21 | that the GIAA enabling legislation permits the Act. This is not a power struggle at all; it is a
22 | legal issue involving interpretation of a federal law, the Organic Act, which happens to also be

23 |

24 | [1] Page 10 Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss.

25 | Page 2
*Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and*
*Defendant's Motion to Dismiss Based on Unsuitability of Declaratory Relief.*
District Court Civil Action Case No. CV03-0008

1   the constitution of Guam. Because the law involved was passed by Congress,[2] there is
2   original subject matter jurisdiction before the Court.

3       Closer examination of the Republican Party case illustrates this. The Ninth Circuit
4   addressed three previous Guam cases in which federal subject matter jurisdiction was proper:
5   Bordallo v. Baldwin, 624 F.2d 932 (9th Cir. 1980), Bordallo v. Reyes, 763 F.2d 1098 (9th Cir.
6   1985), and Bordallo v. Camacho, 475 F.2d 712 (9th Cir. 1983). The Ninth Circuit stressed that
7   in each of the above-mentioned cases, "absent the alleged violations of the Organic Act, the
8   plaintiffs in each of the three cases would not have been able to assert a violation of law or
9   obtain relief." Such is the case here: absent the Plaintiff's allegation that a public official is
10  failing to recognize the Organic Act change in the duties of the Attorney General, there would
11  be no federal jurisdiction. The Ninth Circuit said of the Republican Party "the plaintiff's
12  claim relies upon the Governor's violation of...[a local law]." There is no violation of a *local*
13  law by the Airport here. There is an alleged violation of a *federal* law: the Organic Act. In
14  defense, the Airport asserts *local* law. This Court does not thereby lose its jurisdiction. It
15  must still confront the issues created when Congress passed the 1998 amendment to the
16  Organic Act. It may be a local issue, but it is a federal law which we now present to the
17  Court.

18      As will become clear when the underlying issues are reached, the issue is uniquely
19  federal because of the mission before Congress in 1996 through 1998: the 1998 Amendment
20  was not only enacted to allow for an elected Attorney General, but more to remove the
21  Attorney General from the sphere of influence of the executive *and* legislative branches. The

22

23      [2]The Organic Act was amended by Congress in 1998 to create a position of Attorney General with
24  inherent common law powers, and to give the local legislature the option to make the position of Attorney
    General elected rather than appointed by the Governor.

25  Page 3
    *Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and*
    *Defendant's Motion to Dismiss Based on Unsuitability of Declaratory Relief.*
    District Court Civil Action Case No. CV03-0008

1 | legislative history makes clear that the decision whether the Attorney General would be
2 | elected or not must be a local decision, not a Congressional decision. Rather, the primary
3 | objective of the 1998 amendment was to organically create the position so that it would be
4 | immune from interference from *both* the executive and legislative branches.

5 | The source of legislative history on the 1998 Amendment is found in H.R.Rep. 105-
6 | 742 dated September 24, 1998, 1998 WL 658802, where the Committee Report states, "public
7 | concerns revolve around political interference with investigations, inefficiency of case work
8 | and dismissal of the Attorney General without cause." Senator Barrett-Anderson testified that
9 | "the people of Guam expect the Attorney General to protect their interest above all else. An
10 | appointed Attorney General, unfortunately, must respond to a great extent to the concerns of
11 | the Governor." *U.S. Territories Issues: Hearings on Resolution #433 Before the*
12 | *Subcommittee on Native American & Insular Affairs*, (statement of Senator Elizabeth Barrett-
13 | Anderson, 23rd Guam Legislature), 7/24/96 Cong. Testimony, 1996 WL 10830029. Over a
14 | year later, at the second round of Committee Hearings, Senator Ben Pangelinan echoed this
15 | sentiment: "It has become inherently clear that the appointed Attorney General is not capable
16 | of isolating himself or herself from political interference." *Guam Legislation: Hearings on*
17 | *H.R. 100 and H.R. 2370 Before the Committee on Resources,* (statement of Senator Ben
18 | Pangelinan, 23rd Guam Legislature), 10/29/97 Cong. Testimony, 1997 WL 16138742.

19 | However, the Guam Legislature initially involved themselves in an unexpected
20 | fashion: The Legislature had before it Bill. No. 571 of the 23rd Guam Legislature, dated
21 | March 22, 1996, the net effect of which would have been to transfer the supervision and
22 | control over the Attorney General from the executive branch to the legislative branch.
23 | Compiler of Law Charles Troutman eventually responded with a letter to Congressman
24 | Underwood, explaining that simply switching the possible influence over the office from the

25 |

Page 4
*Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and*
*Defendant's Motion to Dismiss Based on Unsuitability of Declaratory Relief.*
District Court Civil Action Case No. CV03-0008

1  executive to the legislative hardly met the objective of making the office independent: "[T]he

2  position, if you mention it at all, must be created by the Organic Act, not just permitted."

3  Letter from Charles H. Troutman to Congressman Underwood of April 1, 1997, page 2.

4  Therefore, contrary to the argument of the Airport in this case, because the Organic

5  Act created the Office of Attorney General, the office is endowed with a different character

6  because it was Organically created and thereby immune from local executive *or* legislative

7  interference. This is also a compelling reason for resolution of this dispute in District Court of

8  Guam: the United States Congress passed a law organically creating the position. While most

9  states' constitutions emerge from that state's inherent sovereign immunity (thereby conferring

10  uniquely local jurisdiction over its constitutional questions to their state supreme courts)

11  Guam has the unique tradition of its "constitution" being a federal law. The Ninth Circuit has

12  never circumscribed the jurisdiction of the District Court of Guam over its Organic Act

13  ("constitutional") questions. On the contrary, the Ninth Circuit has merely reminded us that

14  when the federal question is a defense only, jurisdiction is not conferred.

15  Because the power of the Attorney General is set forth in federal law, passed by the

16  United States Congress after substantial consideration by federal and local officials, this case

17  stands on the same footing as the three previous Guam cases noted above, and noted by the

18  Ninth Circuit. In all of these cases, the question was: "in order to vindicate their rights under

19  [local law], must the plaintiffs plead and prove the asserted violation of federal law?"

20  Republican Party at 1090. Yes, the Attorney General of Guam must seek to restrain an action

21  of a local official on the basis that such action is in disregard of the Organic Act. This is

22  expressly approved by the Ninth Circuit in the Republican Party case.

23  Finally, in the case of Gutierrez v. Ada, 528 U.S.250 (2000) federal subject matter

24  jurisdiction was never disputed. The case now before the Court stands in the exact same

25  
Page 5
*Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and*
*Defendant's Motion to Dismiss Based on Unsuitability of Declaratory Relief.*
District Court Civil Action Case No. CV03-0008

Case 1:03-cv-00008    Document 35    Filed 03/17/2003    Page 12 of 49

1    posture as <u>Ada</u>: one public official is seeking the guidance of the federal court on a language

2    contained in the Organic Act on the following issue: Does the fact that Congress created the

3    position of a "chief legal officer" for this territory limit the right of government

4    instrumentalities to hire its own legal counsel? We look to language of the Organic Act to

5    solve this issue, just as this Court, the Ninth Circuit and ultimately the United States Supreme

6    Court looked to language of the Organic Act to determine what a "majority" was. The later

7    case of <u>Republican Party of Guam v. Gutierrez</u> has no impact on the jurisdictional posture of

8    the <u>Ada</u> case.

