MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
Attorneys at Law
Suite 807, GCIC Building
414 West Soledad Avenue
Hagåtña, Guam 96910
Telephone: (671) 472-2089/2090

FILED
DISTRICT COURT OF GUAM
MAR 1 9 2003
MARY L. M. MORAN
CLERK OF COURT
32

Attorneys for Defendant William R. Thompson,
 in his official capacity as Executive Manager of the
 A.B. Won Pat Guam International Airport Authority

## IN THE DISTRICT COURT OF GUAM

### TERRITORY OF GUAM

| | |
|---|---|
| THE ATTORNEY GENERAL OF GUAM, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM R. THOMPSON, in his official capacity as Executive Manager of the Guam Airport Authority, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL ACTION FILE NO. 03-00008

---

# WILLIAM R. THOMPSON'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

---

# ORIGINAL

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LEGAL DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    THE POWERS OF A CONSTITUTIONALLY ELECTED
      ATTORNEY GENERAL MAY BE LIMITED BY THE
      LEGISLATURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   A LEGISLATURE MAY PERMIT GOVERNMENT
      AGENCIES TO RETAIN INDEPENDENT COUNSEL . . . . . . . . . . . . . . 3

III.  THE ORGANIC ACT DOES NOT PREVENT GUAM'S
      LEGISLATURE FROM ENACTING LEGISLATION
      PERMITTING GOVERNMENT AGENCIES TO RETAIN
      INDEPENDENT COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      A.    Federal Preemption Requires A "Clear and Manifest"
            Intention by Congress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      B.    The Express Language of the Organic Act Does Not
            Require Federal Preemption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      C.    The Legislative History of the 1998 Amendment to
            the Organic Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            (1) References To Independent Counsel For Government
            Agencies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            (2) The Discussions Of Political Interference In The
            1998 Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      D.    The Cases Law Relied Upon By The Attorney General . . . . . . . . 14

i

IV.    THE STANDARD FOR A PRELIMINARY INJUNCTION . . . . . . . . . . 17

       A.    High Probability of Success on the Merit  . . . . . . . . . . . . . . . . . . . 17

       B.    Immediate and Irreparable Harm . . . . . . . . . . . . . . . . . . . . . . . . . 18

       C.    Government Agencies Will Be Harmed If
           Injunction Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

       D.    Protecting the Public Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Case 1:03-cv-00008     Document 37     Filed 03/19/2003     Page 3 of 26

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

Board of Public Utility Commissioners of New Jersey v. Lehigh Valley,
  149 A. 263 (N.J. 1930) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cipollone v. Liggett Group, Inc., 505 U.S. 504
  112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

City of Columbus v. Ours Garage and Wrecker Service, 536 U.S. 424,
  122 S.Ct. 2226, 153 L.Ed.2d 430 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

English v. Gen. Elect. Co., 496 U.S. 72,
  110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Environmental Protection Agency v. Pollution Control Board,
  372 N.E.2d 50 (Ill. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

Fergus v. Russel, 270 Ill. 304,
  110 N.E. 130 (1915) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fuchs v. Bidwill, 65 Ill. 2d 503,
  359 N.E.2d 158 (Ill. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fund Manager, Public Safety Retirement System v. Superior
  Court of the State of Arizona, 731 P.2d 620 (Ariz. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . 4

Hansen v. Utah State Retirement Board, 652 P.2d 1332 (Utah 1982) . . . . . . . . . . . . . . . . 3

Johnson v. Commonwealth, et al., 165 S.W.2d 820,
  (Ky. 1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Maryland v. Louisiana, 451 U.S. 725,
  68 L.Ed.2d 576, 101 S.Ct. 2114 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

New York State Dep't of Social Services v. Dublino, 413 U.S. 405,
  93 S.Ct. 2507, 37 L.Ed.2d 688 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

People v. Santa Clara Lumber Co., 110 N.Y.Supp. 280 (N.Y. 1908) . . . . . . . . . . . . . . . . 5

People ex rel. Scott v. Briceland, 65 Ill. 2d 485,
  359 N.E.2d 149 (Ill. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

iii

**CASES**                                                      **PAGE(S)**

Rice v. Santa Fe Elevator Corp., 331 U.S. 218,
   91 L.Ed. 1447, 67 S.Ct. 1146 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Saint v. Allen, 134 So.2d 246 (La. 1931) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Schwartz v. Texas, 344 U.S. 199 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Shute v. Frohmiller, 90 P.2d 998 (Ariz. 1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

State Compensation Insurance Fund v. Riley,
   69 P.2d 985 (Cal. 1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 19-20

State of Louisiana v. Louisiana Board of Highways,
   275 So.2d 207 (La. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

State of Missouri v. Missouri Public Service Commission, et al.,
   175 S.W.2d 857 (Mo. 1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

State of North Dakota v. Erickson, 7 N.W.2d 865 (N.D. 1943) . . . . . . . . . . . . . . . . . . . . 2

State of Oklahoma, et al. v. Georgia-Pacific Corporation,
   663 P.2d 718 (Okla. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Tarantino v. Board of Regents of the University of Guam, Civil Case No. CV1455-00,
   *Decision and Order* at pp. 9-10 (Super. Ct. Guam Dec. 5, 2000) . . . . . . . . . . . . . . . . . . . 3

