MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
Attorneys at Law
Suite 807, GCIC Building
414 West Soledad Avenue
Hagåtña, Guam 96910
Telephone: (671) 472-2089/2090



Attorneys for Defendant William R. Thompson,
 in his official capacity as Executive Manager
 of the A.B. Won Pat Guam International Airport Authority

IN THE DISTRICT COURT OF GUAM
TERRITORY OF GUAM

| | |
|---|---|
| THE ATTORNEY GENERAL OF GUAM, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM R. THOMPSON, in his official capacity as Executive Manager of the Guam Airport Authority, <br><br> Defendant. | CIVIL ACTION FILE NO. 03-00008 <br><br> **DECLARATION OF DAVID A. MAIR** |

I, DAVID A. MAIR, hereby declare as follows:

1. I am a resident of Guam, over the age of 18, and legally competent to testify to the matters contained in this Declaration. This Declaration is made pursuant to Pursuant to Local Rule 1.7(j).

2. I am the attorney for Defendant William R. Thompson in this case. Mr. Thompson is the Executive Manager of the Guam International Airport Authority (GIAA).

1

**ORIGINAL**

3. Attached hereto as Exhibit 1 is a true, correct, and complete copy of Report No. 105-742 of the United States House of Representatives dated September 24, 1998, regarding Bill No H.R. 2370, an Act entitled "*Guam Organic Act Amendments of 1998.*" 144 Cong. Rec. H. 8626; Union Calendar No. 427; H. Rpt. No. 105-742.

4. In the event that the Defendant's motions to dismiss are denied, and the Court decides to rule upon the merits of the motion for preliminary injunction, Defendant respectfully requests oral argument.

I declare under penalty of perjury under the laws of Guam that the foregoing is true and correct.

Date: 3/19/03

DAVID A. MAIR

P03207

| 105TH CONGRESS 2d Session | HOUSE OF REPRESENTATIVES | REPORT 105-742 |

# GUAM ORGANIC ACT AMENDMENTS OF 1998

SEPTEMBER 24, 1998.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. YOUNG of Alaska, from the Committee on Resources, submitted the following

# REPORT

together with

## ADDITIONAL VIEWS

[To accompany H.R. 2370]

[Including cost estimate of the Congressional Budget Office]

The Committee on Resources, to whom was referred the bill (H.R. 2370) to amend the Organic Act of Guam for the purposes of clarifying the local judicial structure and the office of Attorney General, having considered the same, report favorably thereon with amendments and recommend that the bill as amended do pass.

The amendments are as follows:

Strike out all after the enacting clause and insert in lieu thereof the following:

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Guam Organic Act Amendments of 1998".

**SEC. 2. ATTORNEY GENERAL OF GUAM.**

Section 29 of the Organic Act of Guam (48 U.S.C. 1421g) is amended by adding at the end the following new subsection:

"(d)(1) The Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam. At such time as the Office of the Attorney General of Guam shall next become vacant, the Attorney General of Guam shall be appointed by the Governor of Guam with the advice and consent of the legislature, and shall serve at the pleasure of the Governor of Guam.

"(2) Instead of an appointed Attorney General, the legislature may, by law, provide for the election of the Attorney General of Guam by the qualified voters of Guam in general elections after 1998 in which the Governor of Guam is elected. The term of an elected Attorney General shall be 4 years. The Attorney General may be removed by the people of Guam according to the procedures specified in section

59-006

# EXHIBIT 1

9–A of this Act or may be removed for cause in accordance with procedures established by the legislature in law. A vacancy in the office of an elected Attorney General shall be filled—

"(A) by appointment by the Governor of Guam if such vacancy occurs less than 6 months before a general election for the Office of Attorney General of Guam; or

"(B) by a special election held no sooner than 3 months after such vacancy occurs and no later than 6 months before a general election for Attorney General of Guam, and by appointment by the Governor of Guam pending a special election under this subparagraph.".

**SEC. 3. LEGISLATIVE QUORUM.**

Section 12 of the Organic Act of Guam (48 U.S.C. 1423b) is amended by striking "eleven" and inserting "a simple majority".

**SEC. 4. CLARIFICATION OF LEGISLATIVE POWER.**

The first sentence of section 11 of the Organic Act of Guam (48 U.S.C. 1423a) is amended—
 (1) by inserting "rightful" before "subjects"; and
 (2) by striking "legislation of local application" and inserting "legislation".

