MAIR, MAIR, SPADE & THOMPSON
A Professional Corporation
Attorneys at Law
Suite 807, GCIC Building
414 West Soledad Avenue
Hagåtña, Guam 96910
Telephone: (671) 472-2089/2090

Attorneys for Defendant William R. Thompson,
   in his official capacity as Executive Manager of the
   A.B. Won Pat Guam International Airport Authority



FILED
DISTRICT COURT OF GUAM
MAR 20 2003
MARY L. M. MORAN
CLERK OF COURT

## IN THE DISTRICT COURT OF GUAM

### TERRITORY OF GUAM

| | |
|---|---|
| THE ATTORNEY GENERAL OF GUAM, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM R. THOMPSON, in his official capacity as Executive Manager of the Guam Airport Authority, <br><br> Defendant. | CIVIL ACTION FILE NO. 03-00008 |

### DEFENDANT'S REPLY BRIEF RE MOTION TO DISMISS ON FEDERAL QUESTION AND ABSTENTION GROUNDS

**ORIGINAL**

## INTRODUCTION

This memorandum responds to the Attorney General's March 17, 2003 opposition memorandum to the extent that it addresses *Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction* addressing **federal question** and **abstention** grounds. (In a separate reply, Defendant will address points germane to the Attorney General's *Opposition to Defendant's Motion to Dismiss Based on Unsuitability of Declaratory Relief*.)

For the reasons stated herein, the Attorney General has failed to establish any justiciable federal question. Likewise, the Attorney General has failed to come forward with any principled reason why the Court must not abstain pursuant to the Younger doctrine.

## LEGAL DISCUSSION

### I.

### THE ATTORNEY GENERAL'S ATTEMPT TO DISTINGUISH AWAY *REPUBLICAN PARTY* AND *PANGELINAN* IS UNAVAILING

The Attorney General makes two main points related to whether this Court has subject matter jurisdiction over the instant case. First, the Attorney General asserts that this matter is so different from the facts involved in the recent Ninth Circuit case, Republican Party of Guam v. Gutierrez, 277 F.3d 1086 (9th Cir. 2002), that any argument relying on this authority is without merit. Second, he maintains that the case of Gutierrez v. Pangelinan, 276 F.3d 539 (9th Cir. 2002) is "wholly irrelevant." These arguments are unpersuasive.

1

The Organic Act of Guam functions as Guam's constitution. Haeuser v. Department of Law, Government of Guam, 97 F.3d 1152, 1156 (9th Cir. 1996). The Ninth Circuit has recognized "the importance of Guam Supreme Court's role in shaping the **interpretation and application of the Organic Act**." Pangelinan, *supra*, at 547 (emphasis added). What the Attorney General seeks in this case is just that, an **interpretation of the Organic Act**. This is the exact function that the Ninth Circuit clearly indicates is the "important" role of the Guam Supreme Court.

Ironically, the Attorney General's assertion that this case "does not resemble the Republican Party case in the least," places him in the same position that the Plaintiff took in Republican Party case. Specifically, the Attorney General maintains that this Court should exercise jurisdiction in this case because jurisdiction was exercised previously in three specific cases: Bordallo v. Baldwin, 624 F.2d 932 (9th Cir. 1980); Bordallo v. Reyes, 763 F.2d 1098 (9th Cir. 1985); and Bordallo v. Camacho, 475 F.2d 712 (9th Cir. 1973). However, the Ninth Circuit clearly rejected this contention in Republican Party, stating that, **"[w]e did not address federal question jurisdiction in any of these cases. They do not, therefore, provide binding precedent on that issue."** Republican Party, *supra*, at 1091 (emphasis added), *citing* Sethy v. Alameda County Water District, 545 F.2d 1157, 1159-60 (9th Cir. 1976). In light of the foregoing, the Attorney General's reliance upon mere *orbiter dicta* contained within the Republican Party case is clearly misplaced.

Moreover, it is significant to note that the three Bordallo cases referenced above were all decided *prior* to the establishment of the Guam Supreme Court. The Ninth Circuit

2

was obviously aware of these cases and clearly expressed its well-reasoned conclusion that matters such as those involving what is realistically an intragovernmental Organic Act dispute can and should be handled by the local court system, in furtherance of the development of Guam's common law, and in recognition of the Guam Supreme Court's role in shaping the interpretation and application of the Organic Act. *See* Gutierrez, *supra* and Republican Party, *supra*.

