IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

* * *

FILED
DISTRICT COURT OF GUAM
JUN 10 2003
MARY L. M. MORAN
CLERK OF COURT

THE ATTORNEY GENERAL OF GUAM,

             Plaintiff-Appellee,

  vs.

WILLIAM R. THOMPSON, in his official
capacity as Executive Manager of the
Guam Airport Authority,

             Defendant-Appellant.

) **COURT OF APPEALS**
) **CASE NO. 03-15999**
)
)
) CIVIL CASE
) NO. 03-00008
)
)
)
)
)

THE ATTORNEY GENERAL OF GUAM,

             Plaintiff-Appellant,

    vs.

WILLIAM R. THOMPSON, in his official
capacity as Executive Manager of the
Guam Airport Authority,

             Defendant-Appellee.

) **COURT OF APPEALS**
) **CASE NO. 03-15823**
)
)
)
)
)
)
)
)
)

TRANSCRIPT OF PROCEEDINGS

BEFORE

THE HONORABLE JOHN S. UNPINGCO

**MOTION TO DISMISS**

**WEDNESDAY, MARCH 26, 2003**

ORIGINAL

Wanda M. Miles
Official Court Reporter
District Court of Guam

**APPEARANCES:**

**FOR PLAINTIFF:**

ATTORNEY GENERAL OF GUAM
DOUGLAS B. MOYLAN, Esq.
BY:  J. BASIL O'MALLAN, Esq.
Assistant Attorney General
and by:  Ms. B. Ann Keith, Esq.
Assistant Attorney General
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagatna, Guam  96910


**FOR THE DEFENDANT:**

MAIR MAIR SPADE & THOMPSON
Attorneys At Law
BY:  DAVID A. MAIR, Esq.
Suite 807, GCIC Building
414 West Soledad Avenue
Hagatna, Guam  96910

1    HAGATNA, GUAM; WEDNESDAY, MARCH 26, 2003; 3:16 P.M.

2                              * * *

3         THE CLERK:  Civil case 03-00008, the Attorney

4    General of Guam versus William R. Thompson, et cetera.

5         Counsel, please state your appearances.

6         MR. O'MALLAN:  Good afternoon, Your Honor.

7    Basil O'Mallan, Assistant Attorney General, present

8    here with the Attorney General of Guam, Douglas Moylan,

9    along with co-counsel, Ann Keith.

10        MR. MAIR:  David Mair, Your Honor, counsel for

11   Mr. Thompson.

12        THE COURT:  Good afternoon to both sides.

13        There are three motions presently before the

14   court.

15        Before I do that, there's been a motion for

16   consideration of the court's order sealing some

17   documents in this case, and I've been asked to

18   reconsider.

19        The request for reconsideration is denied.

20   The court finds that Exhibit 1 is a privileged

21   communication between client and attorney.

22   Accordingly, the court denies the Plaintiff's Rule

23   60(b) motion and modifies its March 11th, 2003 order

24   sealing Exhibit 1.

25        Plaintiff is hereby ordered to file a redacted

1　version of Exhibit 1 by tomorrow, no later than 12:00

2　noon.　Failure to do so may subject you to appropriate

3　disciplinary action by this court.

4　　　　　That issue is out of the way.

5　　　　　Now, I have some questions for each side.

6　　　　　And government, if you can come to the podium

7　for a moment here.

8　　　　　I was very interested in your opposition brief

9　wherein you try to argue that the GIAA attorney that's

10　hoped to be hired is actually an unclassified employee

11　of the Government of Guam subject to the personnel

12　laws.　And, thus, the executive manager of GIAA has the

13　authority to select this attorney.

14　　　　　Could you elaborate on what you mean by that

15　argument?　Because it seems to me the attorney hired is

16　more in the nature of a private contract, or an

17　independent contractor as opposed to somebody who's

18　going to be an unclassified employee bound by personnel

19　laws.　I don't get how you got to that conclusion.

20　　　　　MR. O'MALLAN:　Yes, Your Honor, if I may.

21　　　　　The position we're taking with respect to the

22　attorney hired by the executive manager or general

23　manager for GIAA would be an employee is premised

24　with our argument that the attorney, any attorney,

25　independent counsel for the airport must come through

1    the Attorney General's Office and he would then be an

2    Assistant Attorney General through our office.  And if

3    the airport is going to try and hire anyone outside of

4    that ambit, then that -- you can only hire that person

5    as an employee of the agency.

6            THE COURT:  So then you're going to give them

7    personnel leave, sick leave, annual leave, overtime,

8    all those panoply of benefits?

9            MR. O'MALLAN:  Yes, Your Honor, he would just

10    be a regular classified employee of the government.

11            THE COURT:  What if it's the whole law firm,

12    you give the whole law firm personnel benefits?

13            MR. O'MALLAN:  No, Your Honor.  The argument

14    will be that the general manager would only be hiring

15    one attorney for that position.

16            THE COURT:  But, you know, that makes the

17    assumption there's only one attorney.

18            Are you talking about a staff attorney being

19    hired by GIAA, or what we have in this situation, which

20    is GIAA turning to an outside law firm to perform legal

21    services for it?  Which of the two are you talking

22    about?

23            MR. O'MALLAN:  Staff attorney.

24            THE COURT:  A staff attorney on board at GIAA

25    full time?

1      MR. O'MALLAN:  Yes, Your Honor.

2      THE COURT:  I see.  But what has that got to

3  do with this particular action?  This is a law firm

4  here that seeks to be engaged -- or that the GIAA is

5  seeking to engage a firm.  How is this staff attorney

6  business coming in?  I'm sorry, I'm not -- I'm kind of

7  slow, I'm afraid.  I don't know how this comes into

8  play.

9      MR. O'MALLAN:  The argument that was made in

10 those papers, Your Honor, is that because GIAA is

11 saying that they have this right to go out and hire an

12 attorney, then they cite the relevant statute--and

13 I don't have it in front of me, but I know the court

14 does--that they have the right to a hire an attorney,

15 the portion of the Guam Code that they pulled that from

16 pertains to the hiring of employees.  And we're saying,

17 well, if they're going to use that as their authority

18 to hire an employee as an attorney, we can understand

19 that's where he's coming from, as a staff attorney,

20 then that's just a regular rank-and-file employee of

21 the Government of Guam.

22      And that's what we're saying, that he was just

23 trying to create some confusion in the authority of the

24 general manager to hire an attorney.  Whereas, in the

25 case here, what the defendants are trying to accomplish

1    is going out and hiring independent counsel.  And I'm

2    trying to distinguish staff attorney from independent

3    counsel.

4         THE COURT:  And what you seem to be

5    advocating, though, is that the staff attorney

6    position, is that what you're advocating in this case?

7    That the Attorney General be the one to furnish legal

8    services and perhaps a staff attorney in the Attorney

9    General's staff be the one to service the needs of

10   GIAA?  Is that what you're advocating in this case?

11        MR. O'MALLAN:  That's our position.

12        THE COURT:  Okay.  But what makes you think

13   that that's possible?  You've got a hiring freeze,

14   you've got all kinds of people being let go from work.

15   How are you going to manage to do that?

16        MR. O'MALLAN:  Memorandums of understanding

17   went out to all the agencies advising them -- because

18   these agencies need attorneys.  It's my understanding

19   that there are provisions in place that if we get an

20   agency that needs an additional attorney to represent

21   that agency, such as GIAA, then the funds from that

22   agency will help fund the hiring of an attorney.