9        The <u>Gutierrez v. Pangelinan</u>, 276 F.3d 539 (9th Cir. 2002) is irrelevant. It does not

10    address federal subject matter jurisdiction. The <u>Gutierrez v. Pangelinan</u> case addresses the 15-

11    year review period of cases from the Supreme Court of Guam. Counsel for the Airport relies

12    on <u>Gutierrez v. Pangelinan</u> to remind us that even cases brought via the Guam Supreme Court

13    can reach the Ninth Circuit. This principle of law has nothing to do with federal subject

14    matter jurisdiction. Further, it undermines the Airport's abstention argument: if we are urged

15    to leave this issue to local courts, why is the Airport reminding us of how the local courts are

16    still answerable to the Ninth Circuit? The Attorney General's position is that there is original,

17    federal jurisdiction in the District Court of Guam. The inquiry ends there.

18

19    **II.**      **OPPOSITION TO DISMISSAL OF INJUNCTIVE RELIEF**

20        The Defendant next moves the Court to dismiss the lawsuit because the ethical issues

21    raised by the lawsuit are of a nature that should be dealt with by only the Supreme Court of

22    Guam. Defendant claims that the Attorney General is asking this Court to "continence [sic]

23    and become complicit in an ethical violation." The ethical violation referred to is the

24    allegation that the Attorney General is the lawyer for GIAA, and is seeking a remedy against

25

Page 6
*Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and*
*Defendant's Motion to Dismiss Based on Unsuitability of Declaratory Relief.*
District Court Civil Action Case No. CV03-0008

1 | its own client.

2 | This matter is not new to the Office of the Attorney General. This very argument was

3 | made by the attorney for the Board of Regents in the case of <u>Tarantino v. Board of Regents</u>,

4 | Superior Court of Guam Civil Case No. CV-1455-00. The Superior Court judge agreed and

5 | dismissed the lawsuit on the grounds that an attorney could not sue his own client. However,

6 | this ruling was vacated by Order of the Supreme Court of Guam in Supreme Court of Guam

7 | dated October 24, 2001, Case No. CVA-00-30. The Superior Court ruling was, therefore, a

8 | nullity. In the course of that litigation, however, this very problem was repeatedly addressed:

9 | the fact that every state's Attorney General has many clients. An Attorney General wears

10 | many hats.

11 | The case of <u>Gray v. Rhode Island Department of Children, Youth & Families</u>, 937

12 | F.Supp. 153, (D.R.I. 1996), is one of many cases demonstrating the difficulties present when

13 | dealing with government lawyers.[3] That case recognized "absurdity" that results from

---

[3] Another Guam case has addressed this issue: <u>People v.</u> Castro, Superior Court of Guam Criminal Case No. CF324-98. That case dealt with a motion to disqualify: "when deciding a motion involving the potential disqualification of a governmental lawyer, additional factors must be considered," specifically, the comment to Model Rule 1.11, "Successive Government and Private Employment," which states that "rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government." Comment 3, Rule 1.11, Model Rules of Professional Conduct Attention is directed to the Decision & Order in <u>People of Guam v. Castro</u>, Superior Court of Guam Criminal Case No. CF-324-98, entered on March 10, 2000. In that case, the Honorable Tydingco-Gatewood held that the Attorney General's office could prosecute a criminal statute in its criminal division, and simultaneously defend a civil action based on the same set of facts, taking a diametrically opposed position. The Court concluded that "the Attorney General is *not* precluded by Rules 1.7 and 1.9 from representing the Government," reasoning that the rules of ethics were not to be mechanically applied. In reaching this result, the Superior Court in that case examined all the documents in the case and concluded that none of the documents in either lawsuit created a conflict because no confidential communication were compromised. The Superior Court Decision held that "the independency of legal counsel is preserved" and that "the presumption of impartiality as a servant of the law has not been rebutted." Decision & Order on Defendant's Motion to Disqualify the Office of the Attorney General, March 10, 2000, Superior Court of Guam Criminal Case no. CF-324-98, page 9, lines 8, 21-22.

In fact, the <u>Castro</u> case foresaw this very situation, and found that it would be an unacceptable one: Carrying Defendants' position to its logical end, every time a person, acting within his capacity as an agent of the government, becomes the subject of a criminal investigation, that party could disqualify the

1    stretching the ethical rules to lengths such that government lawyers are always in a conflict
2    situation: "if the governmental entity as a whole is the client, anytime one agency of
3    government sues another an irreconcilable conflict would arise under Rule 1.7." Gray at 159.
4    "A majority of states have permitted the AG to concurrently represent conflicting interests
5    when the AG can ensure independent representation for the competing parties." Hawaii v.
6    Klattenhoff, 801 P.2d 548 (Haw. 1990).

7         Compounding the depth of the issues is the very Organic Act modification at issue in
8    this lawsuit. Some Attorneys General, even if they are constitutionally created positions, still
9    act at the pleasure or under the supervision of the governor of that state. For instance,
10   California's Attorney General remains under the supervision of the executive by virtue of
11   their constitution, Article V Executive § 13, which states, "*Subject to the powers and duties of*
12   *the Governor*, the Attorney General shall be the chief law officer of the State" (emphasis
13   added). In Illinois, on the other hand (the state after which Guam patterned its attorney
14   general language), Article 5, §15 of the Illinois Constitution provides simply, "The Attorney
15   General shall be the legal officer of the State, and shall have the duties and powers that may
16   be prescribed by law." Guam has language similar but not identical to Illinois' language, and
17   quite different from California's. The role of the Attorney General of Guam is not subject to
18   quick or easy classification.

19        The foregoing discussion proves that the matter before the Court is not simply a matter
20   of professional conduct. If it were, the Attorney General agrees that the Guam Supreme Court
21   should have ultimate authority over the matter. But this is first a unique issue of federal law.

22
     _____
         Attorney General from prosecuting based upon an alleged conflict of interest in any civil matter brought
23       regarding related facts. The Attorney General would constantly be prevented from performing his legal
         duties assigned to him by the laws of Guam, a conclusion which this Court finds untenable.
24       Decision & Order, Superior Court of Guam Criminal Case No. CF-324-98, page 7 lines 16-21.

     _____
25   Page 8
     *Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and*
     *Defendant's Motion to Dismiss Based on Unsuitability of Declaratory Relief.*
     District Court Civil Action Case No. CV03-0008

1   The issue is what it means to be the "Chief Legal Officer" of Guam. This interpretation of the

2   Organic Act will set the rights and obligations of the Attorney General under the Rules of

3   Professional Conduct.  In fact, the reason this lawsuit is so important is that the legal

4   community must delineate and clarify what it means to be the Chief Legal Officer before

5   accusations of unethical conduct are made.