Wade et al. v. United States District Court,
   392 F.Supp. 229 (D.C.N. Miss. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

Wisconsin Public Intervenor v. Mortier, 501 U.S. 597,
   111 S.Ct. 2476, 115 L.Ed.2d 532 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

**STATUTES**                                                   **PAGE(S)**

48 U.S.C. § 1421g(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

48 U.S.C. § 1421g(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

48 U.S.C. § 1423a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

5 G.C.A. § 5121(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

iv

**STATUTES**                                                                 **PAGE(S)**

5 G.C.A. § 30109(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5 G.C.A. § 30109, Comment of the Compiler of Laws . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17

12 G.C.A. § 1108(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

12 G.C.A. § 1108(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**RULES & REGULATIONS**                                                      **PAGE(S)**

2 G.A.R. § 2113 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18

**OTHERS**                                                                   **PAGE(S)**

15 ILCS 205/4 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

H. Rpt. No. 105-742 (Sept. 24, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

v

## **INTRODUCTION**

The Attorney General cannot show a likelihood of prevailing on the merits. The majority rule in the United States is that the powers of an elected Attorney General can be defined by a legislature. For a variety of public policy reasons, legislatures in numerous states have permitted government agencies to retain independent counsel, and these type statutes have been repeatedly upheld.

In addition to arguing a point of law that is at variance with the majority rule, the Attorney General has the added burden of overcoming the presumption against federal preemption. To establish federal preemption, the Attorney General must prove that the plain language of the Organic Act "clearly and manifestly" evidences the intent of the U.S. Congress by "explicit statutory language" to prohibit Guam's Legislature from allowing government agencies to retain independent counsel. The plain language of the Organic Act simply does not support this contention.

In the absence of "explicit statutory language" to support his preemption argument, the Attorney General has instead based his argument upon the legislative history of the 1998 Amendment. Sadly, in so doing, the Attorney General--who should act as a role model for other attorneys in Guam--has intentionally misrepresented the legislative history by deleting critical language from a quotation. When the deleted language, which the Attorney General tried to conceal, is taken into consideration, it is apparent beyond doubt that the 1998 Amendment was never intended to prohibit Guam's Legislature from allowing the government agencies to retain independent counsel.[1]

---

[1] In an Order dated March 11, 2003, the Court noted that "Plaintiff's Motion for Preliminary Injunction will be addressed after the Court has resolved the issues raised by the Defendant's motions, if need be."

1

## FACTUAL BACKGROUND

Defendant hereby adopts the "Factual Background" in Petitioner's Memorandum in Support of Writ of Mandamus attached to the Declaration of David A. Mair, filed March 10, 2003, as Exhibit B.

## LEGAL DISCUSSION

### I. THE POWERS OF A CONSTITUTIONALLY ELECTED ATTORNEY GENERAL MAY BE LIMITED BY THE LEGISLATURE

Courts in the United States have consistently held that the powers of constitutionally elected Attorney Generals may be limited by legislative enactment:

> In conclusion, we are of the opinion that, while the Attorney General possesses all power and authority appertaining to the office under common law and naturally and traditionally belonging to it, nevertheless **the General Assembly may withdraw those powers and assign them to others** or may authorize the employment of other counsel for the department and officers of the state to perform them.[2]

The fact that an Attorney General's position is authorized by a state constitution does not prohibit a legislature from prescribing his duties:

> [We] are clearly of the view that **the mere naming of the attorney general in the constitution of this state does not amount to an implied restriction on**

---

However, the Court did not stay the briefing schedule for the motion for preliminary injunction. Therefore, Defendant is filing his opposition brief in a timely manner pursuant to LR 7.1(d). In the event it is ever necessary to reach the merits of the motion for preliminary injunction, Defendant respectfully requests oral argument.

[2] Johnson v. Commonwealth, et al., 165 S.W. 2d 820, 826 (Ky. 1942) ("The Legislature may not only add duties but may lessen or limit common law duties."); *see also* State of Missouri v. Missouri Public Service Commission et al., 175 S.W. 2d 857, 861 (Mo. 1943) ("On the first question, there can be no doubt that the Constitution does not prohibit the General Assembly from limiting the common law powers of the Attorney General."); and, State of North Dakota v. Erickson, 7 N.W.2d 865, 868 (N.D. 1943)("The attorney general is a constitutional officer only in so far as the establishment of the office is concerned . . . Authority that the legislature may at one time prescribe, it may later take away and vest elsewhere. I have no doubt that **the legislature by express restriction may curtail powers normally exercised by the attorney general** by vesting such powers as it may see fit in other officials or such attorneys as it may specifically authorize to act.").