Amend the title so as to read:

A bill to amend the Organic Act of Guam to clarify local executive and legislative provisions in such Act, and for other purposes.

PURPOSE OF THE BILL

As reported from the Committee on Resources, the purpose of H.R. 2370 is to amend the Organic Act of Guam to clarify local executive and legislative provisions in such Act.

BACKGROUND AND NEED FOR LEGISLATION

The Organic Act of Guam was approved on August 1, 1950 (64 Stat. 384, 48 U.S.C. 1421 et seq.), to provide for Guam's governance. The executive, legislative, and judicial branches of the government of Guam exist based on the Organic Act. Changes to the fundamental functions of any of the three branches of government in Guam can only occur by amendments to the Organic Act by Congress, as Guam is unable to make changes through local law.

Although Congress has amended the Organic Act of Guam on occasion to make allowances for increased efficiency in the government of Guam or to correct inconsistencies, in 1976 Congress authorized Guam to adopt its own constitution to provide for a significant increase in self-government (Public Law 94–584). The proposed changes to the Organic Act in H.R. 2370 must be enacted by Congress as amendments to the Organic Act as Guam has not yet adopted a local constitution. However, these provisions are responsive to current specific requests of the Government of Guam and are expected to foster greater efficiency and equity.

*Attorney General of Guam*

Guam's Attorney General is currently appointed by the Governor of Guam with the advice and consent of the Guam Legislature. The appointment of the Attorney General is to a four year term or until the end of the term of the appointing Governor, whichever is sooner. The Governor may remove the Attorney General for cause.

Controversies have arisen in the past because of the appointment nature of the position of Attorney General. Public concerns revolve

around political interference with investigations, inefficiency of case work and dismissal of the Attorney General without cause.

In response to the growing number of complaints, a survey was conducted to determine an acceptable resolution. It was clear that respondents (69%) favored an elected position. The survey also asked whether the position should be mandated by Congress, or left to the Guam Legislature to create. A slight majority of citizens favored local legislation. An amendment to Guam's Organic Act is needed to allow for an elected Attorney General. This legislation provides a mechanism for elected legislators to act on this issue.

*Legislative quorum*

Since enactment of Guam's Organic Act, the Guam Legislature has been comprised of a 21 member body elected at-large. The Organic Act mandates that a legislative quorum shall consist of 11 members.

A referendum was held during the 1994 general election to reduce the number of seats in the Guam Legislature from 21 to 15. This change will take effect during the 1998 legislative elections.

H.R. 2370 will align the Organic Act with changes in local law and preferences of the electorate. It will replace a mandated legislative quorum to a simple majority rather than a specified number.

*Clarification of legislative powers*

Defined in Guam's Organic Act, the powers of the Guam Legislature currently extend to "subjects of legislation of local application." In Public Law 85–851, Congress amended the Virgin Island's Organic Act to read: "The legislative authority and power of the Virgin Islands shall extend to all rightful subjects of legislation not inconsistent with this Act or the laws of the United States made applicable to the Virgin Islands," in response to the Supreme Court case *Granville-Smith* v. *Granville-Smith* [349 U.S. 1, 75 S.Ct. 553 (1955)]. The Ninth Circuit Court of Appeals has referenced this discrepancy to support its decisions to the effect that Guam has less local government than other territories.

This legislation will provide Guam with a greater measure of self-government equal to that of the U.S. Virgin Islands.

COMMITTEE ACTION

H.R. 2370 was introduced on July 31, 1997, by Delegate Robert Underwood (D–GU). The bill was referred to the Committee on Resources. On October 29, 1997, the Committee held a hearing on H.R. 2370 (Printed Hearing 105–78). Appearing before the Committee were officials of Guam's judicial, legislative, and executive branches, as well as the Administration. Witnesses supported self-government for Guam and there were no objections to any of the changes to the Organic Act which have been approved by the Committee.

On July 29, 1998, the Committee met to mark up H.R. 2370. An amendment in the nature of a substitute to focus the changes to the Organic Act of Guam to provisions about the election of the Attorney General of Guam, quorum size, and clarification of legislative powers was offered by Mr. Underwood and adopted by voice.

The bill was then ordered favorably reported to the House of Representatives by voice vote.