## II.

### NO FEDERAL QUESTION IS PRESENTED CONCERNING INJUNCTIVE RELIEF BECAUSE THE ETHICAL ISSUE AT HAND IS A LOCAL, NOT FEDERAL QUESTION

The Attorney General maintains that it is permissible for him to ask this Court to issue injunctive relief permitting him to represent an adverse party. Apparently, the Attorney General thinks that this is permissible because the Superior Court decision forbidding such a practice,[1] was subsequently vacated by the Supreme Court of Guam. The Attorney General conveniently neglected to inform the Court, however, that the Tarantino case was vacated *on stipulation* because the issue therein had become moot.[2] *See* Tarantino v. Board of Regents, Supreme Court Case No. CVA00-30 (*Stipulation and Order*, October 24, 2001). The trial court's decision was not reversed on the merits. It still offers a persuasive approach

---

[1] Tarantino v. Board of Regents, Superior Court of Guam, Civil Case No. CV-1455-00 (December 5, 2000) (per Maraman, J.)

[2] *See* Declaration of David A. Mair ("Mair Declaration") (March 20, 2003), Exhibit B.

3

to the subject of the Attorney General's ethical obligations. Moreover, Tarantino's underpinnings remain good law for the proposition that it is inappropriate for an Attorney General to undertake representation of a party to whom he is adverse in other proceedings.

Among other things, the trial court in Tarantino found persuasive a 1997 American Bar Association formal opinion which noted that attorneys general . . . "are **in most other respects subject to the same obligations in representing their government client that apply to lawyers representing private clients.**" *A.B.A. Formal Op.* 97-405, fn. 1 (1997) (emphasis added). The Tarantino court also placed "significant" reliance on People *Ex Rel* Deukmejian v. Brown, wherein the California Supreme Court held that the Attorney General could not represent clients one day, render legal advice to them regarding pending litigation, withdraw, and then sue the same clients the next day on a cause of action arising out of an identical controversy. 172 Cal. Rptr. 478, 624 P.2d 1206 (Cal. 1981).

In each situation, the Attorney General was held to be subject to the ethical requirements under local law. In short, while Tarantino may have been vacated by stipulation, the case furnishes a cogent analysis, and its underpinnings remain good law.

The Attorney General's citation of State v. Klattenhoff, 801 P.2d 548 (Haw. 1990) for the proposition that a majority of states permit attorneys general to concurrently represent conflicting interests is well wide of the mark. First, such concurrent representation is typically conditioned on the assurance that "the attorney general can ensure independent representation for the competing parties." *Id.* at 551. Second, the Klattenhoff case presented facts completely distinguishable from those at bar. In Klattenhoff, the deputy attorney general

4

representing the appellant in civil suits was from a different, separately-located division. Third, there was no showing that the attorney general had obtained information from the appellant, or otherwise in his representation of appellant during the civil cases, for use in prosecution in the criminal case. Furthermore, the civil cases were completely unrelated to the criminal prosecution and, retrospectively, the court concluded that the appellant had received favorable results in both of the civil cases. *Id.* at 552. The Attorney General in the instant case has offered no such assurances.

Fourth, the contemplated attorney-client relationship at issue here is a *continuous* one, not one isolated to particular executed transactions or closed cases. Fifth, the Attorney General is not seeking a judicial blessing for his handling of past disputes; he is seeking *carte blanche* to represent GIAA for an indefinite period of time notwithstanding the current bitterly-contested controversy now pending in two courts.

Finally, the instant scenario is thoroughly distinguishable from <u>Klattenhoff</u> in that the critical element of "consent after disclosure" is missing. Not only does GIAA not "consent" to the Attorney General's representation; GIAA has made it plainly known that it has no interest in having the Attorney General serve as its counsel.

The balance of the Attorney General's argument simply echoes his untenable proposition that as "Chief Legal Officer" the Attorney General somehow walks on water and is, or should be, immune from general ethical proscriptions. No extended reply is required to this preposterous assertion as the matter has been fully addressed in defendant's March 17,

5

2003 memorandum on point.[3] This Court need not *rule* on the ethical issue at hand in order to appreciate that its resolution involves local laws, not a federal question.

### III.

### THE FACT THAT THE ATTORNEY GENERAL'S SUIT WAS FILED SEVEN DAYS SOONER IS NO BAR TO DISMISSAL OF THIS ACTION ON *ABSTENTION* GROUNDS

The Attorney General hinges virtually his entire argument on the abstention issue on the fact that he won the race to the courthouse and managed to file his District Court suit against Mr. Thompson seven days before GIAA could bring suit in Superior Court. The Attorney General's reliance on this "first to file" theory is misplaced.