23        THE COURT:  Okay.  Let's go to another aspect

24   here.  You know, this -- Are you familiar with the

25   well-pleaded complaint rule --

1       MR. O'MALLAN:  Yes, Your Honor.

2       THE COURT:  -- which provides that federal

3  jurisdiction exists only when a federal question is

4  present on the face of the plaintiff's properly pleaded

5  complaint.

6       Tell me in your complaint where you're stating

7  a federal question.

8       MR. O'MALLAN:  If I can, Your Honor.

9       (Referring to documents.)

10       I believe it's in the prayer, Your Honor.

11       THE COURT:  Okay.

12       MR. O'MALLAN:  I have Page 4 of the complaint.

13       THE COURT:  Okay.

14       MR. O'MALLAN:  Basically starting at line 10:

15       "Plaintiff prays that this court enter a

16       judgment providing that the designation of chief

17       legal officer in 48 U.S. Code, Section 1421g(d)

18       preempts any laws of Guam respecting the

19       distribution of powers."

20       THE COURT:  Now, is this an intra-governmental

21  power struggle?

22       MR. O'MALLAN:  Absolutely not, Your Honor.

23       THE COURT:  Because it would seem to me that

24  this disagreement -- now, I recall reading a provision

25  of Guam law that says the Attorney General can review

1    the contracts entered into by an agency with a law

2    firm.   But beyond that, what other Guam laws do you

3    have that give you the authority, gives the Attorney

4    General the authority to supervise the litigation?

5            I know that the Organic Act entry is a one-

6    liner, it doesn't say much at all really, you know, and

7    we have to read in a lot of things to it.   Is there

8    anything else that you can point to that gives the

9    Attorney General's Office that authority?

10           MR. O'MALLAN:   Therein lies our problem, Your

11   Honor.   That's why we're saying this is not a squabble

12   between the divisions, between the different branches.

13   What we're saying is, it's an interpretation of the

14   federal law, which is the Organic Act of Guam.

15           The Organic Act, the amendment of 1998

16   established that the Attorney General of Guam, the

17   elected Attorney General of Guam is the Chief Legal

18   Officer for the Government of Guam.   All that did, if

19   I can use a metaphor--bear with me here--that that

20   established the pasture.   We know that he is the chief

21   legal officer.

22           The parameters, the corral that he's going to

23   operate in, we don't know that.   And that's why we felt

24   that is the interpretation of a federal law, that's why

25   we believe this is the proper court for that

1    interpretation. And it is the only court that can deal

2    with this issue.

3          THE COURT: But, you know, one of the concerns

4    that the court has here is that will federal review

5    disrupt state efforts to establish coherent policy,

6    especially as it deals with the conduct of lawyers.

7    One of the things the court has to look at is not just

8    what's at stake here, but other considerations.

9          For instance, the Attorney General, he's

10   the government lawyer, he wants to be the exclusive

11   government lawyer. But what if one government agency

12   is suing another government agency, like an autonomous

13   agency suing, like GPA suing another agency, like

14   Department of Education for not paying their power

15   bills. What's the position of the Attorney General

16   then? Wouldn't that be a conflict of interest at that

17   point in time?

18         MR. O'MALLAN: The Attorney General is the

19   attorney for the Government of Guam.

20         THE COURT: Yes.

21         MR. O'MALLAN: So as such, he represents the

22   entire Government of Guam.

23         THE COURT: But how can he represent one

24   agency, and then represent the other agency when their

25   interests may well be exclusive?

1          MR. O'MALLAN:  Under the law, and I have case

2     citation if the court would allow me, there's a

3     provision where in cases where there's a clear

4     conflict, the Attorney General has the authority to

5     hire outside counsel to represent an agency.

6          THE COURT:  Okay.

7          MR. O'MALLAN:  And the Illinois Supreme Court,

8     that is the grandfather of the Guam amendment, the

9     Organic Act amendment, clearly provides for that in

10    their statutory review.

11         THE COURT:  So, if I follow that argument

12    then, then the Governor is not entitled to his own

13    legal counsel, in house?

14         MR. O'MALLAN:  Yes, Your Honor.

15         THE COURT:  The Governor is not entitled then

16    to his counsel that he's contracted for as well?

17         MR. O'MALLAN:  If you're going to take it out

18    to the absolute extreme?

19         THE COURT:  Yes, or the logic.

20         MR. O'MALLAN:  That's correct.

21         THE COURT:  Everything is in the Attorney

22    General's Office.

23         MR. O'MALLAN:  That's correct, Your Honor.

24         THE COURT:  But if the government is a multi-

25    headed animal, you know, I still don't understand how

1   the Attorney General can logically maintain that he is

2   the lawyer, the only lawyer for the Government of Guam.

3        You know, you're saying there's an out because

4   they can contract out for outside counsel. Okay. And

5   you're trying to say, well, that's the exception to the

6   rule. And the rebuttal to that is that, no, it might

7   not be the exception to the rule, it may well become

8   the rule. The exception may swallow the rule, given

9   what's happening in the local economy here where

10  various government agencies, for instance, are not

11  paying their power bills.

12        And how about local mayors not paying their

13  vendors bills, who's going to -- the Attorney General

14  is going to be fighting against themselves or is

15  constantly going to be hiring outside counsel?

16        MR. O'MALLAN: No. Your Honor, if I could.

17  We recognize there are going to be times in the future

18  where we're going to have difficult situations as you

19  have described. We recognize that. How those are

20  going to be addressed, to be perfectly frank with the

21  court, we're still learning.

22        THE COURT: Well, I have another question for

23  you. See, if the court were to take this case, how can

24  I keep from infringing on these matters, these ethical

25  matters that should properly be in the courtroom of the

1    Guam Supreme Court?

2           In other words, would I be -- would this court

3    be disrupting Guam's efforts to establish that coherent

4    policy with regard to attorney conduct?  And I'm back

5    to that first question.

6           MR. O'MALLAN:  No, Your Honor.  Because all we

7    are asking this court is to interpret what Chief Legal

8    Officer means.  That's in a nutshell, that's all we're

9    asking; that's all we've been asking.  We're not asking

10   for an application of local laws or inter-department

11   squabbles, we're just saying, all we were told by

12   Congress is the Attorney General is the Chief Legal

13   Officer of the island, of the Government of Guam.

14          And like you said, there's no dressing to

15   that, there are no qualifiers, there's no restrictive

16   language, it's just chief legal officer of the

17   Government of Guam.

18          THE COURT:  But isn't this an issue that is

19   an essentially local issue?  In other words, the

20   Legislature has been making all these laws already with

21   respect to the autonomous agencies.  Isn't the more

22   proper forum the Superior Court of Guam?

23          MR. O'MALLAN:  No, Your Honor.  The

24   Legislature has been making laws, most of the laws,

25   especially those laws cited by defense in their moving

1  papers, predate the amendment of 1998. And we're

2  saying that with the amendment of 1998, that is now the

3  later -- the later in law provision that must be, that

4  now controls. Exactly how it's going to be applied, we

5  don't know. But the interpretation of the federal law,

6  we believe, has to be done here.

7       THE COURT: Okay. Anything else you wish the

8  court to -- that you want to point out to the court?