6           The lawsuit before the Court was brought to prevent the sort of rash accusations and

7   hurried rulings that occurred in the <u>Tarantino v. Board of Regents</u> case, which ultimately was

8   vacated by the Supreme Court at a significant cost to the taxpayers and to the legal

9   community.  The Attorney General urges this Court to accept jurisdiction and proceed to an

10  orderly declaratory ruling on the impact of the 1998 Amendment to the Organic Act, an issue

11  that this Court is uniquely suited, in fact statutorily created, to entertain.

12

13  **III.    OPPOSITION TO ABSTENTION**

14          Defendant Airport further urges this Court to dismiss this lawsuit under the doctrine of

15  abstention, as that doctrine is set forth in <u>Younger v. Harris</u>, 407 U.S. 37 (1971). As Airport

16  counsel reminds us, abstention is appropriate under <u>Younger</u> when three features are present:

17  (1) there is ongoing litigation in a local forum, (2) such proceedings implicate important state

18  interests, and (3) the state proceedings provide an adequate opportunity to raise the federal

19  issues. The Airport then represents to this Court that all three features are met in this case.

20          It is undisputed that the case before this Court was filed on March 3, 2003.  It is also

21  undisputed that the Airport's suit in the Superior Court was filed on March 7, 2003.  Airport

22  counsel discusses this anomaly dismissively:  A distinction between <u>Ada</u> and the facts in the

23  instant case is that here the pending Superior Court proceedings have already progressed

24  further than the District Court action."  Defendant's Brief p. 19.  In their related motion to

25  Page 9
    *Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and*
    *Defendant's Motion to Dismiss Based on Unsuitability of Declaratory Relief.*
    District Court Civil Action Case No. CV03-0008

1    dismiss the Declaratory Relief action, Defendant states, "The Attorney General will likely
2    argue that this Court should cling onto this case because the Attorney General raced to the
3    Courthouse and filed his federal complaint ... a few days before....GIAA could file suit in the
4    Superior Court." Defendant's Motion to Dismiss Based on Unsuitability of Declaratory
5    Relief, p. 5.

6        The critical fact in this case is that there was no "ongoing" lawsuit in the Superior
7    Court at the time that the Attorney General filed this lawsuit. Therefore, the <u>Younger</u> doctrine
8    cannot apply. The Airport filed a lawsuit in Superior Court some days after the Attorney
9    General initiated this litigation, but the wrong complained of in the lawsuit was simply that
10   the Attorney General had filed suit! If the Attorney General had not filed suit in the District
11   Court of Guam, what would the Airport have filed? A lawsuit permitting them to run an ad in
12   the PDN soliciting legal services? In other words, the Airport here has filed a *responsive* suit
13   in the Superior Court, and now would have this Court dismiss the underlying lawsuit because
14   it managed a *de facto* reverse-removal to state court. This is not the type of abuse that the
15   <u>Younger</u> doctrine is meant to countenance.

16       If this Court were to dismiss this lawsuit on the abstention doctrine when the Airport
17   did not even have a cause of action before the Attorney General filed suit, this would allow
18   anyone to file the identical lawsuit in local court and thereby destroy federal jurisdiction. This
19   cannot be what the Supreme Court contemplated. "The doctrine of abstention is 'an
20   extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy
21   properly before it.'" <u>Champion International Corporation v. Brown</u> 731 F.2d 1406 at 1408
22   (9th Cir 1984), quoting from <u>County of Allegheny v. Frank Mashuda Co.</u>, 360 U.S. 185, 188
23   (1959). The <u>Younger</u> abstention doctrine "embodies 'a strong federal policy against federal
24   court interference with ***pending*** state judicial proceedings.'" <u>Beltran v. State of California</u>,

25   
Page 10
*Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and*
*Defendant's Motion to Dismiss Based on Unsuitability of Declaratory Relief.*
District Court Civil Action Case No. CV03-0008

1  871 F.2d 777 (9th Cir. 1988),[4] quoting from Middlesex County Ethics Commission v. Garden

2  State Bar Assn., 457 U.S. 423, 431 (1982).

3      Abstention cannot apply when the simultaneous local proceeding is merely threatened

4  but not commenced. Steffel v. Thompson, 415 U.S. 452 (1974). *See also* WXYZ, Inc. v.

5  Hand 658 F.2d 420 (6th Cir. 1981). While Defendant tells this Court that "the discretion of a

6  federal court 'cannot turn on so mechanical a rule', Continental Ins. Co. v. Bayless & Roberts,

7  Inc., (D. Alaska 1973) *affirmed*, 503 F.2d 1379 (9th Cir. 1974)[5]." The first prong of Younger

8  is not merely a "mechanical" rule. If no case is pending when the action is filed, then there

9  can be no abstention.

10      Therefore, for the simple reason that unfortunately for Defendant, there was no

11  "pending" or "ongoing" state proceeding, the doctrine of abstention cannot apply. It does not

12  save the case that "pending Superior Court proceedings have already progressed further than

13  the District Court action."[6]  Defendant secured an *ex parte* order in the Superior Court

14  instantaneously, but this does not make the Superior Court action "pending" as of the date that

15  this Court was asked to take jurisdiction.

16      Further, no first lawsuit could have been filed in Superior Court prior to the filing of

17  the Attorney General's complaint. There was no cause of action. The Airport Manager

18  sought to retain legal counsel - this does not give rise to a cause of action in Superior Court. It

19

20      [4]  The reported case of Beltran v. State of California overrules and supplants the case cited by

21  Defendant in its Memorandum in Support of Defendant's Motion to Dismiss for Lack of Subject Matter
   Jurisdiction, p. 15, as Beltran v. State of California, 857 F.2d 542 (9th Cir. 1988).

22      [5]  The quoted language does not appear in the case cited nor in its lower court citation, 366 F. Supp. 287

23  (D. Ala. 12973).

24      [6]  Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss for Lack of
   Subject Matter Jurisdiction p. 19.

25  Page 11
   *Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and*
   *Defendant's Motion to Dismiss Based on Unsuitability of Declaratory Relief.*
   District Court Civil Action Case No. CV03-0008

was not until the Attorney General asked the District Court of Guam to rule on the nature of the office under the 1998 amendment to the Organic Act that the matter became a lawsuit. A litigant should not be able to simply reverse the parties and file the same lawsuit in the local court and claim "abstention!" This is an abuse. The District Court of Guam should not permit this abuse to proceed.

## IV.    OPPOSITION    TO    DISMISSSAL    BASED    ON    UNSUITABILITY    OF DECLARATORY RELIEF.

Finally, Defendant asks this Court to dismiss the lawsuit based on the unsuitability of the declaratory relief. Defendant argues that relief under the Declaratory Relief Act (28 U.S.C. §2201) is discretionary, and then argues that the Court should not exercise that discretion. Put simply, the Defendant argues that it is neither automatic nor obligatory for the District Court of Guam to assume jurisdiction over a declaratory judgment actions. The Attorney General submits that for the reasons stated in the prior arguments, it is critical that the District Court of Guam assume jurisdiction in this case.