2

**the authority of the legislature** in prescribing his duties. It is true that in this state, as in others, that the office of the attorney general, together with the other executive offices created by the constitution, is embedded in that instrument, but it is equally true that the authority of the legislature to prescribe what the duties and powers of these occupying these offices shall be is embedded there also, and, this being the case, no common law powers or duties can attach to that office but only those prescribed by statute.[3]

In <u>Tarantino v. Board of Regents of the University of Guam</u>, the Superior Court of Guam interpreted the 1998 amendment to the Organic Act, and elected to follow the majority view, which is that the powers of the Attorney General may be limited by statute:

> The statute prescribing the common law powers of the Attorney General explicitly states that '[t]he Attorney General shall have . . . those common law powers . . . **unless expressly limited by any law of Guam to the contrary**.' 5 G.C.A. § 30103 (emphasis supplied) . . . . A review of the 1998 Amendments to the Organic Act and the Organic Act itself grants no enhancement to the powers of the newly created Chief Legal Officer of Guam.[4]

## II.    A LEGISLATURE MAY PERMIT GOVERNMENT AGENCIES TO RETAIN INDEPENDENT COUNSEL

In <u>Hansen v. Utah State Retirement Board</u>,[5] the Utah Attorney General argued that he was constitutionally authorized to act as "legal adviser" to "state officers," and, as a consequence, state governmental agencies (such as the Utah State Retirement Board; Utah

---

[3] <u>Shute v. Frohmiller</u>, 90 P. 2d 998, 1003 (Ariz. 1939), *overruled on other grounds* at 263 P.2d 362.; *See also* <u>State of Oklahoma, et al. v. Georgia-Pacific Corporation</u>, 663 P.2d 718, 722-723 (Okla. 1982), where an Attorney General argued that because he was elected and designated "Chief Law Officer," he had the common law authority to file actions without the approval of the Governor or the Legislature notwithstanding a statute requiring that he get approval before doing so. The Supreme Court of Oklahoma disagreed and ruled: "We fail to see that the legislative investiture of the mantle of 'Chief Law Officer' alone conferred upon the office a stature which it did not already have . . ."

[4] <u>Tarantino v. Board of Regents of the University of Guam</u>, Civil Case No. CV1455-00, *Decision and Order* at pp. 9-10 (Super. Ct. Guam Dec. 5, 2000). This Decision was subsequently vacated by stipulation of the parties because Dr. Peter Lee had withdrawn his nomination. However, the legal reasoning in the Decision remains valid.

[5] <u>Hansen v. Utah State Retirement Board</u>, 652 P. 2d 1332 (Utah 1982).

3

State Insurance Fund; and the University of Utah) were prohibited from retaining independent counsel. The Utah Supreme Court was unpersuaded: "As to each defendant, the Legislature has conferred specific statutory authority authorizing the employment of independent counsel . . . Thus, the authority for each defendant to hire independent counsel has a clear statutory foundation."[6]

A similar result was reached in <u>Fund Manager, Public Safety Retirement System v. Superior Court of the State of Arizona</u>,[7] where the Arizona Attorney General insisted that any private counsel retained by the Arizona Retirement System had to submit all opinions and advice to the Attorney General for review. This demand was found to be **unauthorized and unethical**:

> The factual issue in this special action is whether the attorney general may require, as a condition to approval of the fund manager's legal representation by private counsel, the fund manager's agreement that its private counsel will submit all opinions and advice to the attorney general for review, and that the fund manager may not commence any legal action or appeal any decision without the attorney general's prior approval. We hold that the attorney general may not impose such conditions.
>
> ***
>
> Moreover, **the attorney general's interpretation of the statute would burden any private attorney or firm retained by the fund manager with a continuing ethical conflict** between his duty to hold inviolate the confidences of his client and the need to disclose such information to the attorney general in aid of the attorney general's asserted supervisory function.[8]

---

[6] *Id.* At 1340.

[7] <u>Fund Manager, Public Safety Retirement System v. Superior Court of the State of Arizona</u>, 731 P. 2d 620 (Ariz. 1986).

[8] *Id.* at 625; *See also* <u>Board of Public Utility Commissioners of New Jersey v. Lehigh Valley</u>, 149 A. 263, 264 (N.J. 1930);("On this branch of the case we conclude that <u>the powers and privileges of the Attorney General as they existed at common law, and particularly as conferred by statute, are subject to change and modification by legislative enactment</u>; and that in the matter of the board of pubic utilities <u>the Legislature has conferred on the board, and upon counsel appointed by it pursuant to the statute, the power of</u>

4

The California Supreme Court has recognized that "[t]he law is well settled that a public agency may employ special counsel to protect its rights, unless specifically prohibited from so doing by statutory or charter provision . . ."[9] On the subject of public policy behind allowing a government agency or board to select independent counsel, the California Supreme Court stated:

> There are a variety of circumstances under which the interests of the county might be neglected or wholly sacrificed, unless the Board has the authority to employ other counsel than the District Attorney. He may be incompetent, or sick, or absent from the country, or engaged in other business, or the business in hand may be of such magnitude and importance as to demand, on the part of the Board, in the exercise of such foresight and care only as business men bestow upon important matters, the employment of additional counsel. There is no reason why public as well as private interests should not be subserved by the employment of several counsel, when the exigencies of the case are such as to demand it, in the judgment of prudent men; and we are satisfied that the Legislature has not been so unwise as to render such a course impossible.[10]

## III. THE ORGANIC ACT DOES NOT PREVENT GUAM'S LEGISLATURE FROM ENACTING LEGISLATION PERMITTING GOVERNMENT AGENCIES TO RETAIN INDEPENDENT COUNSEL

Guam's Legislature, like the legislatures of most other states, has expressly permitted certain government agencies, such as GIAA, to retain independent counsel.[11] By statute, the

---

commencing and conducting litigation in which the board, in exercise of the power vested in it, is seeking to enforce its mandate."); and, People v. Santa Clara Lumber Co., 110 N.Y. Supp. 280, 281 (N.Y. 1908) ("The Attorney General is a constitutional officer, but his principal duties are from time to time defined by statute. We cannot agree with him that he alone is authorized to represent the state as attorney in bringing actions in the name of the people of the state.").