### COMMITTEE OVERSIGHT FINDINGS AND RECOMMENDATIONS

With respect to the requirements of clause 2(l)(3) of rule XI of the Rules of the House of Representatives, and clause 2(b)(1) of rule X of the Rules of the House of Representatives, the Committee on Resources' oversight findings and recommendations are reflected in the body of this report.

### CONSTITUTIONAL AUTHORITY STATEMENT

Article IV, section 3 of the Constitution of the United States grants Congress the authority to enact H.R. 2370.

### COST OF THE LEGISLATION

Clause 7(a) of rule XIII of the Rules of the House of Representatives requires an estimate and a comparison by the Committee of the costs which would be incurred in carrying out H.R. 2370. However, clause 7(d) of that Rule provides that this requirement does not apply when the Committee has included in its report a timely submitted cost estimate of the bill prepared by the Director of the Congressional Budget Office under section 403 of the Congressional Budget Act of 1974.

### COMPLIANCE WITH HOUSE RULE XI

1. With respect to the requirement of clause 2(l)(3)(B) of rule XI of the Rules of the House of Representatives and section 308(a) of the Congressional Budget Act of 1974, H.R. 2370 does not contain any new budget authority, spending authority, credit authority, or an increase or decrease in revenues or tax expenditures.
2. With respect to the requirement of clause 2(l)(3)(D) of rule XI of the Rules of the House of Representatives, the Committee has received no report of oversight findings and recommendations from the Committee on Government Reform and Oversight on the subject of H.R. 2370.
3. With respect to the requirement of clause 2(l)(3)(C) of rule XI of the Rules of the House of Representatives and section 403 of the Congressional Budget Act of 1974, the Committee has received the following cost estimate for H.R. 2370 from the Director of the Congressional Budget Office.

### CONGRESSIONAL BUDGET OFFICE COST ESTIMATE

U.S. CONGRESS,
CONGRESSIONAL BUDGET OFFICE,
*Washington, DC, August 6, 1998.*

Hon. DON YOUNG,
*Chairman, Committee on Resources,*
*House of Representatives, Washington, DC.*

DEAR MR. CHAIRMAN: The Congressional Budget Office has prepared the enclosed cost estimate for H.R. 2370, the Guam Organic Act Amendments of 1998.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contact is John R. Righter.
Sincerely,

JUNE E. O'NEILL, *Director.*

Enclosure.

*H.R. 2370—Guam Organic Act Amendments of 1998*

H.R. 2370 would amend the Organic Act of Guam to allow its legislature to enact a law providing for the election of the island's attorney general, specify that a simple majority of legislators qualifies as a quorum, and broaden the extent of the legislature's powers. CBO estimates that enacting this bill would have no impact on the federal budget. Because H.R. 2370 would not affect direct spending or receipts, pay-as-you-go procedures would not apply to the bill. H.R. 2370 contains no intergovernmental or private-sector mandates as defined in the Unfunded Mandates Reform Act and would impose no costs on state, local, or tribal governments.

The CBO staff contact is John R. Righter. This estimate was approved by Robert A. Sunshine, Deputy Assistant Director for Budget Analysis.

COMPLIANCE WITH PUBLIC LAW 104–4

H.R. 2370 contains no unfunded mandates.

CHANGES IN EXISTING LAW MADE BY THE BILL, AS REPORTED

In compliance with clause 3 of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italic, existing law in which no change is proposed is shown in roman):

**ORGANIC ACT OF GUAM**

\*         \*         \*         \*         \*         \*         \*

SEC. 11. The legislative power of Guam shall extend to all *rightful* subjects of [legislation of local application] *legislation* not inconsistent with the provisions of this Act and the laws of the United States applicable to Guam. Taxes and assessments on property, internal revenues, sales, license fees, and royalties for franchises, privileges, and concessions may be imposed for purposes of the government of Guam as may be uniformly provided by the Legislature of Guam, and when necessary to anticipate taxes and revenues, bonds and other obligations may be issued by the government of Guam: *Provided, however,* That no public indebtedness of Guam shall be authorized or allowed in excess of 10 per centum of the aggregate tax valuation of the property in Guam. Bonds or other obligations of the government of Guam payable solely from revenues derived from any public improvement or undertaking shall not be considered public indebtedness of Guam within the meaning of this section. All bonds issued by the government of Guam or by its authority shall be exempt, as to principal and interest, from taxation by the Government of the United States or by the government of Guam, or by any State or Territory or any political subdivision thereof, or by the District of Columbia. The Secretary of the Inte-