**A.   The Superior Court Suit is the First and Only Suit to which GIAA is a Party.**

First, the Attorney General fails to consider the fact that the Attorney General named Defendant Thompson, not GIAA, as a defendant in his District Court lawsuit. As Thompson has discussed at length in a separate motion, this is a critical and fatal error which, in and of itself, warrants dismissal of this lawsuit. More to the point, suing the wrong party has significance in terms of the determining who actually "won" the race to the courthouse.

At the present time, there is only *one* lawsuit, concerning these issues, in which GIAA is a party; and it was filed by GIAA in the Superior Court of Guam. Perhaps one day

---

[3] *Defendant's Opposition to Plaintiff's "Motion for Clarification and Rule 60(b) Motion for Relief from Order"*, (March 17, 2003) at pp. 11-14, which are hereby incorporated by this reference as if fully set forth herein.

6

the Attorney General will get around to suing the proper defendant—the only one who has the power to do what is at issue in this case—but that day has yet to come, and it might never come. The Superior Court action was the *first* lawsuit which could possibly determine GIAA's legal right to retain counsel of its choice; and, as of now, it is the *only* such suit.

**B.      An "Unseemly" Race to the Courthouse is Not a Controlling Factor.**

The impression created by the Attorney General's opposition memorandum is that federal court abstention is a "nonstarter" unless the subject state court action was filed first in time. Unfortunately for the Attorney General, no such rule can be found in the case law.

In fact, the standard set by the U.S. Supreme Court, and followed by the Ninth Circuit, is that abstention is required when the state proceedings have been initiated ***"before any proceedings of substance on the merits have taken place in federal court."*** Hicks v. Miranda, 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975) (Younger federal abstention required even though state criminal complaint was filed *after* federal suit seeking declaratory and injunctive relief); Fresh International v. Agricultural Labor Relations Board, 805 F.2d 1353, 1358 (9th Cir. 1986); Adult World Bookstore v. City of Fresno, 758 F.2d 1348, 1350 (9th Cir. 1985).

The test then is not who made it first to the courthouse but whether "any proceedings of substance on the merits have taken place in the federal court." Hicks, *supra*. Although several motions, including the instant one, are pending in this Court, the Court has quite properly undertaken to address *threshold* questions of subject matter jurisdiction, abstention and declaratory judgment dismissal <u>before</u> addressing the merits of the case.

7

Meanwhile, the Superior Court Guam case marches forward. In fact, on March 14, 2003, Judge Manibusan denied the Attorney General's request for a stay pending the outcome of the instant motions.[4] Considering these facts, it is disingenuous at best for the Attorney General to assert that Younger abstention is no longer feasible.

## C. The Superior Court Case Does Not Depend Upon the Federal Suit.

The Attorney General next argues that the instant federal action was a necessary prerequisite to the Superior Court action; and he suggests that the Superior Court action was merely a "responsive" suit. The Attorney General quipped:

> If the Attorney General had not filed suit in the District Court of Guam, what would the Airport have filed? A lawsuit permitting them to run an ad in the PDN soliciting legal services?[5]

The Attorney General's assessment betrays a fundamental misunderstanding of what is at issue in the Superior Court suit. Then, as now, the Attorney General had expressly refused, in writing, to allow GIAA to retain the Mair firm as its counsel. The objective for such a suit would have been precisely what it *currently* is; to enforce GIAA's right under Guam statutory law to hire the legal counsel of its choice.

The remedy sought in the Superior Court action is not the dismissal of the District Court lawsuit but *mandamus* relief requiring the Attorney General to perform his

---

[4] *See* Mair Declaration at ¶ 4.

[5] Opposition at p. 10.

8

statutory duty and approve the professional services agreement for the Mair Firm. Contrary to the Attorney General's contention, the pendency of a parallel federal court action is neither a precondition nor even an element of the Superior Court action. The Superior Court action is based upon the Attorney General's *conduct* (his refusal to perform his statutory duty), not his litigation strategy.

The Attorney General does not seriously dispute that the remaining Younger abstention elements are present in this case. Accordingly, dismissal is clearly mandated on abstention grounds.

## CONCLUSION

The case should be dismissed on the basis of a lack of a federal question and the Younger abstention doctrine.

Respectfully submitted this 20th day of March, 2003.

> **MAIR, MAIR, SPADE & THOMPSON**
> A Professional Corporation
> Attorneys for Defendant William R. Thompson, in his
>   official capacity as Executive Manager of the
>   A.B. Won Pat Guam International Airport Authority
>
> By_____
> **DAVID A. MAIR**

P03735.RTT

9