9       MR. O'MALLAN: No, I'll wait for defense to

10 make his motions and I'll come back and visit you, Your

11 Honor.

12      THE COURT: Thank you.

13      MR. O'MALLAN: Thank you.

14      THE COURT: Okay. Defense?

15      MR. MAIR: May I approach the podium, Your

16 Honor?

17      THE COURT: Yes, please do.

18      MR. MAIR: Your Honor, I wanted to try and

19 address some of the court's questions if I could.

20      THE COURT: No, don't. I have a separate set

21 of questions for you.

22      MR. MAIR: I apologize.

23      THE COURT: I already know where the arrow is

24 headed on those questions that I've asked. But I need

25 to ask you separate questions. Okay?

1          MR. MAIR:  Yes, sir.

2          THE COURT:  Now the first thing is that this

3   indispensable party business under Rule 19, plaintiff

4   can easily amend his pleading to include the GIAA

5   board, can't it?  I mean, there's nothing -- it's

6   liberal, those are liberally granted, aren't they?

7          MR. MAIR:  Actually, Your Honor, we would

8   respectfully submit that it would be inappropriate.

9   And I've placed a document on the screen to grant

10  amendment for, really, three different reasons.

11         First of all, Your Honor, in the cases we

12  found, there has been a motion to amend that has been

13  filed by the parties.

14         THE COURT:  Yes.

15         MR. MAIR:  There's no such motion been filed

16  that's --

17         THE COURT:  Is it too late to include that?

18         MR. MAIR:  Well, Your Honor, we're here moving

19  to dismiss the case.  They're aware of the problem,

20  which I can go into in more detail, because I'd really

21  like to discuss this employee issue.

22         THE COURT:  Okay.

23         MR. MAIR:  And they still haven't filed a

24  motion to amend.  And we have a motion to dismiss in

25  front of the court today, and they've not filed a

1   motion to amend.

2       Second, Your Honor, we believe the Attorney

3   General is held to a higher standard in his pleadings.

4   The Attorney General himself cited the Gray case.  Now,

5   this is his case that he cited.  And what the court

6   said in that case is that government attorneys are also

7   generally held to a higher standard because of the fact

8   that their position with the government lends itself to

9   publicity and notoriety.  So we don't have here just

10  your normal litigant in front of the court.

11      And then, third, and we believe this is the

12  important issue, Your Honor, we truly believe at the

13  airport that the reason that the board was not named as

14  a defendant was, frankly, a transparent attempt to

15  avoid the application of Rule 1.7 of the Rules Of

16  Professional Conduct which says you can't represent

17  someone and then bring -- be suing them at the same

18  time.

19      And the reason we say this is because of

20  language used by the Attorney General in his motion

21  for preliminary injunction where he said, quote:

22      "The Attorney General also seeks the court's

23          permission to represent the airport's legal

24          interests in the interim on matters unrelated to

25          this case while this action is ongoing against

1    defendant.  Defendant is a government official who

2    is being sued to comply with the laws, and that

3    official is not the Government of Guam agency

4    which has not been sued."  Close quote.

5         THE COURT:  Did you memorize that?

6         MR. MAIR:  Actually, I have it right here on

7    the screen.

8         THE COURT:  You were reading on the screen.

9         MR. MAIR:  I was reading on the screen.

10        THE COURT:  I was kind of impressed for a

11   moment.

12        (Laughter.)

13        MR. MAIR:  Well, Your Honor, here is my point.

14   We really believe they were aware from the very

15   beginning the board had the authority to appoint.  They

16   also became aware of, well, how can we fairly represent

17   them if we're suing them, so they had said, well, let's

18   just sue the executive manager and then we can still be

19   representing the airport.

20        We don't believe it would be appropriate for

21   the Court to basically condone or get involved with

22   the transparent attempt to circumvent the Rules of

23   Professional Conduct.  So we have the government held

24   to a higher standard --

25        THE COURT:  Well, your argument is not lost

1   on me.  I've already been asking the same issue of the

2   other side a few moments ago.

3          MR. MAIR:  And I will admit this, Your Honor.

4   It is within the court's discretion to permit them to

5   amend, I can't argue that with Your Honor.

6          I would respectfully submit that the court

7   should follow the Los Angeles District Court ruling in

8   the Baldwin case where they did not permit amendment

9   when they sued the wrong party because of other

10   factors, some very similar to the ones we're discussing

11   here.

12          THE COURT:  Well, let's move on.  I've got

13   some other questions I need you to resolve in my mind.

14          MR. MAIR:  Yes, sir.

15          THE COURT:  As you know, when you read these

16   pleadings, it's like a puzzle you're putting together,

17   sometimes there's key pieces that might be missing, so

18   that you can make an intelligent decision.  And even

19   if you make one, people will always disagree with you,

20   they'll think it's an unintelligent decision.  But

21   that's neither here nor there.

22          Now, let's look at this Republican Party case.

23   Now, it seems to me in that case that the plaintiff

24   there asserted that the Governor was not fulfilling his

25   Organic Act duty to faithfully execute the laws of

1    Guam.  Okay.  In defense, the Governor raises an

2    Organic Act issue.  Now, it seems to me that the Ninth

3    Circuit reversed on the basis that raising an Organic

4    Act defense cannot confer federal question

5    jurisdiction.  What is your response to that?

6         MR. MAIR:  Well, Your Honor, I don't think

7    it's that limited because of the -- of other quotes in

8    that decision which are on the screen now.  And also,

9    because of the subsequent ruling in the Gutierrez

10   versus Pangelinan case.

11        I believe that the Republican Party case is

12   similar to this case in two or three very material

13   respects.  In both cases, the parties were seeking

14   declaratory judgment and injunction.  In both cases,

15   you have the plaintiff alleging a violation of the

16   Organic Act.  In this particular case they say there's

17   a violation because of the clause about Chief Legal

18   Officer; in that other case there was an allegation

19   that he was violating the Organic Act by not enforcing

20   the laws of Guam.  Okay.  Now, that was the alleged

21   federal question jurisdiction.

22        In both of these cases a controversy existed

23   under the Organic Act about a dispute over the scope of

24   the respective parties' powers under the Organic Act.

25   And this is really I think the key language, and it's

1   at the bottom of the page, Your Honor.  The Ninth

2   Circuit said:

3          "If anything, the intra-governmental nature

4       of the dispute makes invocation of federal

5       jurisdiction even less appropriate."

6          And, Your Honor, the reason I think that's

7   important is because of what the Ninth Circuit said

8   in the subsequent Gutierrez decision, where the Ninth

9   Circuit came out, and in that particular case, it

10  worked it's way through the local court system, they

11  emphasized the importance of the Guam Supreme Court's

12  role in shaping the interpretation and application of

13  the Organic Act.

14          THE COURT:  Yes, but the Pangelinan case

15  does not seem to me to address federal subject matter

16  jurisdiction.

17          MR. MAIR:  No, I agree with Your Honor.

18          THE COURT:  And you're relying on dicta in

19  that case wherein the Ninth Circuit, in determining

20  what standard of review to apply stated that, "The

21  congressional promise of independent institutions of

22  government would be an empty one if we do not recognize

23  the importance of the Guam Supreme Court's role in

24  shaping the interpretation and application of the

25  Organic Act."

1    And so, I don't know that that's as strong an

2  authority as you would urge.