In addition to the arguments presented above, the Attorney General is compelled to point out that there is lengthy Congressional history evidencing a need to insulate the Attorney General of Guam from local politics. The local judges are appointees of the Governor of Guam. The local judiciary receives its funding from the Legislature of Guam. There are vacancies on the bench of the Supreme Court of Guam and potentially the Superior Court of Guam. Until the local law is changed, the Attorney General of Guam has a statutory seat on the Judicial Council. It is hardly worth repeating that rather than insulating the Attorney General from local politics, the present lawsuit, if sent to local court, will expose the

Page 12
*Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Defendant's Motion to Dismiss Based on Unsuitability of Declaratory Relief.*
District Court Civil Action Case No. CV03-0008

Case 1:03-cv-00008    Document 35    Filed 03/17/2003    Page 19 of 49

1    Attorney General to local politics. This is the opposite of what Congress and the many

2    Guamanians who worked on this 1998 Amendment wanted.

3         The 1998 Amendment was a non-partisan effort to raise the Office of the Attorney

4    General above the fray of local politics. The extent of the common law and statutory powers

5    resulting from that amendment are at issue in this case. If such powers are litigated within a

6    judiciary who receives its funding from a legislature and whose appointees seek approval of

7    the executive branch, all the efforts of the 1998 Amendment are frustrated. The Plaintiff

8    appreciates that there may be a reluctance to have important issues of public law resolved by

9    declaratory judgment, but in this case, there is no money damage alternative. There is no

10   compelling reason to deny jurisdiction over this Declaratory Relief action.

11

12                                    **CONCLUSION**

13        For these reasons, the Attorney General respectfully requests this Court to deny the

14   Motion to Dismiss.

15        Respectfully submitted this 17th day of March, 2003.

16

17                                    **OFFICE OF THE ATTORNEY GENERAL**
                                      DOUGLAS B. MOYLAN, Attorney General of Guam
18

19                                    _B. Ann Keith_

20                                    **B. Ann Keith,**
                                      **Assistant Attorney General, Civil Division**

21

22

23

24   BAK:jlr\AK\Litigation\GIAA.Opp.Mtn.Dis

25   ------------------------------------------------------------------------
     Page 13
     *Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and*
     *Defendant's Motion to Dismiss Based on Unsuitability of Declaratory Relief.*
     District Court Civil Action Case No. CV03-0008

MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
Attorneys at Law
Suite 807, GCIC Building
414 West Soledad Avenue
Hagåtña, Guam 96910
Telephone: (671) 472-2089/2090



FILED
DISTRICT COURT OF GUAM
MAR 1 7 2003
MARY L. M. MORAN
CLERK OF COURT
28

Attorneys for Defendant William R. Thompson,
 in his official capacity as Executive Manager
 of the A.B. Won Pat Guam International Airport Authority

IN THE DISTRICT COURT OF GUAM
TERRITORY OF GUAM

| | |
|---|---|
| THE ATTORNEY GENERAL OF GUAM, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM R. THOMPSON, in his official capacity as Executive Manager of the Guam Airport Authority, <br><br> Defendant. | CIVIL ACTION FILE NO. 03-00008 <br><br> **DECLARATION OF DAVID A. MAIR IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLARIFICATION AND RELIEF FROM ORDER** |

I, DAVID A. MAIR, hereby declare as follows:

1.     I am a resident of Guam, over the age of 18, and legally competent to testify to the matters contained in this Declaration and do so based upon personal knowledge.

2.     I am the attorney for Defendant William R. Thompson in this case. Mr. Thompson is the Executive Manager of the Guam International Airport Authority (GIAA).

3.     On March 11, 2003, this Court granted Mr. Thompson's *ex parte* motion to seal confidential communications between him, GIAA, and the Attorney General because

1

ORIGINAL

the documents sought to be sealed are of a highly sensitive nature and immediate action is necessary in order to avoid irreparable harm. On March 13, 2003, the Attorney General filed what purports to be a "Motion for Clarification and Rule 60(b) Motion for Relief from Order." A memorandum of points and authorities setting forth in full the grounds for Thompson's opposition to this motion is being filed together herewith and incorporated by this reference.

4.    The Attorney General declined to appoint any members of the Mair firm as Special Assistant Attorneys General for the purpose of the bid dispute cases at issue in this motion.

5.    Attached to this declaration are true and correct copies of correspondence duly sent or received by our office in the normal course of business, as follows:

      (a)      Exhibit A - January 28, 2003 letter from David A. Mair to Attorney General Douglas B. Moylan ("Attorney General");

      (b)      Exhibit B - January 28, 2003 letter from Attorney General to Mr. William R. Thompson;

      (c)      Exhibit C - February 13, 2003 letter from William R. Thompson to the Attorney General. [The version of the letter submitted has been redacted by the undersigned to obliterate confidential references pertaining to the subject bid disputes and litigation strategy. In addition, the attachment to the letter has been omitted.];

      (d)      Exhibit D - March 10, 2003 letter from David A. Mair to J. Basil O'Mallan, III, Esq.;

      (e)      Exhibit F - March 13, 2003 letter from J. Basil O'Mallan, III, Esq. to David A. Mair;

2

6.     Also attached hereto as Exhibit E is a true and correct copy of a document entitled "Declaration" submitted by the Attorney General in the above-captioned proceeding in this Court on or about March 5, 2003.

I declare under penalty of perjury under the laws of Guam that the foregoing is true and correct.

Dated this 17th day of March, 2003.

**MAIR, MAIR, SPADE & THOMPSON**
A Professional Corporation
Attorneys for Defendant

By: 
        **DAVID A. MAIR**

P03834.RTT

3

LAW OFFICES

# MAIR, MAIR, SPADE & THOMPSON

A PROFESSIONAL CORPORATION

SUITE 807, GCIC BUILDING

414 WEST SOLEDAD AVENUE

HAGÅTÑA, GUAM 96910

TELEPHONE (671) 472-2089/90

FACSIMILE (671) 477-5206

RECEIVED

JAN 2 9 2003

ATTORNEY GENERAL'S OFFICE

January 28, 2003

## VIA HAND DELIVERY

Douglas B. Moylan, Esq.
Attorney General of Guam
OFFICE OF THE ATTORNEY GENERAL
Suite 2-200E, Guam Judicial Center
120 West O'Brien Drive
Hagåtña, Guam 96910

Re:     Request for Appointment as Special Assistant Attorney General

Black Construction Corp. v. Government of Guam and International Bridge
Corp./Nippon Hodo Co., Ltd.
Superior Court of Guam; Civil Case No. CV1075-02; and,
International Bridge Corp./Nippon Hodo Co., Ltd. v. Government of Guam and
Black Construction Corp.
Superior Court of Guam: Civil Case No. CV1550-02
GIAA Parallel Taxiway Project No. GIAA-FY98-08-2
AIP Project No.3-66-0001-21/22/24/25/26/28

Dear Mr. Moylan:

As you may know, the law firm of Mair, Mair, Spade & Thompson serves as General Legal
Counsel to the A.B. Won Pat Guam International Airport Authority ("GIAA"). GIAA is presently
involved in two lawsuits, one with Black Construction Corp. and the other with International Bridge
Corp./Nippon Hodo Co., Ltd., both with regards to the Invitation for Bids involving the construction
procurement of the Airport Parallel Taxiway Project as referenced above. These two lawsuits are
captioned as Black Construction Corp. v. Government of Guam and International Bridge
Corp./Nippon Hodo Co., Ltd.: Superior Court of Guam; Civil Case No. CV1075-02 and
International Bridge Corp./Nippon Hodo Co., Ltd. v. Government of Guam and Black Construction
Corp., Superior Court of Guam: Civil Case No. CV1550-02, respectively. Both lawsuits have since
been consolidated by stipulation and an order issued by Judge Manibusan on January 14, 2003.
GIAA has directed our firm to defend its interest in the said dispute. This letter is to respectfully
request that we be appointed as Special Assistant Attorney General to represent GIAA in this action.