[9] State Compensation Insurance Fund v. Riley, 69 P.2d 985, 987 (Cal. 1937).

[10] Id. 69 P.2d at 988. The California Supreme Court ultimately ruled in State Compensation Insurance Fund that the civil service laws prohibited the retention of independent counsel. This finding, however, is consistent with GIAA's contention that the Legislature, not the Attorney General, decides when independent counsel may be retained.

[11] 12 G.C.A. §§ 1108(a), (d).

5

Attorney General of Guam must approve any contract for legal services.[12] However, the Attorney General is only permitted to participate in the negotiations for such a contract "**upon the request** of the government officer or agency primarily responsible for such negotiations."[13] Furthermore, the right of the Attorney General to review professional services agreements is limited to an inquiry as to "correctness of their form" and "legality" in order to confirm that the "required procedures" were followed to award the contract.[14] Under Guam law, "those branches, department or agencies which are authorized to employ their own legal counsel may use them **instead** of the Attorney General."[15]

The Attorney General argues that all of these Guam statutes must be invalidated by this Court because they are "federally preempted" by the Organic Act. The Attorney General is mistaken.

## A.     Federal Preemption Requires A "Clear and Manifest" Intention by Congress.

The United States Supreme Court has started with the assumption that the powers of the states were not to be superseded by federal law "unless that was the clear and manifest purpose of Congress."[16] The High Court holds that federal law preempts local law only in

---

[12] 5 G.C.A. § 5121(b).

[13] 5 G.C.A. § 5121(b).

[14] 2 G.A.R. § 2113.

[15] 5 G.C.A. § 30109(c) (emphasis added); The Comment of the Compiler of Laws makes the following statements regarding this statutory provision: "Subsection (c) has been amended by P.L. 18-04:5, to conform to the laws which give to specific agencies the authority to hire their own lawyers, **who may undertake litigation without the supervision of the Attorney General.** Such entities include the University of Guam, GEDA, the Airport Authority, GPA, GTA, the Civil Service Commission, and the Guam Memorial Hospital Authority. These authorizations are contained within the laws establishing each of the above entities." 5 G.C.A. § 30109, Comment of Compiler of Laws (emphasis added).

[16] Wisconsin Public Intervenor v. Mortier, 501 U.S. 597, 605, 111 S.Ct. 2476, 2481-2482, 115 L.Ed.2d

6

three limited situations: (1) where Congress "explicitly" defines the extent to which it is preempting state law; (2) where, absent "explicit statutory language," the federal scheme is so pervasive as to leave "no room for the States to supplement it"; and (3) where there is such an actual conflict that it is impossible to comply with both federal and state requirements.[17]

However, federal preemption is not automatic just because Congress enacts legislation in a field of law.[18] Indeed, the Supreme Court recognizes a presumption favoring the legitimacy of state legislation as opposed to federal preemption.[19] The Court has stated: "If Congress is authorized to act in a field, it should manifest its intention clearly . . . . The exercise of federal supremacy is not lightly to be presumed."[20] Accordingly, the Court presumes that Congress does not intend to preempt state legislation unless there is a clear indication from the language or purposes of the federal statute or regulation.[21] "Mere silence," the Court has held, "cannot suffice to establish a clear and manifest purpose to pre-empt local

---

532 (1991)("when considering pre-emption, 'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'")(*quoting* Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 91 L. Ed. 1447, 67 S. Ct. 1146 (1947). *See also*, Maryland v. Louisiana, 451 U.S. 725, 746, 68 L. Ed. 2d 576, 101 S. Ct. 2114 (1981).

[17] *See*, Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (*quoting* Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)); English v. Gen. Elect. Co., 496 U.S. 72, 78-79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990).

[18] New York State Dep't of Social Services v. Dublino, 413 U.S. 405, 422, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973) (recognizing the validity of a New York law conditioning an individual's receipt of federal Aid to Families with Dependant Children assistance upon fulfillment of additional state requirements).

[19] *Id.*

[20] *Id.* at 413 (*quoting* Schwartz v. Texas, 344 U.S. 199, 202-03 (1952)).

[21] *Id.*

7

authority."[22] Moreover, if joint compliance is possible and the state and federal purposes are similar or identical, the state action is supplementary to the federal purposes and the regulation must be sustained.[23]

## B.     The Express Language of the Organic Act Does Not Require Federal Preemption.

The language of the Organic Act so heavily relied upon by the Attorney General merely states that: "The Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam." This language does not meet any of the tests for federal preemption. There is nothing in this language or the rest of the Organic Act that "explicitly" prohibits the Guam Legislature from enacting legislation to permit government agencies to retain independent counsel. Inasmuch as the Organic Act is silent on the subject of independent counsel representing government agencies, it cannot be argued that the federal scheme is so pervasive in the area as to leave "no room for the States to supplement it." Additionally, there is no actual conflict between the Organic Act and Guam law that it is impossible to comply with both federal and state requirements.