rior (hereafter in this section referred to as "Secretary") is authorized to guarantee for purchase by the Federal Financing Bank bonds or other obligations of the Guam Power Authority maturing on or before December 31, 1978, which shall be issued in order to refinance short-term notes due or existing on June 1, 1976 and other indebtedness not evidenced by bonds or notes in an aggregate amount of not more than $36 million, and such bank, in addition to its other powers, is authorized to purchase, receive or otherwise acquire these same. The interest rate on obligations purchased by the Federal Financing Bank shall be not less than a rate determined by the Secretary of the Treasury taking into consideration the current average market yield on outstanding marketable obligations of the United States of comparable maturities, adjusted to the nearest one-eighth of 1 per centum, plus 1 per centum per annum. The Secretary, with the concurrence of the Secretary of the Treasury, may extend the guarantee provision of the previous sentence until December 31, 1980. The Secretary, upon determining that the Guam Power Authority is unable to refinance on reasonable terms the obligations purchased by the Federal Financing Bank under the fifth sentence of this section by December 31, 1980, may, with the concurrence of the Secretary of the Treasury, guarantee for purchase by the Federal Financing Bank; and such bank is authorized to purchase, obligations of the Guam Power Authority issued to refinance the principal amount of the obligations guaranteed under the fifth sentence of this section. The obligations that refinance such principal amount shall mature not later than December 31, 1990, and shall bear interest at a rate determined in accordance with section 6 of the Federal Financing Bank Act (12 U.S.C. 2285). At the request of the Board of Directors of the Guam Power Authority for a second refinancing agreement and conditioned on the approval of the Government of Guam pursuant to the law of Guam, and conditioned on the establishment of an independent rate-making authority by the Government of Guam, the Secretary may guarantee for purchase by the Federal Financing Bank, on or before December 31, 1984, according to an agreement that shall provide for—

    (a) substantially equal semiannual installments of principal and interest;

    \*    \*    \*    \*    \*    \*    \*

SEC. 12. The legislature shall be the judge of the selection and qualification of its own members. It shall choose from its members its own officers, determine its rules and procedure, not inconsistent with this Act, and keep a journal. The quorum of the legislature shall consist of [eleven] *a simple majority* of its members. No bill shall become a law unless it shall have been passed at a meeting, at which a quorum was present, by the affirmative vote of a majority of the members present and voting, which vote shall be by yeas and nays.

    \*    \*    \*    \*    \*    \*    \*

SEC. 29. (a) \* \* \*

    \*    \*    \*    \*    \*    \*    \*

7

*(d)(1) The Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam. At such time as the Office of the Attorney General of Guam shall next become vacant, the Attorney General of Guam shall be appointed by the Governor of Guam with the advice and consent of the legislature, and shall serve at the pleasure of the Governor of Guam.*

*(2) Instead of an appointed Attorney General, the legislature may, by law, provide for the election of the Attorney General of Guam by the qualified voters of Guam in general elections after 1998 in which the Governor of Guam is elected. The term of an elected Attorney General shall be 4 years. The Attorney General may be removed by the people of Guam according to the procedures specified in section 9–A of this Act or may be removed for cause in accordance with procedures established by the legislature in law. A vacancy in the office of an elected Attorney General shall be filled—*

> *(A) by appointment by the Governor of Guam if such vacancy occurs less than 6 months before a general election for the Office of Attorney General of Guam; or*
>
> *(B) by a special election held no sooner than 3 months after such vacancy occurs and no later than 6 months before a general election for Attorney General of Guam, and by appointment by the Governor of Guam pending a special election under this subparagraph.*

\*   \*   \*   \*   \*   \*   \*

## ADDITIONAL VIEWS

The introduction of the original version of H.R. 2370, the Guam Judicial Empowerment Act, stemmed from a need to clarify and insulate the judicial branch of Guam's local government from interference by the executive or legislative branches of the Government of Guam. These Additional Views discuss "Section 2. Judicial Authority; Supreme Court of Guam" found in the original version of H.R. 2370.

A 1977 ruling by the U.S. Supreme Court—*Territory of Guam v. Olsen*, 431 U.S. 195—found Guam's Supreme Court (established in 1973 by the 12th Guam Legislature) to be inorganic. In this case, the Court held that Guam's Organic Act did not authorize the transfer of appellate jurisdiction from the appellate division of the District Court of Guam to a locally established appellate court.