3         MR. MAIR: Your Honor, I agree with you.

4         Here is what we think the Ninth Circuit is

5  trying to say. Okay. We believe that when you read

6  the -- Well, first of all, Your Honor, I don't want to

7  misrepresent things to you. The Gutierrez case versus

8  Pangelinan did not deal with federal question, I'm not

9  misrepresenting that to you. It wasn't even in the

10  Federal Court system.

11         But we believe what the Ninth Circuit is

12  trying to say when you read those two cases together,

13  because both of them are Federal Court decisions by the

14  Federal Court system and where they talked about the

15  Organic Act, what the Ninth Circuit is trying to say is

16  that, look, when it comes to interpreting the Organic

17  Act dealing with intra-governmental disputes, disputes

18  between the Attorney General and the Governor, between

19  the Legislature and the Attorney General, between the

20  Legislature and the Governor, when they're dealing with

21  intra-governmental disputes about power struggles under

22  the Organic Act, that it is more appropriate to allow

23  those to first flow through the local court system in

24  order to allow them to develop a body of local law

25  about it, and then we have the right to review that

1    *de novo* anyway from the Guam Supreme Court, and if

2    we're going to -- even though they say *de novo*, we're

3    going to give some deference to the Guam Supreme

4    Court's interpretation of the Organic Act.

5         We think the problem they had in this case,

6    Your Honor, is the Republican Party case, because is

7    this case an intra-governmental power struggle?  In all

8    deference to opposing counsel, he says it's not; Your

9    Honor, please, okay, you have the Attorney General, is

10   he part of the government of the Guam.  Yes.  Okay.  He

11   claims he has certain powers.  The Legislature claims

12   it has certain powers.  He says that the Organic Act

13   controls this.  It's a classic Republican Party of

14   Guam.  And it just falls squarely within that case.

15        In both cases, you have plaintiffs alleging

16   violation of the Organic Act, plaintiffs arguing about

17   power struggle in the Organic Act, in an intra-

18   governmental power struggle.

19        THE COURT:  Well, I appreciate that.  But

20   let's shift to another area here.  And this area that

21   -- see, this court is being very careful in terms of

22   putting its nose under a tent where it doesn't belong,

23   and so I wanted to cover some of these things.

24        There's a similar action in the Superior Court

25   of Guam, and it appears that there have been some

1  proceedings of substance on the merits. Could you

2  elaborate on that a little bit? From what I can

3  gather, Judge Manibusan on March 14th, 2003, denied the

4  Attorney General's request for a stay of the Superior

5  Court action.

6        MR. MAIR: That is correct.

7        THE COURT: On the outcome of these motions.

8        Is that all that it's progressed to there, or

9  are there more things that I might not be privy to or

10 cognizant of?

11       MR. MAIR: Well, here's what has happened,

12 Your Honor. A writ was filed and the Court granted an

13 alternative writ and issued an alternative writ, and

14 said, appear before me on March 28th -- either do this

15 or appear before me and show cause why you should not.

16 So this matter is going to be wrapped up in the

17 Superior Court in 48 hours. We're going to be in front

18 of the Superior Court on the merits of the case, not

19 dealing with procedural issues about jurisdiction, but

20 on the merits of the controversy.

21       After the writ was filed, the Attorney General

22 went before the local court system, appeared in front

23 of Judge, The Honorable Joaquin Manibusan, asked to

24 have the matter stayed because they argued that, oh,

25 no, this really should be in Federal Court.

1    Judge Manibusan denied it. And I could file
2  the transcript with the court and you could read it
3  yourself, but what he said at the end of the
4  transcript, and I believe there would be no argument
5  about this, is that:  I'm denying this on the grounds
6  that I really don't think it should be in Federal Court
7  to begin with, I see this as a local issue and it
8  really should be over in the local court system, so
9  I'm denying your stay.  That's really what's gone on.

10    And, Your Honor, let me say this much.  This
11  is our abstention argument which is wholly distinct
12  from the federal question jurisdiction.  Even assuming
13  there's federal question jurisdiction, Your Honor,
14  which we don't think there is on the Republican Party
15  case, but even assuming there is, we think the court
16  should nonetheless abstain because of the Ninth
17  Circuit's ruling in Fresh Intern case, which is a 1986
18  case we cited to the court, because you have a state
19  court proceeding that is ongoing.  Okay.  There's no
20  doubt about that.

21    The only argument they have is they filed five
22  days before; we cited Supreme Court and Ninth Circuit
23  cases for the proposition that doesn't matter.  It
24  deals with an important state interest, and they have
25  an opportunity to raise the federal questions in local

1 court, because our local court can interpret the

2 Organic Act.

3      You know, another really interesting thing

4 about _Fresh Intern_ case, Your Honor, is not only is

5 that an abstention case, but that was where they were

6 raising a federal preemption argument. The plaintiff

7 in the _Fresh Intern_ case in the Ninth Circuit filed it

8 in Federal Court and said, look, things are going on

9 over here in the local court system, we believe it's

10 all federally preempted, that there's federal question

11 jurisdiction, and the Ninth Circuit said, well, yes, so

12 what, we're still abstaining from this under the

13 _Younger_ doctrine and walking away from it.

14      THE COURT: Okay. Anything else?

15      MR. MAIR: Well, I think the point I want

16 to make about this, Your Honor, is matters have

17 substantially progressed in the Superior Court and

18 are much closer to being resolved there than they are

19 here, only because here we're still talking about

20 jurisdiction, Your Honor.

21      I had a few more points, not on that, though,

22 Your Honor. If you have other questions.

23      THE COURT: Okay. What is your opinion as to

24 whether this is forum shopping?

25      MR. MAIR: Well, you know, Your Honor, I have

1    to admit I've known Mr. Moylan a long time and have a

2    lot of respect for him. And in fact, Your Honor, I

3    actually voted for Mr. Moylan, okay, so I mean, I have

4    a lot of respect for this man.

5         THE COURT: But --

6         MR. MAIR: I feel, as far as it being forum

7    shopping I will say this much. I have been a little

8    mystified as to the insistence of being in Federal

9    Court when, number one, you have an elected Attorney

10   General of Guam; you would think he would want to be

11   in the local court system. I believe there's some

12   serious questions about federal jurisdiction.

13        I really don't fully understand it, Your

14   Honor. But let me say this much. I'm going to assume

15   that there are better motives than forum shopping.

16        THE COURT: Okay. Fair enough. Thank you.

17        Anything else you want to cover?

18        MR. MAIR: Just a couple of things, and I

19   promise I will only take a few minutes, Your Honor.

20   I'm aware on your patience here.

21        THE COURT: Okay.

22        MR. MAIR: First of all, Your Honor, we really

23   believe that the proper defendant, assuming this case

24   went forward at all, would be the board. And this

25   business about our law firm being an employee, Your

1    Honor, that entire argument is based upon one single

2    statute which says the executive manager can hire

3    employees. In order to make it clear, though, Your

4    Honor, that we were not employees, we actually placed

5    in the contract a cite to that statute which says the

6    executive manager can hire employees, and then we

7    placed a provision in there, which I have on the

8    screen, right out of our contract, which says:

9         "The attorney contracts herein with GIAA as

10        independent contractor, and as neither an employee

11        nor an agent of GIAA, for the purpose of

12        performing the services hereunder..."

13        I mean, this business that we're an employee

14    is right out of the rabbit's hat because we were hired

15    by the board. The board has a statutory authority to

16    hire us. I don't understand that argument.

17        Mr. Thompson is the improper defendant, and we

18    don't think the case should be amended to bring him in.