## EXHIBIT A

# EXHIBIT A

SAIPAN OFFICE: SUITE 4-B HORIGUCHI BUILDING, POST OFFICE BOX 7917, S.V.R.B., SAIPAN MP 96950
TELEPHONE (670) 233-2089   FACSIMILE (670) 233-5206

02.0130/130M

Douglas B. Moylan, Esq.
January 28, 2003
Page 2

      The attorneys in our law firm that may be working on this lawsuit are: David A. Mair, June S. Mair, Randall Todd Thompson, Sandra E. Cruz, Maria T. Cenzon-Duenas, Sergio Rufo, Georgette Bello Concepcion, Nelson J. Xu and Stephanie G. Flores.

      Thank you very much for your consideration of this request.

              Best regards,

              DAVID A. MAIR

NJX:afst

cc:     William R. Thompson

L033013.NJX



CONFIRMATION

# Office of the Attorney General
## Douglas B. Moylan
Attorney General of Guam
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 • USA
(671) 475-3324 • (671) 472-2493 (fax)
law@mail.justice.gov.gu

January 28, 2003

RECEIVED
JAN 2 9 2003
µØR

**VIA FACSIMILE**
**671-642-4484**

Mr. William R. Thompson
Executive Manager
Guam International Airport Authority
P.O. Box 8770
Tamuning, Guam 96931

### SUBJECT: LEGAL REPRESENTATION OF GOVERNMENT OF GUAM

Dear Mr. Thompson:

Congratulations on your recent selection. I anticipate that you are already being faced with legal issues requiring the assistance of this Office.

As the "Chief Legal Officer of the Government of Guam" under the Organic of Guam (48 U.S.C. § 1421g(d)(1)), the undersigned is in the process of preparing memorandums of understanding for yours, and others, review which will provide your Office with our legal services. In addition to exercising the undersigned's right and obligation to the government of Guam to provide it legal services, we anticipate that our joint efforts will save the government millions of dollars compared to prior Administrations.

This Office is informed that there may be efforts to retain private counsel by certain government departments and agencies. *However*, the undersigned has *not* reviewed nor approved the involvement of any private attorneys to represent your Office, which is an instrumentality of the government of Guam, nor approved the expenditure of government funds to be used towards this end, which is required by the Guam Procurement Law.



According to the Guam Procurement Law, 5 G.C.A. § 5121(b), in addition to the Organic Act of Guam and the Guam Rules of Professional Conduct for Lawyers (7 G.C.A. Appendix F), *supra*, the undersigned's approval is required *prior* to any private attorney being retained to represent the government of Guam. A copy of the relevant portion of the Guam Procurement Law is attached hereto. Moreover, the government of Guam is the undersigned's client and private counsels cannot communicate with the government of Guam without this Office's approval once this issue has been raised.

We are presently evaluating the extent that our Office will provide legal services to the various government of Guam instrumentalities, including your own. We are also ascertaining the involvement of the government of Guam in local and Federal lawsuits.

Since we wish to work cooperatively with your Office, the undersigned requests that you please call me (476-0296) to properly execute a memorandum of understanding to begin our relationship. Otherwise, you may have your staff speak directly with Deputy Attorney General Joseph Guthrie at 475-3324 to work out the particulars.

*Thank you* for your attention to these matters.

Sincerely,

**Douglas B. Moylan**

cc:     Felix P. Camacho, *Maga'lahen Guåhan*
Attachments (1)

ta' n/Title
J S1 r. 5, Sec. 5121, Authority to Contract for Certain Services and Approval of
ntracts.

671 5 G.C.A. § 5121

# GUAM CODE ANNOTATED
## TITLE 5. GOVERNMENT OPERATIONS
## CHAPTER 5. GUAM PROCUREMENT LAW
## ARTICLE 2. PROCUREMENT ORGANIZATION
## PART C. ORGANIZATION OF PUBLIC PROCUREMENT.

*Current through P.L. 26-72 (2001)*

---

## 5121. Authority to Contract for Certain Services and Approval of Contracts.

(a) General Authority. For the purpose of procuring the services of accountants, physicians, lawyers, dentists and other ofessionals, any governmental body of this Territory may act as a purchasing agency and contract on its own behalf for such rvices, subject to this Chapter and regulations promulgated by the Policy Office, but this Subsection shall not authorize the ocuring of such services where any given governmental body is otherwise prohibited from procuring such services.

) Approval of Contracts for Legal Services. No contract for the services of legal counsel in the Executive Branch shall be ecu without the approval of the Attorney General. Nothing in this Section or Chapter shall preclude the Attorney General or his signee from participating in negotiations for any contract upon the request of the government officer or agency primarily sponsible for such negotiations.

(c) Approval of Contracts Generally. The Chief Procurement Officer, or his designee, or a procurement officer of an agency thorized to procure the services or supplies in question, as stated in the Rules promulgated by the Policy Office, shall execute all ntracts for the government of Guam. The Chief Procurement Officer may approve standard form contracts or purchase orders and ce such approval of the standard form is given, contracts or purchase orders made on such form may be executed without the rther approval of the Chief Procurement Officer unless he has reserved such power of approval pursuant to the applicable rules omulgated by the Policy Office.

(d) Approval of Contracts by Department of Revenue and Taxation. Notwithstanding any other provision of law, the Director the Department of Revenue and Taxation or his designee shall have exclusive authority to approve and execute all contracts for the ocurement of supplies, license plates, safety decals, tax forms, tax booklets, and printing services for the department.

URCE: GC § 6954.7. MPC § 2-302 modified. GC § 6107. Subsection (d) added by P.L. 18-15:X:43.

<General Materials (GM) - References, Annotations, or Tables>

### *1672 NOTES, REFERENCES, AND ANNOTATIONS

COMMENT: Subsection (a) recognizes that the procurement of the services of professionals usually requires extended analysis by the ocuring department, and procurement is needed for the specific purposes of the department. However, the final clause is added by the Committee on General ver ntal Operations to make sure that this Subsection does not authorize the use of, for instance, legal services, where other law, i.e., that pertaining to the tom Jeneral, does not authorize an entity to use its own legal counsel.