Indeed, there is nothing at all in the plain language of the 1998 Amendments to the Organic Act that suggests that the powers of the Guam Legislature were being curtailed in relation to an elected Attorney General. If anything, Guam's Legislature undoubtedly has more power over Guam's elected Attorney General than other state legislatures have over their own elected Attorney Generals. Unlike many states, the existence of an elected Attorney

---

[22] City of Columbus v. Ours Garage and Wrecker Service, 536 U.S. 424, 440, 122 S. Ct. 2226, 2232, 153 L. Ed. 2d 430 (2002)(*quoting* Wisconsin Public Intervener v. Mortier, 111 U.S. 597, 607, 111 S.Ct. 2476, 2483, 115 L.Ed.2d 532 (1991)).

[23] *See generally* Mortier, 111 S.Ct. at 2487 (federal law implies regulatory partnership between federal, state and local governments).

8

General in Guam is not a matter of constitutional right. The U.S. Congress expressly provided by legislative enactment that the Guam Legislature could decide whether Guam should or should not have an elected Attorney General.[24] In addition, the U.S. Congress has allowed Guam's Legislature to decide upon the "procedures" by which Guam's elected Attorney General could be removed "for cause."[25] It is difficult to imagine any state legislature in the United States having greater powers over an elected Attorney General.

The fact that the 1998 Amendment to the Organic Act identifies the Attorney General as the "Chief Legal Officer of the Government of Guam" does not mean that his powers extend to distinct and independent government agencies. In Saint v. Allen,[26] the Attorney General of Louisiana filed suit against the Highway Commission to restrain it from retaining independent counsel. In that suit, the Louisiana Attorney General, much like Guam's Attorney General, argued that any statute authorizing the retention of independent counsel was in conflict with the state Constitution.

The Supreme Court of Louisiana in Saint interpreted the State Constitution and found that it only authorized the Attorney General to represent the "State," and that the Highway Commission was a distinct "agency of the State," with the power to sue or be sued, and "not the State itself."[27] For this reason, the Court found that the "duties and powers of the Attorney

---

[24] 48 U.S.C. § 1421g(2), as amended by Public Law 105-291 Section 2.

[25] 48 U.S.C. § 1421g(2), as amended by Public Law 105-291 Section 2.

[26] Saint v. Allen, 134 So.2d 246 (La. 1931).

[27] Id., 134 So. at 249.

9

General and his assistants do not, by virtue of the Constitution, save as some of those duties may be prescribed by statute, attach to the commission."[28]

This holding in <u>Saint</u> was reaffirmed by the Louisiana Supreme Court in <u>State of Louisiana v. Louisiana Board of Highways</u>, 275 So.2d 207 (La. 1973), where the Attorney General again argued that the Constitution gave him jurisdiction "over all legal matters in which the State has an interest," and that state agencies as a consequence should not be permitted to retain independent counsel. The Court was unpersuaded and ruled that the Constitutional language relied upon by the Attorney General did not "operate as a limitation upon the Legislature to prohibit it from passing any act, calling for the employment of counsel where it deemed such was necessary."[29]

The holdings in <u>Saint</u> and <u>State of Louisiana</u> have particular relevance to the case at hand. The Organic Act provision relied upon by the Attorney General plainly and clearly provides that he is only the "Chief Legal Officer of the Government of Guam."[30] The Organic Act does not provide that the Attorney General is the Chief Legal Officer of distinct and independent government agencies, which are separate legal entities with the power to sue or be sued. Based on the principles of constitutional statutory construction discussed in <u>Saint</u> and <u>State of Louisiana</u>, and the strict test for federal preemption, the Court should apply the plain language of the Organic Act, and find that the Attorney General's powers are limited to the

---

[28] *Id.*, 134 So. at 249.

[29] *Id.*, 275 So.2d at 213.

[30] Title 48 U.S.C. § 1421g(d)(1).

10

Case 1:03-cv-00008   Document 37   Filed 03/19/2003   Page 16 of 26

Government of Guam, and do not extend to separate and distinct government agencies with the power to sue or be sued.

C.    **The Legislative History of the 1998 Amendment to the Organic Act.**

**(1) References To Independent Counsel For Government Agencies.**

The Attorney General has grossly misled the Court as to the legislative history of the 1998 Amendment to the Organic Act. The best example of this misconduct is when the Attorney General refers to a letter dated July 16, 1997, from Charles Troutman, Esq., to Congressman Robert Underwood.[31] In this letter, Mr. Troutman is discussing the proposed changes to the Organic Act that refer to the Attorney General as the "Chief Legal Officer" of the Government of Guam.