The 1984 Omnibus Territories Act was passed by Congress in response to the *Guam v. Olsen* ruling. The Act authorized the Guam Legislature to create an appellate court and provided that once such a court is established, appellate jurisdiction would transfer from the appellate division of the District Court of Guam to the newly established appellate court. The Act, however, did not provide a structure for a newly created judicial system once an appellate court was established. Nor, did the Act mention that the responsibility should be left to the Guam Legislature.

In 1992 the 21st Guam Legislature passed Public Law 21–147, the Frank G. Lujan Memorial Court Reorganization Act. This Act re-created the Supreme Court of Guam to serve as the highest appellate court on the island. The author of the Frank G. Lujan Memorial Court Reorganization Act has stated that is was the intent of the 21st Guam Legislature to make the Supreme Court of Guam the highest local court and be vested with those powers traditionally held and exercised by the highest court of a jurisdiction.

However, the revival of the Supreme Court of Guam and the absence of administrative composition direction in the 1984 Omnibus Territories Act makes the court subject and subordinate to the shifts in the political power structure of the Guam Legislature. Public Law 23–86, enacted by the 23rd Guam Legislature in 1996, removed the Supreme Court's authority over personnel matters within the Judiciary and created two parallel court systems. On two other occasions, the 23rd Guam Legislature took into consideration two different pieces of legislation. Bill No. 494 would have completely removed the Supreme Court's authority over the Superior Court and Bill No. 776 would have rearranged the authority of the Supreme Court making it an appellate division of the Superior Court. Another example of the Supreme Court's susceptibility to the Guam Legislature came recently in February 1998.

During the course of debate over controversial comprehensive solid waste management legislation, a non-germane rider removing

the Supreme Court's authority was attached. Because the subject matter of the rider was also controversial, minority Members urged the leadership to allow for a public hearing on the issue before attachment. The request was denied, the rider was attached and the legislation passed. The Governor of Guam allowed a pocket veto of the solid waste management legislation and expressed his disapproval of the manner in which a controversial rider was attached to a crucial piece of legislation. He continued, in his message to the Speaker of the Guam Legislature, to reiterate his support for passage of H.R. 2370 by the U.S. Congress. The actions of the Guam Legislature clearly indicate that Guam's third branch of government is subordinate and subject to changes by the Guam Legislature. The Judiciary is not truly a co-equal, independent branch of government.

Chairman Don Young, Committee on Resources, has expressed in a May 11, 1998 letter to Mr. Underwood, that he cannot support the proposed measure (Sec. 2) regarding "Judicial Authority; Supreme Court of Guam," found in the original version of H.R. 2370. Chairman Young states that the change in judiciary "should be done with the support of the Government of Guam; or in a locally developed Constitution." Chairman Young notes that the Committee has, in the past, considered changes affecting local self-government of territories based on a consensus by the people and their leaders. The consensus is usually reflected in resolutions by the local legislature.

Mr. Allen P. Stayman, Director of the Office of Insular Affairs, stated in a May 5, 1998 letter that the Administration "has no objection to the passage of such a substitute amendment to H.R. 2370." The substitute amendment to which Mr. Stayman refers to is the improvement of language, as suggested by the Administration, for clarification. It is important to note that during the October 29, 1997 hearing on H.R. 2370, inclusive of Sec. 2 regarding "Judicial Authority; Supreme Court of Guam," Mr. Stayman testified that the Administration had no objection to the overall concept of H.R. 2370.

Section 2 of H.R. 2370, received endorsements and support from a number of local Guam organizations. The Guam Bar Association conducted a survey among its membership to determine the amount of support or opposition for H.R. 2370. Seventy-two percent (72%) or 27 of 37 attorneys, favored defining and affirming the authority of the Supreme Court in Guam's Organic Act. Guam's singular newspaper publication, the Pacific Daily News, also endorsed the passage of the Guam Judicial Empowerment Act in a February 10, 1998 editorial. They stated that H.R. 2370, "is emergency legislation and can't wait for routine handling. It must get prompt action in Washington before Guam's system of justice falls victim to arm-twisting from special interest groups."