19        On the jurisdiction issue, Your Honor, first,

20    on the federal question jurisdiction, I've already

21    discussed it and I won't bore you any more with it.

22    Second, we had the abstention argument based on the

23    Ninth Circuit ruling in _Fresh Intern_, it is based on

24    the earlier _Younger_ decision in the Supreme Court.

25        But our third argument, Your Honor, is really

1    a discretionary one, and that is, that declaratory

2    relief is just simply inappropriate.  Even assuming,

3    Your Honor, that the court felt it had federal question

4    jurisdiction, and even assuming the court did not want

5    to have mandatory abstention under the <u>Younger</u>

6    doctrine, we still believe that this case is not

7    appropriate for declaratory relief because, number one,

8    under the Declaratory Relief Act the court is not

9    required to issue declaratory judgments; number two,

10   the district courts regularly dismiss when issues

11   overlap the state proceedings.  Ninth Circuit authority

12   for that point.

13         And number three, federal courts are reluctant

14   to have important issues of public policy decided in

15   declaratory judgments.  We qualify under all of those

16   requirements.

17         Your Honor, in sum, we believe that this is an

18   intra-governmental dispute, it implicates a number of

19   local laws we have in Guam.  It involves the power

20   between the Legislature, the Executive, and the

21   Attorney General, and it would be most appropriate

22   to resolve this in our local court system.

23         And I want to close by quoting Mr. Troutman,

24   okay, who was one of the authors of the legislation

25   that went in front of the U.S. Congress.  In a letter

1   dated September 2, 1997, Mr. Troutman, who's talking to

2   Congressman Underwood, and this is attached to their

3   motion for preliminary injunction, Your Honor, he says:

4        "There are a number of local problems

5   rightfully the subject of local legislation..." in

6   other words, rightfully the subject of local

7   legislation, "... that need addressing.  Such include

8   the relationship between the Attorney General and

9   counsel assigned and/or hired by individual agencies,

10  their funding, et cetera."  Close quote.

11       So, Your Honor, we believe that when you get

12  right down to the end of the day in this case, the U.S.

13  Congress said, okay, you're Chief Legal Officer, but

14  then it was left up to the local Legislature to resolve

15  these matters that are rightfully the subject of local

16  legislation, such as the relationship between the

17  Attorney General and counsel for these agencies.

18  Guam's Legislature has resolved those issues and has

19  passed statutes.

20       And the argument that, oh, well, these

21  statutes predate the 1998 amendment, they may predate

22  the 1998 amendment, Your Honor, but the phrase "Chief

23  Legal Officer" was in there all along.  So, this is a

24  matter that is rightfully the subject of local

25  legislation.

1          And, Your Honor, one more point.  If this

2     court starts getting involved in every dispute about

3     the Attorney General's powers and what powers he has

4     over the Executive, the Legislative, the Judicial

5     Branch--Mr. O'Mallan said that we're working our way

6     through this--you're going to be a very busy person,

7     Your Honor, because in the state court system there are

8     regularly controversies between the Attorney General

9     and the other branches.  It's sort of the nature of the

10    beast.  And we don't think it's appropriate for the

11    federal system to involve itself in this matter.

12          Thank you, Your Honor.

13          THE COURT:  Thank you.

14          Government, I'd like you to visit again.  Let

15    me hear your responses.

16          MR. O'MALLAN:  Thank you, Your Honor.

17          If I can, I'd like to quickly touch base with

18    one of the last statements that the defendant made.

19          The language "Chief Legal Officer" was not in

20    the Organic Act prior to 1998; that was the amendment.

21    And that was the first and only time it's appeared in

22    the language.  I want to just make sure that's clear.

23          As far as once it's determined the parameters

24    of the office, we understand there will be a lot of

25    local laws that will be applied to it.  That's when

1    we go to the local court.  But until we make a

2    determination and establish the parameters, that

3    question has to be answered here by this Court.

4            Now, if the Court will allow me to respond

5    briefly to some of the matters that were raised in

6    defendant's argument.  With respect to the federal

7    question, I believe it is very clear this case can be

8    easily distinguished from the Republican Party case.

9    The Republican Party case was one of those where, once

10   again, they were asking the court to interpret a local

11   law, which is I believe Public Law 25, I believe it was

12   146.  That's not before this Court.  We're not asking

13   the Court to look at any local law, we're only asking

14   the Court to look at the federal law.

15           The cases actually that are more on point in

16   this matter are Ada versus Gutierrez, and then right on

17   point is Bordallo versus Baldwin, which are cited.

18           And if the court will allow me, Ada versus

19   Gutierrez, the holding, and that's from the Supreme

20   Court was, the only thing there was to resolve a split

21   between the Ninth Circuit's interpretation of the

22   Organic Act of Guam.  And there again, that clearly

23   raised a federal issue, is the interpretation Organic

24   Act, and that is what we're here for today.

25           Bordallo versus Baldwin -- (pause) -- reading

1   from page 934 of <u>Bordallo versus Baldwin</u>, the question

2   presented to us then is where the Organic Act -- where

3   the governor is specifically charged by the Organic Act

4   with the responsibility for establishing, maintaining,

5   and operating the hospitals, the Legislature may,

6   within the terms of the Act, reduce his function with

7   respect to the governance of the hospital; and the

8   court held it may not.

9       And the reason I cite this is because the

10  proposition that is being raised by defense is that,

11  well, we have the Organic Act, but the Guam Legislature

12  can now come in here and make inroads into the Organic

13  Act.   That is clearly impermissible.

14      In the drafting and in the Congressional

15  Record which is before the Court, it is very clear that

16  when the amendment was being argued in Congress, the

17  Attorney General's Office was going to be insulated

18  from both the Executive and the Legislative branches.

19  And <u>Bordallo versus Baldwin</u> makes it very clear that

20  once the Organic Act has spoken, there cannot be any

21  diminishing of the powers granted by the Organic Act.

22      And that's why in this case, that's why we

23  cite it in here is because in this case, all the

24  amendment says is, the Attorney General is now the

25  Chief Legal Officer for the Government of Guam.

1     THE COURT: But if the Organic Act has spoken,

2     why wasn't Chief Legal Officer defined in the Organic

3     Act? Is there anything you found in the legislative

4     history of rebutting that position that you find, or

5     that gives substance to that particular phrase?

6     MR. O'MALLAN: If the Court would allow, I

7     would like to read from an Illinois case, Hoeffer

8     versus State of Illinois, and the citation is, it's a

9     Westlaw citation, it's 1978 W.L. 50628, and that

10    states:

11          "It is established law in the State of

12          Illinois that the Attorney General is the law

13          officer of the people as representative of the

14          state government and its only representative in

15          the courts. Pursuant to his position as the

16          state's sole legal officer, the Attorney General

17          has the power to permit other attorneys to assist

18          him to perform his responsibilities."

19          And that's reading from page 2 of the

20    decision.

21          We would argue that as Chief Legal Officer,

22    he does have the unilateral right to hire or fire

23    independent counsel.

24          Defense in their motions, on Page 3 of the

25    defense motions with respect to the federal question

1  says, no, they don't think it does, but that is clearly

2  contrary to Hoeffer versus Illinois. And I cite the

3  Illinois case because that is the grandfather to the

4  Organic Act amendment.

5        Defense counsel has made many references to

6  local law and its application to the Organic Act.

7  That's smoking mirrors, Your Honor. That's not what

8  we're here for. We're here asking the court only to

9  interpret the Organic Act.