Subsection (b) recognizes the general primacy of the Attorney General over all legal matters of the Government of Guam. Other laws provide

Copyright (c) West Group 2002 No claim to original U.S. Govt. works



A.B. WON PAT
*ATURIDAT PUETTON BATKON AIREN GUAHAN ENTENASIONAT*
**GUAM INTERNATIONAL AIRPORT AUTHORITY**

[REDACTED
AND SUBMITTED
WITHOUT
ATTACHMENT]

February 13, 2003

## VIA HAND DELIVERY

The Honorable Douglas B. Moylan
Attorney General of Guam
OFFICE OF THE ATTORNEY GENERAL
120 West O'Brien Drive
Suite 2-200E, Guam Judicial Center
Hagåtña, Guam 96910

> **Re:** **Black Construction Corporation v. The Government of Guam, *et al.*** 
> **Superior Court of Guam, Civil Case No. CV1075-02**
>
> **International Bridge Corporation/Nippon Hodo Co., Ltd.**
> **v. Government of Guam, *et al.***
> **Superior Court of Guam, Civil Case No. CV1550-02**

Dear Mr. Moylan:

Guam International Airport Authority ("GIAA") is currently a defendant in two consolidated civil actions which are identified above. As of this date, counsel of record in these civil actions for GIAA is the law firm of Brooks Lynch & Tydingco ("Brooks Firm"). However, the services of that law firm have been terminated, and it is my understanding that the professional services agreement between that law firm and GIAA was never approved by the Attorney General of Guam pursuant to Title 5 Guam Code Annotated Section 5121. For these reasons, GIAA no longer wishes to use the Brooks Firm as its counsel in these civil actions.

GIAA has the statutory authority to retain private counsel to represent it in these civil actions. 12 G.C.A. § 1108. Guam law provides that, "those branches, department or agencies which are authorized to employ their own legal counsel may use them **instead** of the Attorney General." 5 G.C.A. § 30109(c) (emphasis added). The Comment of the Compiler of Laws makes the following statements regarding this statutory provision:

Street Add.: 355 Chalan Pasaheru, Tamuning GU 96911   Mailing Add.: P.O. Box 8770, Tamuning, Guam 96931   Tel: (671) 646-0300   Fax: (671) 646-8823   www.airport.guam.net

   

The Honorable Douglas B. Moylan
February 13, 2003
Page 2

Subsection (c) has been amended by P.L. 18-04:5, to conform
to the laws which give to specific agencies the authority to hire
their own lawyers, **who may undertake litigation without the
supervision of the Attorney General**.  Such entities include
the University of Guam, GEDA, the Airport Authority, GPA,
GTA, the Civil Service Commission, and the Guam Memorial
Hospital Authority.  These authorizations are contained within
the laws establishing each of the above entities.

5 G.C.A. § 30109, Comment of Compiler of Laws (emphasis added).

GIAA is in the process of issuing a Request of Proposal so that it can retain private
counsel for GIAA.  In the meantime, it is very important that GIAA promptly resolve the civil
actions referred to above.  These civil actions involve the construction of a parallel taxiway at
the airport.  All of these projects are being financed with federal grants the existence of which
is being jeopardized by the inability to complete construction of the parallel taxiway.  For these
reasons, GIAA respectfully requests the assistance of your office in the two civil actions until
such time as GIAA can complete the procurement process and retain private counsel.

The two civil actions that have resulted in a stay of construction of the parallel taxiway
involve bid disputes with International Bridge Corporation ("IBC") and Black Construction
Corporation ("BCC").



The Honorable Douglas B. Moylan
February 13, 2003
Page 3


        Please let me know immediately if your office can assist us in this matter.  GIAA has
until February 23, 2003, to respond to an At-Issue Memorandum filed by BCC.  A status
conference has been scheduled for March 14, 2003, at 11:00 a.m.  I look forward to working
with you on this matter.


                                        Sincerely,



                                        WILLIAM R. THOMPSON
                                        Executive Manager

Enclosure

cc: Mr. Frank F. Blas, Acting Board Chairman,
    Guam International Airport Authority

LAW OFFICES

# MAIR, MAIR, SPADE & THOMPSON

A PROFESSIONAL CORPORATION

SUITE 807, GCIC BUILDING
414 WEST SOLEDAD AVENUE
HAGÅTÑA, GUAM 96910

TELEPHONE (671) 472-2089/90
FACSIMILE (671) 477-5206

## U R G E N T

March 10, 2003

**VIA FACSIMILE ONLY: 472-2493**

J. Basil O'Mallan, III, Esq.
Assistant Attorney General of Guam
OFFICE OF THE ATTORNEY GENERAL
120 West O'Brien Drive
Suite 2-200E, Guam Judicial Center
Hagåtña, Guam 96910

> **Re:** **The Attorney General of Guam v. William R. Thompson, in his official**
> **capacity as Executive Manager of Guam Airport Authority**
> **District Court of Guam, Civil Action No. 03-00008**
>
> **A.B. Won Pat Guam International Airport Authority, by and through its**
> **Board of Directors v. Douglas B. Moylan, Attorney General of Guam**
> **Superior Court of Guam, Special Proceedings Case No. SP0055-03**

Dear Basil:

The A.B. Won Pat Guam International Airport Authority ("GIAA") has requested that this firm represent it in its disputes with the Attorney General of Guam. The purpose of this letter is to point out a present and actual conflict of interest disabling the Attorney General's Office from representing GIAA in any matter and to request that GIAA be permitted to retain independent counsel of its choice pending resolution of the disputes between GIAA and the Attorney General.

On Monday, March 3, 2003, the Attorney General's Office filed suit against Mr. William Thompson, the Executive Manager of the GIAA in the U.S. District Court of Guam. Although the nominal defendant in this suit is Mr. Thompson, the Attorney General's Office is clearly seeking injunctive relief in this case directly against GIAA.

# EXHIBIT D

SAIPAN OFFICE: SUITE 4-B HORIGUCHI BUILDING, POST OFFICE BOX 7917, S.V.R.B., SAIPAN MP 96950
TELEPHONE (670) 233-2089    FACSIMILE (670) 233-2089

Case 1:03-cv-00008    Document 35    Filed 03/17/2003    Page 36 of 49

J. Basil O'Mallan, III, Esq.
March 10, 2003
Page 2

For instance, in the Motion for Preliminary Injunction, the Attorney General's Office asks for a preliminary injunction as follows:

> For the above reasons, the Attorney General of Guam respectfully requests that the Court issue a preliminary injunction pending trial as follows:
>
> 1.     enjoining the award of any legal services agreements by the **Guam International Airport Authority** for legal services, other than a legal services agreement to represent Defendant in this civil action; and
>
> 2.     the Attorney General of Guam is hereby authorized to represent the **Guam International Airport Authority** in all legal matters unrelated to this Action.[1] (Emphasis added).

There is also a case pending between GIAA and the Attorney General in the Superior Court of Guam.[2] As a consequence of the cases pending in U.S. District Court and the Superior Court of Guam, it is obvious that conflicts of interest exist between the Office of the Attorney General and GIAA.

Despite these conflicts, the Office of the Attorney General appears to maintain that it may pursue injunctive relief against GIAA, and, at the same time, represent GIAA in unrelated matters.[3]

---

[1] Attorney General of Guam's Motion for Preliminary Injunction, 3/05/03, at 20 (emphasis added).

[2] GIAA vs. Attorney General of Guam, Petition for Writ of Mandamus, Special Proceeding No. 55-03, filed March 7, 2003.