The Attorney General implies that in his letter of July 16, 1997, Mr. Troutman supports the amendment to the Organic Act because it will prevent the establishment of legal "empires" within the government of Guam by prohibiting Guam's Legislature from allowing government agencies to retain independent counsel. The letter is intentionally misquoted by the Attorney General as follows:

> "this language . . . would keep a check on having many and diverse legal 'empires' within the government of Guam"  [32]

The Attorney General was apparently hoping that no one would actually read the letter itself. What the letter *actually* says is the opposite and that Mr. Troutman did *__not__* see the proposed language of "Chief Legal Officer" as eliminating the use of outside counsel for various agencies:

---

[31]    Motion for Preliminary Injunction, filed 3/5/03, Addendum 17.

[32]    Motion for Preliminary Injunction, filed 3/5/03, at 6.

11

I do not see this language as eliminating the use of outside counsel for various agencies, but would keep a check on having many and diverse legal 'empires' within the government of Guam.[33]

Thus, contrary to the assertions of the Attorney General, the letter proves that Mr. Troutman interpreted the reference to the Attorney General as "Chief Legal Officer" **not** to prohibit the "use of outside counsel for various agencies." The sole purpose of the designation of the Attorney General as "Chief Legal Officer" was to prevent legal "empires" from developing within the "government of Guam" itself, **not** to prohibit "outside counsel for various agencies."

In addition to intentionally misquoting Mr. Troutman's letter of July 16, 1997, the Attorney General completely fails to draw the Court's attention to the highly pertinent language in Mr. Troutman's letter of September 2, 1997. In this letter, Mr. Troutman plainly recognizes that it is "rightfully" a matter of "local legislation" whether to allow government agencies to retain independent counsel:

> There are a number of local problems, ***rightfully the subject of local legislation***, that need addressing. Such include the relationship between the Attorney General and counsel assigned or and/or hired by individual agencies, their funding, etc.[34]

Mr. Troutman's letters of July 16, 1997, and September 2, 1997, are the only two references in the legislative history to the 1998 Amendment to the Organic Act that make any reference to government agencies retaining independent counsel. One of these letters plainly states that the proposed amendments to the Organic Act ***do not*** eliminate "the use of outside counsel for various agencies." The other letter is equally clear in declaring the "relationship"

---

[33] Motion for Preliminary Injunction, Addendum 17 at 2.

[34] Motion for Preliminary Injunction, filed 3/5/03, Addendum 19 at 1.

12

between the Attorney General and independent counsel a rightful "subject of local legislation." The legislative history, therefore, supports the contention of GIAA that Guam's Legislature may decide whether to permit certain government agencies.[35]

### (2) The Discussions Of Political Interference In The 1998 Amendment.

The Attorney General argues that when Congress amended the Organic Act in order to permit the Guam Legislature to provide for an elected Attorney General, Congress intended to reduce political interference with the Attorney General's Office.[36] This is undoubtedly true, but "political interference with investigations, inefficiency of case work and dismissal of the Attorney General without cause,"[37] as was the concern of H.R. 105-742, is not at issue here. Rather, the issue is whether the Attorney General's status as "Chief Legal Officer" in Guam means that the Guam Legislature is federally preempted from permitting government agencies to retain their own counsel. Despite the Attorney General's contentions, nowhere in the legislative history of Section 1421g(d) is it even hinted that Congress ever intended to preempt the powers of the Guam Legislature in this area.

As already discussed, the only references in the Legislative History on the subject of independent counsel for government agencies plainly states that it is *"rightfully the subject of local legislation."* And, H.R. 105-742 explicitly acknowledges that the same bill which

---

[35] Inasmuch as Mr. Troutman is now employed by Attorney General Moylan, he will no doubt now have a different view than those expressed in his letters of July 16, 1997 and September 2, 1997. However, Mr. Troutman's current opinions are irrelevant to the legislative history discussed herein.

[36] Motion for Preliminary Injunction, p. 3, ll. 8-11; *see also*, p. 5, line 10; p. 6, ll. 11-13 (D. Ct. Guam Mar. 5, 2003).

[37] H. Rpt. No. 105-742 at pp. 2-3 (Sept. 24, 1998). (Emphasis added).

13

created the position of the elected Attorney General also contained a provision amending the

Organic Act so as to *broaden* the extent of the Legislature's powers:

> H.R. 2370 would amend the Organic Act of Guam to allow its legislature to enact a law providing for the election of the island's attorney general, specify that simple majority of legislators qualifies as quorum, and ***broaden the extent of the legislature's powers***.[38]

To this end, the same law that amended the Organic Act to permit for an elected

Attorney General, also amended the Organic Act to clarify that the legislative power of Guam

shall extend to all "rightful subjects of legislation not inconsistent with the provisions of this

Act and the laws of the United States applicable to Guam":

> The legislative power of Guam shall extend to ***all rightful subjects of legislation*** not inconsistent withe provisions of this Act and the laws of the United States.[39]

By undeniably granting the Guam Legislature power to legislate "all rightful subjects

of legislation," it is clear that Congress intentionally declined to have the Organic Act define

the powers of the Attorney General of Guam, and that it instead decided to leave that duty to

the Legislature to do pursuant to its plenary powers as set forth in 48 U.S.C. § 1423a.[40]

## D.     **The Cases Law Relied Upon By The Attorney General.**

The Attorney General has cited numerous cases from Illinois in support of his

contention that his designation as "Chief Legal Officer" in the Organic Act federally preempts

---

[38] H.R.Rep. 105-742 at p. 5 (emphasis added); <u>Declaration of David A. Mair</u> at ¶ 3 and Exhibit 1(D. Ct. Guam Mar. 19, 2003).