A significant endorsement for the original version of H.R. 2370 came from a February 17, 1998 letter from the Conference of Chief Justices. The Conference of Chief Justices is comprised of members who hold the highest judicial officers of each state of the United States, the District of Columbia, Puerto Rico, Guam and other territories. In their letter, they express their strong support for H.R. 2370 "to assure by legislation the independence of its judiciary and

10

to maintain its judicial branch as a separate and co-equal branch of government."

Currently, Guam's judiciary is not a co-equal branch of government. It's court system does not reflect court systems existing in the United States. This predicament can only be corrected by amending the Organic Act of Guam to enact Sec. 2 of H.R. 2370 regarding the judicial authority of the Supreme Court of Guam. The Committee on Resources needs to address this important issue in the near future.

ROBERT A. UNDERWOOD.
GEORGE MILLER.

○

Union Calendar No. 427

105TH CONGRESS
2D SESSION
# H. R. 2370

[Report No. 105–742]

# A BILL

To amend the Organic Act of Guam for the purposes of clarifying the local judicial structure and the office of Attorney General.

SEPTEMBER 24, 1998

Reported with amendments, committed to the Committee of the Whole House on the State of the Union, and ordered to be printed

Union Calendar No. 427

105TH CONGRESS
2D SESSION

# H. R. 2370

[Report No. 105–742]

To amend the Organic Act of Guam for the purposes of clarifying the local judicial structure and the office of Attorney General.

## IN THE HOUSE OF REPRESENTATIVES

JULY 31, 1997

Mr. UNDERWOOD (for himself, Mr. MILLER of California, and Mr. ABERCROMBIE) introduced the following bill; which was referred to the Committee on Resources

SEPTEMBER 24, 1998

Additional sponsors: Ms. CHRISTIAN-GREEN and Mr. ROMERO-BARCELÓ

SEPTEMBER 24, 1998

Reported with amendments, committed to the Committee of the Whole House on the State of the Union, and ordered to be printed

[Strike out all after the enacting clause and insert the part printed in italic]

[For text of introduced bill, see copy of bill as introduced on July 31, 1997]

# A BILL

To amend the Organic Act of Guam for the purposes of clarifying the local judicial structure and the office of Attorney General.

1 *Be it enacted by the Senate and House of Representa-*
2 *tives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

*This Act may be cited as the "Guam Organic Act Amendments of 1998".*

**SEC. 2. ATTORNEY GENERAL OF GUAM.**

*Section 29 of the Organic Act of Guam (48 U.S.C. 1421g) is amended by adding at the end the following new subsection:*

*"(d)(1) The Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam. At such time as the Office of the Attorney General of Guam shall next become vacant, the Attorney General of Guam shall be appointed by the Governor of Guam with the advice and consent of the legislature, and shall serve at the pleasure of the Governor of Guam.*

*"(2) Instead of an appointed Attorney General, the legislature may, by law, provide for the election of the Attorney General of Guam by the qualified voters of Guam in general elections after 1998 in which the Governor of Guam is elected. The term of an elected Attorney General shall be 4 years. The Attorney General may be removed by the people of Guam according to the procedures specified in section 9–A of this Act or may be removed for cause in accordance with procedures established by the legislature in law. A vacancy in the office of an elected Attorney General shall be filled—*

1         *"(A) by appointment by the Governor of Guam*
2      *if such vacancy occurs less than 6 months before a*
3      *general election for the Office of Attorney General of*
4      *Guam; or*
5         *"(B) by a special election held no sooner than 3*
6      *months after such vacancy occurs and no later than*
7      *6 months before a general election for Attorney General of Guam, and by appointment by the Governor*
8
9      *of Guam pending a special election under this sub-*
10     *paragraph."*.

11 **SEC. 3. LEGISLATIVE QUORUM.**

12     *Section 12 of the Organic Act of Guam (48 U.S.C.*
13 *1423b) is amended by striking "eleven" and inserting "a*
14 *simple majority".*

15 **SEC. 4. CLARIFICATION OF LEGISLATIVE POWER.**

16     *The first sentence of section 11 of the Organic Act of*
17 *Guam (48 U.S.C. 1423a) is amended—*
18         *(1) by inserting "rightful" before "subjects"; and*
19         *(2) by striking "legislation of local application"*
20     *and inserting "legislation".*

    Amend the title so as to read: "A bill to amend the Organic Act of Guam to clarify local executive and legislative provisions in such Act, and for other purposes.".

Case 1:03-cv-00008    Document 38    Filed 03/19/2003    Page 16 of 16