10        I will say in the Republican Party case, it

11  very clearly illuminates this position, where matters

12  pertaining to interpretation of the Organic Act give

13  rise to the federal question where the District Court

14  shall have original jurisdiction. That was the holding

15  in the Republican Party case.

16        We use that, not to show the similarities

17  between this case and the Republican Party case, but to

18  stand on the premise that that is why this Court is the

19  proper forum. It's not forum shopping. It is our

20  heartfelt belief only the Federal Court can interpret

21  the Organic Act of Guam, which is our Constitution.

22        THE COURT: Thank you.

23        MR. O'MALLAN: Thank you, Your Honor.

24        THE COURT: Anything else, defense?

25        MR. MAIR: Could I just have five minutes,

1   Your Honor?

2             THE COURT:  Shoot.

3             MR. MAIR:  I'll just limit it to that.

4             Real briefly, Your Honor.

5             Number one, Ada versus Gutierrez and Bordallo

6   versus Baldwin, both of those Ninth Circuit decisions

7   predate the Republican Party case.  And in Republican

8   Party, the Ninth Circuit actually said that Bordallo

9   versus Baldwin didn't even address the federal question

10  issue, so therefore wasn't precedent.

11            Second, there's been no mention whatsoever

12  by the Attorney General about the strict standard of

13  federal preemption.  In order to have federal

14  preemption, you have to have an unequivocal conflict,

15  it has to be clear and unequivocal that federal law was

16  intended to supersede it.  The only phrase they had is

17  Chief Legal Officer.  There's nothing in that phrase

18  that prohibits the Guam Legislature from allowing all

19  autonomous agencies to have their own counsel.

20            Number three, the Illinois case.  The court

21  asked this question:  Well, is there anything in the

22  legislative history that would define this?  The answer

23  was the Illinois case.  That's not the legislative

24  history.

25            There are only two phrases in the legislative

1  history that deal at all with counsel for autonomous

2  agencies.  One is a letter dated July 16th, 1997, where

3  Mr. Troutman said, quote:  "I do not see this

4  language," he's talking about the language you're

5  talking about, "as eliminating the use of outside

6  counsel for various agencies, but would keep a check

7  on having many and diverse legal empires within the

8  Government of Guam."  That's the one phrase.

9          The only other phrase is the one I just read

10  to you, Your Honor, and I'm not going to bore you with

11  it again.  So the only two phrases in the legislative

12  history clearly imply that, well, this is a matter that

13  is rightfully of local legislation.

14          I'll close with that, Your Honor.

15          THE COURT:  Okay.

16          MR. MAIR:  Thank you very much.

17          THE COURT:  The court is ready to rule.  And

18  the court will give its ruling here, to be followed by

19  a written legal opinion that more clearly enunciates

20  and perhaps more sharply crystallizes the court's

21  rationale.

22          The first motion is the motion to dismiss

23  for failure to name the proper defendant and join

24  indispensable party.  The defendant requests this court

25  to dismiss the complaint against Mr. Thompson on the

1   basis that plaintiff has failed to name as a party to

2   this action the Board of GIAA, which is charged with

3   the execution of the statutory right to appoint legal

4   counsel other than the Attorney General.  Defendant

5   contends that the Board of GIAA is clearly the proper

6   party defendant, not Mr. Thompson, who does not have

7   the statutory authority to appoint an independent

8   attorney, or the capacity to sue or be sued.

9        Pursuant to Section 12(b((7) of the Federal

10  Rules of Civil Procedure, the court may dismiss a claim

11  for failing to join a party under Rule 19.  And the

12  court incorporates by reference the text of Rule 19,

13  which I shall not read.

14       In this case the plaintiff (sic) maintains

15  that this action cannot proceed without naming GIAA as

16  a defendant because it is GIAA through its board, and

17  not through Mr. Thompson, that has the statutory right

18  to appoint an independent legal counsel.

19       I agree that GIAA is an indispensable party,

20  and pursuant to Federal Rule of Civil Procedure 19(a)

21  can be and should ordered to be made a party to this

22  suit.

23       The plaintiff's opposition to this motion is,

24  as the defendant describes, largely irrelevant.  The

25  court agrees with that.  The plaintiff's opposition

1    brief attempts to argue that the GIAA attorney is

2    actually an unclassified employee of the Government of

3    Guam subject to the personnel laws, and thus the

4    executive manager of GIAA has the authority to select

5    said attorney.

6         The court disagrees with this argument.  What

7    the defendant and the GIAA Board were attempting to do

8    was to enter into a contract for legal services, not

9    hire in-house counsel who would be an unclassified

10   employee.  Thus, the personnel laws have no role in

11   this dispute.

12        Plaintiff's failure to join an indispensable

13   party is not fatal to this action, in light of Rule 19

14   and the liberal policy permitting amendments to a

15   party's pleading pursuant to Rule 15(a) of the Federal

16   Rules of Civil Procedure.  Accordingly, the court

17   denies the motion to dismiss and permits the defendant

18   -- will permit the plaintiff to amend his complaint to

19   join the GIAA Board.

20        The second motion to dismiss is actually

21   twofold.  First, the defendant argues that the case

22   should be dismissed because of lack of federal question

23   over the cause of action.  Second, if the court

24   determines that a federal question is presented, the

25   defendant contends that dismissal is warranted based

1  upon the doctrine of federal abstention.

2      The defendants assert that just like in the

3  case of Republican Party of Guam versus Gutierrez, 277

4  F.3d 1086, this case does not raise a federal question,

5  and thus dismissal is warranted.  In the Republican

6  Party case, however, the Ninth Circuit discussed the

7  basic concepts of federal question jurisdiction.

8      Quote:  "The district courts shall have

9          original jurisdiction of all civil actions arising

10         under the Constitution, laws, or treaties of the

11         United States. "

12     That's in 28 U.S.C., Section 1331.

13     Furthermore, a case arises under federal law

14 either, first, where federal law, "creates the cause of

15 action," or second, "where the vindication of a right

16 under state law necessarily turns on some construction

17 of federal law."  Franchise Tax Board versus

18 Construction Laborers Vacation Trust, 463 U.S. 1.

19     The Ninth Circuit went on to state that "the

20 presence or absence of federal question jurisdiction

21 is governed by the well-pleaded complaint rule," which

22 provides that federal jurisdiction exists only when a

23 federal question is present on the face of the

24 plaintiff's properly pleaded complaint.  The well-

25 pleaded complaint rule applies to declaratory judgment

1  cases, such as the present one. And this is from the

2  Republican Party case, 277 F.3d 1089.

3          Thus, the court must begin its analysis by

4  examining the complaint and scrutinizing the relief

5  plaintiff seeks. In the present case, the face of

6  the complaint alleges that jurisdiction arises under

7  48 U.S. Code, Section 1421g(d) of the Organic Act,

8  which functions as Guam's constitution.

9          The complaint further asserts that a

10 controversy exists under the Organic Act because GIAA,

11 in its attempt to enter into a contract with private

12 attorney to provide it with legal services, is

13 hindering the plaintiff's authority as the "Chief

14 Legal Officer of the Government of Guam" to supervise

15 litigation conducted by private counsel representing

16 agencies and departments of the Government of Guam.

17         Plaintiff thus asks this court to declare here

18 that the designation of Chief Legal Officer under the

19 Organic Act preempts any local law which authorizes

20 autonomous agencies to hire their own lawyers and

21 litigate independently of the Attorney General.