[3] One such legal matter would be the bid disputes in two different civil proceedings in the Superior Court of Guam which have been consolidated. Black Construction Corporation v. The Government of Guam, et al., Superior Court of Guam, Civil Case No. CV1075-02 and International Bridge Corporation/Nippon Hodo Co., Ltd. v. Government of Guam, et al., Superior Court of Guam, Civil Case No. CV1550-02.

Please be advised that GIAA considers this type of professional conduct to be blatantly unethical. In the event that this dispute cannot be promptly resolved in the manner discussed herein, GIAA will be compelled to pursue whatever remedies it may have for these ethical violations.

**I.     In The Event This Dispute Cannot Be Resolved, GIAA Has The Right To Bring This Issue To The Attention Of The Guam Bar Ethics Committee.**

Whether an attorney licensed to practice law in Guam may pursue a claim against the interests of his client, and at the same time represent the client in unrelated matters, is a question that requires interpretation of the Guam Rules of Professional Conduct for Lawyers relating to conflicts of interest. This question must be resolved by the Guam Bar Ethics Committee and the Guam Supreme Court, not the District Court of Guam.

In <u>Middlesex County Ethics Committee v. Garden, etc.</u>,[4] the United States Supreme Court ruled that States traditionally exercise control over the professional conduct of attorneys and that the federal court system should abstain from interfering with this process:

> The State of New Jersey has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses. States traditionally have exercised extensive control over the professional conduct of attorneys.[5]

The federal courts have refused to "deprive" the state courts of the right to "construe" their professional rules of conduct:

> Under such circumstances, it would 'infringe on the sovereign immunity of the states' if federal courts were to 'deprive the state courts of the opportunity to construe their own statues, using the interpretative tools, presumptions, and standards they deem proper.'

---

[4] <u>Middlesex County Ethics Committee v. Garden, etc.</u>, 102 S.Ct. 2515, 2522 (1982).

[5] Id. at 2522.

> This concern takes on added significance where, as here, we are faced
> not with a state statute, but instead with rules, such as the Canons of
> Judicial Ethics . . . .[6]

The jurisdiction of the Guam Supreme Court over ethical matters relating to Guam attorneys is set forth in the Preamble of the Supreme Court of Guam Rules for the Discipline of Attorneys, which states:

> In the **exercise of the Supreme Court's jurisdiction**, pursuant to 7
> GCA Section 9101, to disbar, suspend or otherwise discipline
> members of the Bar of Guam for misconduct, the Supreme Court
> adopts and promulgates the following rules which shall govern
> disciplinary proceedings against members of the Bar of Guam and all
> attorneys within this court's jurisdiction. (Emphasis added).

Rule 1 of the Rules for the Discipline of Attorneys states:

> Any attorney regularly admitted to practice law in this territory, any
> attorney admitted to practice by a court of this territory or **any**
> **individual admitted to practice as counsel for government**
> **agencies**, or otherwise; **is subject to the disciplinary jurisdiction of**
> **the Supreme Court and the Ethics Committee** as established
> pursuant to this Court's adoption, in April, 1996, of the existing
> Ethics Committee Rules as reflected in Appendix G to Title 7 of the
> Guam Code Annotated and as expressly continued in the Rules
> below. (Emphasis added).

---

[6] Pittman v. Cole, 267 F.3d 1269, 1290 (11th Cir. 2001). *See also*, Lav v. City of Kingsports, 454 F.2d 345, 347 (6th Cir. 1972)("If the State of Tennessee and the City of Kingsport had authority to adopt the 'conflict of interest' provisions set forth in the cited States and Ordinance then no substantial federal question is present.")

II.   **It Is Unethical For The Attorney General's Office To Pursue Injunctions Against GIAA And Attempt To Represent GIAA In Unrelated Matters.**

Rule 1.7 is the conflict of interest rule which is implicated when an attorney tries to pursue a claim against the interests of his client, and continues to represent the client in unrelated matters. This Rule provides that a "lawyer (Office of the Attorney General) shall not represent a client (GIAA) if the representation of that client (GIAA) will be directly adverse to another client (Attorney General), unless . . . (e)ach client (the Attorney General and GIAA) consents after full disclosure." Rule 1.7, and the other Rules of Professional Conduct, are applicable to government attorneys:

> It is well settled that in the control of litigation, the Attorney General has the duty to conform her conduct to that prescribed by the rules of professional ethics. As a lawyer and an officer of the courts of this State, the Attorney General is subject to the rules of this Court (the Hawaii Supreme Court) governing the practice of law and the conduct of lawyers, which have the force and effect of law.[7]

Attorneys are not permitted to pursue claims against a client in one matter, and then represent the client in unrelated matters:

> This distinction between former representation and concurrent representation, and the distinct concerns at issue, are well recognized: 'In contrast to representation undertaken adverse to a former client, representation adverse to a present client must be measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients.' (Citations omitted). If this duty of undivided loyalty is violated,

---

[7] Chun et al. v. Board of Trustees of the Employees Retirement System of the State of Hawaii, et al., 952 P.2d 1215 (1998).

> 'public confidence in the legal profession and the judicial process' is
> undermined.[8]

Courts have disqualified government attorneys from representing a government client when the government attorneys are pursuing claims against the client. In <u>Civil Service Commission v. Superior Court</u>,[9] the California appellate court disqualified government attorneys from representing interests adverse to a government agency when the government attorneys had given legal advice to the agency on the same subject. The Court, however, went on to explain that the government attorneys would nonetheless be disqualified on additional grounds because of their concurrent representation of the agency on unrelated matters:

> Our statement that there may be an independent basis to disqualify the
> County Counsel is grounded on the general rule that an attorney may
> simply not undertake to represent an interest adverse to those of a
> current client without the client's consent. (Citations omitted). This
> record establishes the relationship between Country Counsel and the
> Commission is an ongoing one with respect to matter other than the
> one at issue here. The principle precluding representing an interest
> adverse to those of a current client is based no on any concern with
> the confidential relationship between attorneys and client but rather
> on the need to assure the attorney's undivided loyalty and
> commitment to the client.[10]

Admittedly, the Preamble of the Guam Rules of Professional Conduct for Lawyers states that government attorneys "may be authorized to represent several government agencies in intra-

---

[8] <u>Truck Insurance Company v. Fireman's Fund Insurance</u>, 8 Cal. Rptr. 228, 232 (Cal. App. 1 Dist. 1992) *See also* <u>Jeffrey v. Pounds</u>, 136 Cal. Rptr. 373 (1977)(Law firm prohibited from representing a Client A in a person injury matter, and the client's wife in an unrelated divorce claim against Client A.)

[9] <u>Civil Service Commission v. Superior Court</u>, 209 Cal. Rptr. 159 (Cal. App. 4 Dist. 19894).

[10] Id. 209 Cal. Rptr. at 164-165, f.n. 1.

governmental legal controversies in circumstances where a private lawyer could not represent multiple private clients." This situation, however, does not involve the representation of multiple government agencies with conflicting interests. It involves the Attorney General pursuing declaratory and injunctive relief against a government agency, and, at the same time, undertaking to represent the agency in unrelated matters. Nothing in the Preamble discussed above permits an Attorney General's Office to engage in such conduct.