[39] 48 U.S.C. § 1423a, as amended by P.L. 105-291:4. (Emphasis added).

[40] The Attorney General does not explain how allowing his office to control the legal affairs of GIAA will reduce "political interference" with GIAA. It is respectfully submitted that allowing an elected political officer, like the Attorney General, to be in charge of the legal affairs of GIAA is <u>more likely</u> to result in "political interference" at GIAA, than allowing GIAA to use private independent counsel.

14

the Guam Legislature from enacting legislation permitting government agencies to retain independent counsel. The Attorney General's reliance upon Illinois cases is misplaced. First, as noted by the Attorney General himself, the Illinois cases are "not absolutely determinative given the divergence" between the language of the Organic Act and the Illinois Constitution.[41] Second, in addition to the marked distinctions between the Illinois Constitution and the Organic Act, the legislative schemes in Illinois and Guam are entirely different.[42] Third, the Illinois courts follow a minority view and there "has been criticism" of their "virtual exclusive grant of power to the Attorney General."[43] Fourth, the only case cited by the Attorney General from Illinois that involves a government agency trying to retain independent counsel is Environmental Protection Agency v. Pollution Control Board,[44] which is easily distinguishable from the case before the Court.

In Environmental Protection Agency v. Pollution Control Board, there was no legislation authorizing the Illinois Pollution Control Board ("Board") to retain independent counsel. Despite this fact, in Environmental Protection the "Attorney General said that the

---

[41] Plaintiff's Motion for Preliminary Injunction, filed 3/5/03, at 11.

[42] The Illinois Legislature has passed legislation establishing that the State Attorney General is the "only officer empowered to represent the State in litigation in which it is the real party in interest." Fuchs v. Bidwill, 65 Ill. 2d 503, 510, 359 N.E.2d 158, 162 (Ill. 1976)(citing People ex rel. Scott v. Briceland, 65 Ill. 2d 485, 495, 359 N.E.2d 149, 154 (Ill. 1976); Fergus v. Russel, 270 Ill. 304, 342, 110 N.E. 130, 145 (1915)("As the office of Attorney General is the only office at common law which is thus created by our constitution the Attorney General is the chief law officer of the State, and the only officer empowered to represent the people in any suit or proceeding in which the State is the real party in interest, **except where the constitution or a constitutional statute may provide otherwise**."). See also 15 ILCS 205/4 (2003), which clearly defines the duties of the Illinois Attorney General. In marked contrast, the Guam Legislature has elected **not** to limit certain government autonomous agencies, including GIAA, to representation by the Attorney General. Thus, Illinois law is not only not instructive, it is wholly irrelevant.

[43] Environmental Protection Agency v. The Pollution Control Board, 372 N.E.2d 50, 51 (Ill. 1977).

[44] Environmental Protection Agency v. Pollution Control Board, 372 N.E.2d 50 (1977).

15

Board could represent itself at its own expenses."[45] The Board, however, wanted the Attorney General to pay for the cost of the Board's counsel. On appeal, the Illinois Supreme Court said that the "issue is whether the State agency may employ private counsel to represent it and have his or her fees paid by the Attorney General . . ."[46] Not surprisingly, the Illinois Supreme Court ruled that "a State agency may not do so."[47]

The issue before this Court is not whether GIAA "may employ private counsel to represent it and have his or her fees paid by the Attorney General . . ."[48] More to the point, GIAA, unlike the Board in Environmental Protection, has express legislative authority to hire independent counsel.

The **only** other case cited by the Attorney General that deals with a government agency attempting to retain counsel over the objection of an Attorney General is Wade et al., v. United States District Court.[49] In this case, the Attorney General of Mississippi by statute had "the sole power to bring or defend a lawsuit on behalf of a state agency."[50] In brazen violation of state law, the government agency in Wade attempted to retain private counsel to defend it in a lawsuit alleging racial discrimination that had been filed in federal court. The federal court in Wade noted that the statute relied upon by the Board to retain independent counsel

---

[45] *Id.*, 372 N.E.2d at 51.

[46] *Id.*, 372 N.E.2d at 51.

[47] *Id.*, 372 Ne.2d at 51.

[48] *Id.*, 372 N.E.2d at 51.

[49] Wade, et al., v. United States District Court, 392 F.Supp. 229 (D.C.N. Miss. 1975).

[50] *Id.*, 392 F.Supp. at 231.

16

"nowhere expressly grants to the Board authority to retain counsel"[51] and that "the Board is without power to engage counsel . . ."[52] The Court, despite there being no statutory authority for the Board to retain counsel, nonetheless emphasized "that this case does not concern the authority which the Board may legally exercise in employing counsel in the discharge of many activities, which may be of a purely local, administrative, or proprietary nature."[53]

It would be difficult to imagine a case more distinguishable than Wade. GIAA, unlike the Board in Wade, does have the statutory authority to retain counsel. The Attorney General of Guam, unlike the Mississippi Attorney General, does not have the statutory authority to be "the sole power to bring or defend a lawsuit on behalf of a state agency."[54] To the contrary, by statute in Guam, GIAA "may undertake litigation without the supervision of the Attorney General."[55]

## IV.     THE STANDARD FOR A PRELIMINARY INJUNCTION

A.     **High Probability of Success on the Merit:** As discussed above, the Attorney General has virtually no chance of success on the merits. He is arguing a point of law contrary to the majority view. The plain language of the Organic Act does not show a "clear and manifest" purpose of the U.S. Congress to prohibit Guam's Legislature from allowing government agencies to retain independent counsel. And, the legislative history of the 1998 Amendment confirms that this is "rightfully the subject of local legislation."