22         The defendant contends that this type of

23 declaratory action cannot support federal question

24 jurisdiction. The defendant states that, quote:

25         "What the Attorney General is asking for in

1          the present case is only a slight variation from

2          what the Guam Legislature asked of this court in

3          Republican Party."

4          The defendant's reliance on Republican Party,

5   however, is unavailing.  In the Republican Party case

6   the plaintiff sought to enforce a local statute which

7   required the Governor to choose at least three of Guam

8   Election Commission members from a list supplied by the

9   Republican Party.  The plaintiff there asserted that

10  the Governor was not fulfilling his Organic Act duty to

11  faithfully execute the laws of Guam.  In defense, the

12  then Governor raised an Organic Act issue.  The Ninth

13  Circuit reversed on the basis that raising an Organic

14  Act defense cannot confer federal question

15  jurisdiction.

16          The plaintiff contends that this is not merely

17  an intra-governmental power struggle.  Instead, this

18  lawsuit seeks to enjoin an action by a government

19  official on the basis that the action does not comply

20  with federal law, specifically since the Organic Act

21  dictates that the Attorney General shall be the Chief

22  Legal Officer of the Government of Guam.

23          Here, the defendant has raised local law as a

24  defense.  Thus, plaintiff contends that this is not a

25  power struggle but a legal issue involving

1   interpretation of the Organic Act, a federal law.

2          The court agrees with the plaintiff.  As

3   stated by the Supreme Court in <u>Franchise Tax Board</u> and

4   by the Ninth Circuit in <u>Republic Party</u>, here the

5   vindication of a right under local law necessarily

6   turns on construction of the Organic Act, a federal

7   law.  The Attorney General of Guam must seek to

8   restrain an action of a local official relying on his

9   authority created by the local law on the basis that

10  such action is in disregard of the Organic Act.

11  Accordingly, this court has subject matter jurisdiction

12  over this action as it arises under a federal law.

13         Equally unavailing is the defendant's reliance

14  on the case of <u>Gutierrez versus Pangelinan</u>, 276 F.3d

15  539, to support its proposition that the court has no

16  federal jurisdiction over actions such as this, which

17  arise out of the Organic Act.  Specifically, the

18  defendant relies on dicta in the <u>Pangelinan</u> case

19  wherein the Ninth Circuit, in determining what standard

20  of review to apply, stated, quote:

21         "The congressional promise of independent

22  institutions of government would be an empty one if we

23  did not recognize the importance of the Guam  Supreme

24  Court's role in shaping the interpretation and

25  application of the Organic Act." <u>Pangelinan</u>, 276 F.3d

1  547.

2      The defendant asserts that if this court

3  exercises jurisdiction over this matter, there is no

4  meaningful way for the Guam Supreme Court to exercise

5  its role in, "shaping the interpretation and

6  application of the Organic Act." The Pangelinan case,

7  which does not address federal subject matter

8  jurisdiction, is irrelevant to this present inquiry.

9      Having found that this court has subject

10 matter jurisdiction over the action, the next issue is

11 whether the court will decline to proceed, though it

12 has jurisdiction. The courts have recognized various

13 abstention doctrines which overlap at times. The

14 parties in this case have only discussed the doctrine

15 of abstention established in Younger versus Harris,

16 401 U.S. 37. However, the court has also analyzed the

17 Burford-type abstention doctrine enunciated in Burford

18 versus Sun Oil Company, 319 U.S. 315.

19     The doctrine of abstention established in

20 Younger requires that a federal court not interfere

21 with an ongoing state judicial proceeding that

22 implicates important state interests where there is

23 an  adequate opportunity to raise federal claims in

24 the state proceeding. In Younger, the Supreme Court

25 adopted a strong federal policy against Federal Court

1    interference with pending state judicial proceedings.

2    See H.C. versus Koppel, 203 F.3d 610.  Quote:

3         "Younger and its progeny express equitable

4    principles of comity and federalism.  They are designed

5    to allow the state an  opportunity to 'set its own

6    house in order' when the federal issue is already

7    before a state tribunal."  *Ohio Bureau of Employment*

8    *Services versus Hodory*, 431 U.S. 471.  Quote:

9         "Absent extraordinary circumstances, Younger

10   abstention is required if the state proceedings are,

11   one, ongoing; two, implicate important state interests;

12   and three, provide the plaintiff an adequate

13   opportunity to litigate federal claims." Columbia Basin

14   Apartment Association versus City of Pasco, 268 F.3d

15   791.

16        In this case, the defendant asserts that all

17   three requirements are met.  First, there's an ongoing

18   action in the Superior Court which presents identical

19   issues to those being raised in this case.  The

20   defendant asserts that the Superior Court action has

21   progressed further than the action in this case, since

22   the Alternative Writ of Mandate in that case commanded

23   the Attorney General to perform his statutory duties

24   and permit GIAA to retain independent counsel of its

25   choice, as allowed under Guam law, or show cause on

1   March 28, 2003, why he has not done so.

2           Second, there's no doubt that the proceedings

3   in both federal and local court implicate important

4   local issues, that is the scope and powers of the

5   Attorney General, the Legislature, the autonomous

6   governmental agencies, and the Attorney General's

7   responsibility to establish legal policy for the

8   Government of Guam.

9           Third, the Superior Court action, which as

10  previously discussed raises identical issues to those

11  raised in this suit, provides the plaintiff with an

12  adequate opportunity to litigate the claims under the

13  Organic Act.

14          Plaintiff, on the other hand, argues that

15  Younger abstention is not warranted in situations such

16  as this where the federal action was filed before an

17  identical state action is brought.  Plaintiff asserts

18  that for the simple reason that unfortunately for

19  defendant, there was no pending or ongoing state

20  proceeding, the doctrine of abstention cannot apply.

21          However, the defendant notes in its reply

22  brief that the test is not who made it first to the

23  courthouse, but whether, quote, "any proceedings of

24  substance on the merits have taken place in the federal

25  court."  Hicks versus Miranda, 422 U.S. 332.

1    In this case, while this Court has decided to

2  address three motions involving procedural and

3  jurisdictional issues, this Court has not addressed the

4  merits of the action.  The Superior Court of Guam, on

5  the other hand, has progressed further in the local

6  action with Judge Manibusan on March 14, 2003 denying

7  the Attorney General's request for a stay of the

8  Superior Court action pending the outcome of these

9  motions.  Since all three criteria have been met, the

10  court must accordingly dismiss this case under Younger.

11    Additionally, under the Burford doctrine,

12  where timely and adequate state court review is

13  available, a Federal Court sitting in equity must

14  decline to interfere with the proceedings or orders of

15  the state court.  While the Burford abstention is an

16  abstention doctrine that neither party invokes, the

17  court did consider it.

18    In Burford, an oil company filed suit in

19  Federal Court to attack the validity of a permit which

20  the Texas Railroad Commission had granted to Burford.

21  The permit allowed Burford to drill four wells in an

22  East Texas oil field.  The Supreme Court held that

23  although the Federal Court had diversity jurisdiction

24  over the thorny regulatory scheme, it properly declined

25  to rule on the merits since, quote, "The federal courts

1   can make small contribution to the well organized

2   system of regulation and review which the Texas

3   statutes provide." Burford, 319 U.S. 327. Quote:

4           "Burford allows federal courts to decline to

5   rule on an essentially local issue arising out of a

6   complicated state regulatory scheme." United States

7   versus Morros, 268 F.3d, 695.