It is not necessary to speculate on how a Guam court might interpret Rule 1.7 as it relates to the Attorney General's Office and the representation of a government agency on unrelated matters when a conflict of interest exists. In <u>Tarantino v. Board of Regents University of Guam</u>, the court stated:

> As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client without the client's consent. GRCP Rule 1.7, cmt. 3. Thus, a lawyer ordinarily may not act as advocate against the person the lawyer represents **in some other matter even if it is wholly unrelated**.[11]

Moreover, as a practical matter, the Attorney General's Office in Guam is not large enough to permit a "Chinese wall" to work effectively so as to screen attorneys from representing GIAA from those who are pursuing injunctions against GIAA. The Honorable Katherine A. Maraman has expressly rejected the contention that the Attorney General's Office in Guam is capable of maintaining an effective "Chinese wall" when a conflict exists:

> Such is not the case in Guam where there exists an extremely small staff and one office for the Office of the Attorney General of Guam.[12]

---

[11] <u>Tarantino v. Board of Regents of the University of Guam</u>, Civil Case No. CV1455-00, Decision and Order, 12/5/00 at p. 8.

[12] <u>Tarantino v. Board of Regents of the University of Guam</u>, Civil Case No. CV1455-00, Decision and Order, 12/5/00 at pp. 12-13.

Finally, a "Chinese wall" in the context of the cases discussed herein is particularly ineffectual inasmuch as you are representing the Attorney General seeking to get an injunction against GIAA in U.S. District Court, while at the same time purporting to give advice to GIAA in certain bid dispute cases.

## CONCLUSION

GIAA takes the position that the Attorney General's Office has a present and actual conflict of interest with GIAA which prohibits the Attorney General's Office from representing GIAA in any matters, unrelated or not. In order to avoid this conflict of interest, and at the same time preserve the rights of GIAA and the Attorney General's Office, GIAA requests that it be allowed to retain independent counsel of its choosing in all matters until such time as GIAA and the Attorney General's Office finally resolve the dispute over GIAA's ability to retain independent counsel. This request is without prejudice to the right of the parties to assert any positions they deem appropriate in any litigation relating to the ability of GIAA to retain independent counsel.

GIAA is hopeful that it can enter into the interim arrangement discussed herein relating to independent counsel. However, in the event that this matter cannot be amicably resolved, GIAA reserves its right to pursue any and all ethical and legal remedies at its disposal. A hearing is scheduled in the bid dispute cases for March 14, 2003. **GIAA, therefore, wishes to be advised of your position in this matter by noon on March 12, 2003.** If we do not here from you by that date, we will assume that the Attorney General and you intend to persist in your position that you may continue to represent GIAA matters "unrelated" to the dispute in the U.S. District Court, while at the same time seeking an injunction against GIAA in that case. GIAA will then take whatever steps it deems necessary to protect its interests.

Best regards,

DAVID A. MAIR

DAM: cmj
cc:   Mr. Frank F. Blas, Interim Chairman, Board of Directors
        Mr. William R. Thompson, Interim Executive Manager,
          A.B.Won Pat Guam International Airport Authority
L03727.DAM



**Office of the Attorney General**
**Douglas B. Moylan**
Attorney General of Guam
**Civil Division**
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 • USA
(671) 475-3324 • (671) 472-2493 (Fax)
www.guamattorneygeneral.com • law@mail.justice.gov.gu

Attorneys for the Government of Guam

# UNITED STATES DISTRICT COURT
# DISTRICT OF GUAM

| | |
|---|---|
| THE ATTORNEY GENERAL OF GUAM,   )<br>  )<br>          Plaintiff,   )<br>  )<br>      vs.   )<br>  )<br>WILLIAM R. THOMPSON, in his official   )<br>capacity as Executive Manager of Guam   )<br>Airport Authority,   )<br>  )<br>          Defendant.   )<br>  ) | Civil Case No. 03-00008<br><br><br><br>**DECLARATION** |

I, **DOUGLAS B. MOYLAN**, declare:

1.    I am plaintiff in the above entitled action, and I make this declaration in support of my Motion for Preliminary Injunction filed pursuant to Fed R Civ P Rule 65(a).

2.    I have personal knowledge of the facts stated herein and, if called as a witness, I could testify competently thereto.

3.    On November 5, 2002 I was elected as Guam's first elected Attorney General.

4. On January 6, 2003 I was inaugurated as Guam's first elected Attorney General. My term as the Attorney General of Guam is for four (4) years.

5. On January 28, 2003 I transmitted a letter to Defendant herein proposing that the Office of the Attorney General provide legal services to the Guam International Airport Authority ("GIAA"). Said letter is attached and incorporated herein as **Exhibit 1**.

6. On or about February 13, 2003 I received a letter from Defendant notifying me that Defendant intended to retain private counsel to represent GIAA (Exhibit 1 of Complaint).

7. On or about February 18, 2003 Defendant caused to be advertised notice in the Pacific Daily News newspaper of GIAA's intention to retain private legal counsel (Exhibit 2 of Complaint).

8. The newspaper solicitation seeks that private legal counsel proposals be received by February 24, 2003.

9. On March 4, 2003, the undersigned's Office received the attached contract for legal services by the Guam International Airport Authority seeking the undersigned's signature. Said contract is attached and incorporated herein as **Exhibit 2**.

I declare, under penalty of perjury, this 5th day of March, 2003 that the foregoing is true and correct to the best of my knowledge.

_____
DOUGLAS B. MOYLAN



## Office of the Attorney General

Douglas B. Moylan
Attorney General of Guam
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910 ● USA
(671) 475-3324 ● (671) 472-2493 (Fax)
www.guamattorneygeneral.com ● law@mail.justice.gov.gu

March 13, 2003

David A. Mair, Esq.
Mair, Mair, Spade & Thompson, P.C.
Suite 807, GCIC Building
414 W. Soledad Ave.
Hagatna, Guam 96910

VIA FACSIMILE NO.: 477-5206

Re:  The Attorney General of Guam v. William R. Thompson, in his official capacity as Executive Manager of Guam Airport Authority, District Court of Guam Civil Case No. 03-00008

A.B. WonPat Guam International Airport Authority, by and through its Board of Directors v. Douglas B. Moylan, Attorney General of Guam, Superior Court of Guam Special Proceedings Case No. SP0055-03

Dear David,

This is to inform you that this office has agreed to allow your representation of the Guam International Airport Authority pursuant to the terms in your letter dated March 12, 2003. These terms are:

1.  GIAA will be permitted to retain interim independent counsel of its choosing;

2.  The agreement of the Attorney General for GIAA to use interim independent counsel will expire when the cases currently pending in the Superior Court of Guam and the District Court of Guam, which are identified above, are finally resolved; and

# EXHIBIT F

**Letter to David Mair**
**March 13, 2003**

3.  The use by GIAA of interim independent counsel will not be considered a waiver
    by the Attorney General or GIAA of any arguments in any form or at any time
    relating to the dispute about the retention of independent counsel.

Sincerely,

J. Basil O'Mallan III
Assistant Attorney General