---

[51] *Id.*, 392 F.Supp at 234.

[52] *Id.*, 392 F.Supp at 235.

[53] *Id.*, 392 F.Supp. at 235.

[54] *Id.*, 392 F.Supp. at 231.

[55] 5 G.C.A. § 30109, Comment of the Compiler of Laws (emphasis added).

17

**B.** **Immediate and Irreparable Harm:** The Attorney General is asking to enjoin the award by GIAA of any "legal services agreements."[56] GIAA's Board, however, has already voted to retain the services of Mair, Mair, Spade and Thompson, and the contract has already been signed by the Chairman of GIAA's Board and GIAA's certifying officer.[57] In fact, the contract was forwarded to the Attorney General on March 4, 2003, the day **before** the Motion for Preliminary Injunction was filed. The only action remaining is for the Attorney General to review the contract for "correctness of their form" and "legality" in order to confirm that the "required procedures" were followed to award the contract.[58] Is the Attorney General asking that his own actions be restrained?

**C.** **Government Agencies Will Be Harmed If Injunction Granted:** The Attorney General has admitted in a recent declaration that his office is "extremely understaffed and under-budgeted"[59] and that he was going to "reduce services provided to the Government of Guam."[60] Some government agencies (such as GIAA, Port Authority of Guam, Guam Power Authority and Guam Telephone Authority) have pending multi-million dollar grants and contracts, which involve complicated questions of law, and the services of experienced corporate counsel is required in order to protect the interests of the people of Guam. If anyone

---

[56] Motion for Preliminary Injunction, filed March 5, 2003, at 20.

[57] Declaration of Attorney General, filed March 5, 2003, ¶ 9 at 2. (Attached to the Motion for Preliminary Injunction as Exhibit A.)

[58] 2 G.A.R. § 2113.

[59] Declaration of Attorney General, filed March 13, 2003, ¶ 10 at 3. Attached as Exhibit B to Memorandum of Points and Authorities In Support of Ex Parte Motion to Extend Deadline.

[60] Declaration of Attorney General, filed March 13, 2003, ¶ 8 at 2. Attached as Exhibit B to Memorandum of Points and Authorities In Support of Ex Parte Motion to Extend Deadline.

18

is being harmed at this time, it is the government agencies who are being denied their statutory right to retain experienced and qualified independent counsel.

**D.** **Protecting the Public Interest:** In an age where privatization has become the trend, the Attorney General wishes to return to a more socialistic time and have all legal services for the Government of Guam **and** its independent government agencies "centralized" in his office. The argument is that the people of Guam will save money by allowing the government, rather than the business people on the Boards of government agencies, to be in charge of who handles legal matters.[61] The argument that the Government of Guam, or any government for that matter, can operate more cost effectively than private business people in charge of government agencies, is too absurd to warrant serious discussion. This is to say nothing of the quality of legal services that would be provided by the Attorney General with an "extremely understaffed" office.[62]

As the California Supreme Court noted, "there are a variety of circumstances under which the interests" of government "might be neglected or wholly sacrificed" if government agencies were not permitted to retain independent counsel.[63] It is unreasonable in the extreme

---

[61] The Attorney General has not presented any economic data or evidence to support his contention that the "centralization" of legal services in his office will result in economic savings.

[62] Like the Attorney General of Guam, the late Joseph Stalin also argued that "centralization" of government services led to greater efficiency. The economic debacle in the USSR has proven this theory to be incorrect.

[63] *Id.* 69 P.2d at 988. The California Supreme Court ultimately ruled in State Compensation Insurance Fund that the civil service laws prohibited the retention of independent counsel. This finding, however, is consistent with GIAA's contention that the Legislature, not the Attorney General, decides when independent counsel may be retained.

19

for the Attorney General to argue that any Legislature has "been so unwise as to render such a course impossible."[64]

## CONCLUSION

This case should have never been filed. For all the reasons discussed herein, the motion for preliminary injunction should be denied.

Respectfully submitted this 19th day of March, 2003.

**MAIR, MAIR, SPADE & THOMPSON**
A Professional Corporation
Attorneys for Defendant William R. Thompson,
 in his official capacity as Executive Manager of the
 A.B. Won Pat Guam International Airport Authority

By: _____
DAVID A. MAIR

P038022

---

[64] *Id.* 69 P.2d at 988. The California Supreme Court ultimately ruled in <u>State Compensation Insurance Fund</u> that the civil service laws prohibited the retention of independent counsel. This finding, however, is consistent with GIAA's contention that the Legislature, not the Attorney General, decides when independent counsel may be retained.

20