8           Since it decided Burford, the Supreme Court

9   has not provided a formulaic test for determining when

10  dismissal under Burford is appropriate, although it has

11  made clear that the Burford abstention doctrine is an

12  extraordinary and narrow exception to the duty of the

13  District Court to adjudicate a controversy properly

14  before it.  Quakenbush versus Allstate Insurance

15  Company, 517 U.S. 706.

16          The Ninth Circuit, however, does require the

17  presence of certain factors before a District Court can

18  abstain under Burford.  The application of the Burford

19  abstention doctrine requires:

20          First, that the state has chosen to

21  concentrate suits challenging the actions of the agency

22  involved in a particular court; second, that the

23  federal issues could not be separated easily from

24  complex state law issues with respect to which state

25  courts might have special competence; and third, that

1  federal review might disrupt state efforts to establish

2  a coherent policy.  Morros, 268 F.3d 705.

3      This case presents more than just an issue

4  arising under the Organic Act of Guam.  Rather, it

5  involves complex local issues surrounding the

6  professional conduct of attorneys.  Whether the

7  Attorney General can represent GIAA in all legal

8  matters unrelated to this action requires

9  interpretation of the Guam Rules of Professional

10 Conduct relating to conflicts of interest.

11     Can the Attorney General sue his own client,

12 GIAA?  Does the Attorney General have a conflict of

13 interest now that he has sued GIAA which prevents the

14 Attorney General from representing GIAA in matters

15 unrelated to this suit?  Can the Attorney General

16 concurrently represent two GovGuam agencies in a legal

17 dispute?  These questions have been raised in the

18 pleadings.

19     The Guam Supreme Court and the Guam Bar Ethics

20 Committee have jurisdiction over these matters, not

21 this court.  The Supreme Court has ruled that the

22 Federal Court should abstain from interfering in the

23 states' traditional exercise and control over the

24 professional conduct of attorneys under their own

25 statutes.  See Middlesex County Ethics Committee versus

1   Garden, 102 Supreme Court 2515.

2          Here, the local laws clearly give the Guam

3   Supreme Court jurisdiction over the conduct and

4   discipline of members of the Guam Bar.  Additionally,

5   the complex local issues surrounding attorney conduct

6   cannot be easily separated from the federal question

7   arising under the Organic Act.  This court cannot

8   decide the federal question without implicating or

9   infringing upon ethical matters reserved for the Guam

10  Supreme Court.  A decision by this court on this matter

11  will also disrupt Guam's efforts to establish a

12  coherent policy with regard to attorney conduct.

13          Accordingly, the court dismisses this case

14  under the Burford abstention doctrine, as well as the

15  Younger abstention doctrine.

16          The last motion before the court is a Motion

17  to Dismiss for Unsuitability of Declaratory Relief.

18  The Court may decide not to rule on this because it has

19  already made a dispositive ruling.  However, in the

20  interest of completely disposing of the three motions

21  on their merits, the Court will so rule.

22          The instant motion addressed the court's

23  discretion to dismiss pursuant to the Declaratory

24  Judgment Act.  The defendant asserts that even if there

25  were a federal question, and even if the Younger

1   abstention were not mandatory, the Court should

2   nevertheless exercises its discretion to dismiss.  The

3   pertinent portion of the Declaratory Judgment Act is

4   quoted in footnote 1 -- forget about that.  It will be

5   quoted in my expanded legal opinion.

6          Jurisdiction under the Declaratory Judgment

7   Act is discretionary for it is, quote, "deliberately

8   cast in terms of permissive rather than mandatory

9   authority."  Public Service Commission of Utah versus

10  Wycoff County, 344 U.S. 237.

11         The Declaratory Judgment Act, quote, "gave the

12  federal courts competence to make a declaration of

13  rights; it did not impose a duty to do so."  Public

14  Affairs Associates versus Rickover, 369 U.S. 111.

15         This discretion, however, is not unfettered

16  and a district court cannot decline such an action as

17  a matter of whim or personal disinclination.

18         In deciding whether to exercise this

19  discretionary jurisdiction over the federal declaratory

20  action, the Court must look to several factors.  The

21  Ninth Circuit analyzed Brillhart versus Excess

22  Insurance Company of America, 316, U.S. 491, and its

23  progeny, and stated, quote:

24         "The Brillhart factors remain the philosophic

25     touchstone for the District Court.  The District

1     Court should avoid needless determination of state

2     law issues; it should discourage litigants from

3     filing declaratory actions as a means of forum

4     shopping, and it should avoid duplicative

5     ligation.  If there are parallel state proceedings

6     involving the same issues and parties pending at

7     the time the federal declaratory action is filed,

8     there is a presumption that the entire suit should

9     be heard in state court.  The pendency of a state

10    court action does not itself require a District

11    Court to refuse federal declaratory relief.

12    Nonetheless, federal courts should generally

13    decline to entertain reactive declaratory

14    actions." Government Employees Insurance Company

15    versus Dizol, 133 F.3d, 1220.

16         Based on the Ninth Circuit's guidance,

17    this Court declines to exercise its discretionary

18    jurisdiction under the Declaratory Judgment Act.

19    In this case, there's an ongoing identical action in

20    the Superior Court of Guam.  As discussed above in the

21    analysis of the Younger abstention, plaintiff will have

22    an adequate opportunity to litigate the Organic Act

23    claim before the Superior Court.

24         There is also a compelling reason to have this

25    matter decided by the local courts since it involves

1  important local issues regarding the ability to set

2  legal policy for the Government of Guam. The federal

3  courts should not get embroiled in this, quote, "intra-

4  government dispute," close quote, between the Attorney

5  General and the Executive Branch. The Declaratory

6  Judgment Act was not meant for these types of actions.

7  Accordingly, the Court grants the motion to dismiss.

8        The Court will come out in a few days with a

9  more detailed opinion. However, the Court does not

10  wish to have the parties hanging and trying to figure

11  out what's going to happen, so I've given you the

12  Court's ruling.

13        Thank you very much. I appreciate your

14  preparation and your thoughtful arguments.

15        MR. O'MALLAN: Briefly, Your Honor?

16        THE COURT: Yes.

17        MR. O'MALLAN: I guess we don't have to amend

18  the complaint?

19        THE COURT: Well, you're out of here.

20        MR. O'MALLAN: Thank you, I just wanted to be

21  sure.

22        THE COURT: Well, you lost two out of three.

23        Go over to Superior Court and let Judge

24  Manibusan pull his hair out over this. It's not my

25  case, and I will not interfere.

1        Thank you.

2        MR. O'MALLAN:  Thank you, Your Honor.

3        (Proceedings concluded at 4:19 p.m.

4                    *  *  *

5

6

7              CERTIFICATE OF REPORTER

8

9   CITY OF AGANA        )
                         ) ss.
10  TERRITORY OF GUAM    )

11

12       I, Wanda M. Miles, Official Court Reporter

13  of the District Court of Guam, do hereby certify the

14  foregoing pages 1-53, inclusive, to be a true and

15  correct transcript of the shorthand notes taken by me

16  of the within-entitled proceedings, at the date and

17  time therein set forth.

18       Dated this 9th day of June, 2003.

19

20              _Wanda M. Miles_

21

22

23

24

25

Wanda M. Miles
Official Court Reporter
District Court of Guam